STATE OF MICHIGAN

IN THE SIXTH JUDICIAL CIRCUIT COURT, COUNTY OF OAKLAND

THE PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff,

VERSUS -

STEVEN MC BURNEY,

        Defendant,

File No. CR-

_____/

OAKLAND COUNTY 07-214651-FC

JUDGE DANIEL P. O'BRIEN
PEOPLE v MCBURNEY,STEV

**WALKER HEARING**

Proceedings had in the above-entitled matter, held before the **HONORABLE DANIEL PATRICK O'BRIEN,** Judge of the Sixth Judicial Circuit Court for the County of Oakland, Michigan on September 27th, 2007.

RECEIVED FOR FILING OAKLAND COUNTY CLERK
2008 NOV 14 AM 11:19
DEPUTY COUNTY CLERK

APPEARANCES:

    MS. SARA POPE-STARNES
    Attorney-at-Law

        Appearing on behalf of the People

    MR. ROBERT WHITE
    Attorney-at-Law

        Appearing on behalf of the Defendant

Lynn E. Erickson, Court Reporter

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

# I N D E X

**COURT'S RULING**                                        **3**

6TH Judicial Circuit Court

County of Oakland, Michigan

September 27th, 2007

*  *  *

THE COURT:  Be seated everyone, thank you.

Go ahead.

THE CLERK:  The Court calls People versus McBurney, case number 0 7 2 1 4 6 5 1 - FC.

MS. POPE-SARNES:  Good afternoon, your Honor, Sara Pope-Sarnes, appearing on behalf of the People.

MR. ROBERT WHITE:  Robert White here on behalf of the Defendant.

THE COURT:  Pardon me, let me give this stuff to Counsel for safe-keeping for the appellate period.

By the way, go ahead and call the case.

THE CLERK:  I already did.

THE COURT:  You did?  Oh, yeah. Starting off bad.

Okay you guys.

Off the record for a second.

(Whereupon a discussion was held off the records with the deputies.)

\*    \*    \*

THE COURT:  Good afternoon, sir.

The record will reflect that a Walker Hearing was conducted over the last couple of days and upon conclusion by the parties, the Court took the matter under advisement.

The Court will issue this oral and Order. In issuing this oral Opinion the Court will recite together its summary of relevant facts and its legal analysis rather than the facts first and the analysis second.

The Court has considered the Exhibits, the testimony, demeanor, credibility of the witnesses, the arguments and the law.

Beginning with the Direct Examination of Officer Sederlund.  Testified that he is a thirteen (13) year officer with South Lyon.  He was assigned to issue --- assigned to investigate the issue regarding the death of Madison McBurney.

That he arrived at the police department, that he was in civilian clothes. He spoke to the ambulance worker, that he personally reviewed the Defendant's C C H, criminal history.

Identification was made in Court of the Defendant.

He testified that Officer and Sovic and he were in the same car traveling to the University of Michigan Hospital between the hours of eleven o'clock (11:00)--- eleven o'clock (11:00) p.m. and twelve a.m. (12:00).

At the hospital the Officer met --- this witness testified that he met with C T S worker on the first floor common area. That he was escorted to the fourth floor pediatric by a tall skinny security guard by way of secure elevator.

He testified that no other officers were present. He testified that Sovic and he and the security guard were the only ones that went up the elevator.

He testified that he met with nurses in the conference room to the left of the nurses

station. He spoke with Dr. Fleming. He testified that Officer Sovic was wearing dress shirt and tie and black leather jacket, and he was not wearing department uniform.

Approximately two a.m. (2:00) he asked nurses to speak with Heather McBurney. Heather came into the conference room and the two officers were present along with Sara Weaver and the nurse.

Officer testified that he was not wearing a gun or a gun belt that he believes. Testified that he had a badge on his waistband and a telephone on his waistband.

He testified he had no recording equipment. He attempted to bring recording equipment. He found a tape-recorder with corroded batteries in it. He put new batteries in it, it did not work and he threw it out.

Testified that the department has a big V C R recorder, but he could not find it. He testified that he took no photos, that there are no audio and video recordings of Heather's interview nor the Defendant's interview.

Testified concerning the interview with Heather that had lasted approximately an hour.

In describing the conference room he testified that there is an interior window overlooking the nurses station.

Testified that Heather left along with the C P S worker Weaver and the nurse.   Witness testified that he walked to the nurses station and asked the nurse to get the Defendant.

The Defendant came into the conference by himself.   The witness testified that someone had asked the Defendant to sit down.   Officer Sovic and he and the Defendant were the only ones in the room.

The witness testified that he introduced himself as Officer Sederlund of the South Lyon Police Department and Officer Sovic did the same identification of himself.

He testified that the door was closed and unlocked.

The witness testified that he told the Defendant that the South Lyon Police Department had received a call regarding a child with

seizures and brain injuries that were
irreparable and the child would die within
forty-eight (48) hours.

He testified that Officer Sovic asked
the Defendant about Nicholas Kennedy.  The
Defendant said that he was not his son.  The
witness --- or, strike that.

The witness testified that Officer
Sovic asked about injuries to Nicholas.  The
Defendant said that the injuries on Nicholas
were worse than on Madison and that he, the
Defendant, was not responsible.

The Defendant said that he was home
with Madison.  He said that he was home with her
on November 30th at six p.m. (6:00).  The
Defendant stated, through this witness that the
Defendant gave her a bottle and that Madison was
cranky and she spit it out.

Witness also testified that the
Defendant said that Madison had him displacia
and had to --- and he had to put a brace on her.
And he further --- the witness, again, stated
that the Defendant said he put her on the floor,
she fell back and he called 9 11.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

For the 9 11 call he gave her breath assistance and then an ambulance came. The witness testified that Officer Sovic told the Defendant that the hospital said there was non-accidental trauma and the Defendant and Heather were the only ones home.

Witness testified that the Defendant denied doing anything. Witness testified that Officer Sovic or himself said to the Defendant that if the Defendant did not do it Heather must have. The Defendant said that he did not think that Heather could do it.

Witness testified that Officer Sovic said, 'Good people make mistakes.' And Sovic said that Heather said, 'You are a great dad.'

Witness testified that the Defendant said, 'My life is over.' And there was more discussion about Madison.

Witness testified that he explained to the Defendant that he owed Heather and Madison an explanation. The witness testified that Sovic said, 'Would you like to talk to Heather?' And Sovic then instructed the witness to get Heather.

Witness testified that he went to the nurses station, he was gone about ten (10) or fifteen (15) seconds and that he had asked the nurse to get Heather.

The witness testified that he came back to the room. Heather came to the room with a nurse and the nurse left. In the room, at this time, is the Officer Sovic, Officer Sederlund, the Defendant and Heather. The door was shut and unlocked.

The seating per the witness was Officer Sovic and the witness across from each other. The Defendant at the head of the table and Heather next to witness --- strike that. Heather was next to Officer Sovic closest --- was in between Officer Sovic and the Defendant.

Witness testified that neither he nor Officer Sovic said anything and that the Defendant started talking. The Defendant asked Heather about Nicholas. Heather stated that the Defendant's friend, Kyle, had told her about Nicholas.

The Defendant said he wanted to tell her about Nicholas but did not because the relationship was going great.

Heather said, 'What have you got to tell me?'

The Defendant said, 'He made a mistake.' The Defendant said, 'He's begging her --- he had --- he had been begging her to switch to day shift because of Madison's separation anxiety.'

The Defendant --- the witness testified that the Defendant said that he threw Madison into the crib to keep her from crying and she hit the back of her head on a spindle and began seizing.

The witness testified that he and Officer Sovic then started speaking to the Defendant. The Defendant said that at six p.m. Heather went to work. The Defendant and Heather put her --- Madison --- down. Heather went to work and Madison began crying. That he gave her a bottle, she spit it out. He changed her diaper, she continued crying. He tried to console her and he threw her into the crib.

He stated that he was two feet from the crib and her head hit the spindle and she began seizing.

Testified that he picked her up and tried to console her. He put her on the floor, took her clothes off to see if she was breathing. He called 9 11, he gave her more breath assistance. Nine eleven (9 11) came and took he and her to U of M Hospital.

Witness testified that Officer Sovic told the Defendant that he and Heather could talk together and the witness and Sovic left and that the Defendant was left with a piece of paper.

The witness testified that after he spoke to the Duty Prosecutor that he and Sovic talked together and they decided that Defendant would not be free to leave.

They walked back into the room approximately three to five minutes after they had left. The Defendant and Heather were in the same spot.

The witness testified that he told the Defendant that they were holding him in custody

and that this was the first time the Defendant was told he was in custody.

Testified that he handcuffed the Defendant and he allowed him to go to say one last good-bye to Madison.

*Witness testified that he has* experience with people under the influence of drugs and alcohol and that the Defendant was not under the influence. The Defendant did not *appear injured or sleep deprived, no force or* coercion was used, that he never touched the Defendant, never threatened him and the interview lasted with the Defendant --- strike that. *That the interview with the Defendant* lasted about two hours.

Witness testified that the Defendant did not complain about the elements of sleep deprivation, etcetera.

On Cross-examination of Officer Sederlund the following summary; the witness testified that using recording devices for South Lyon Police Department interrogation is discretionary. He testified that he searched for a recorder.

As I have indicated this oral Opinion and Order combines both the factual recitation as well as the Court's legal analysis rather than separating the two.

And, at this point the Court will state an analysis. The Court --- the Defendant is trying to demonstrate that the Defendant was always the sole suspect. If true, then the Court would have to conclude that the interview of Heather was a ploy.

The Defendant's theory goes too far. It eliminates any need, whatsoever, for interviewing Heather. Thus, the only reason to interview Heather would be to dupe anyone who may be reviewing the police conduct. There is nothing to suggest such sinister behavior or intent by the police here.

While true, another reason for interviewing Heather though the Defendant was the sole suspect, according to the Defendant's theory would be to bolster the case against the Defendant.

The interview itself, however, does not reveal such a motive. Furthermore, the

officer's testimony is entirely credible that at
that point in time their intent, and focus, and
pursuit was in garnering information. Any
information concerning what happened.

In other words, the Officers are
credible and the Court finds the motive and
intent and imputes at that stage was information
gathering. Their motive, focus, intent and
imputes was not to compile inculpatory evidence
against the Defendant at that time.

Resuming with the testimony that
witness Sederlund testified that he did not know
Miranda Warnings by heart and that he uses a
card. The Officer testified that he did not
have his Miranda card with him.

With respect to the Court's analysis,
the Court finds that this --- that this
testimony lends itself to the officer's
credibility that he was investigating rather
than pretextully interviewing the Defendant to
justify his intention to arrest him.

The witness testified that when the
Defendant was informed that they, the Officers,
knew that the Defendant caused the injuries the

witness testified that if he did say that, as opposed to witness Sovic saying it, that he did not necessarily mean it.

The Defendant testified --- strike that.

The witness testified that he said it, if he did say it, he said it as an investigatory tool.

The Court finds that the police have to give Miranda Warnings, that does not mean that they cannot use such investigatory tools just so long as no rules are broken; i.e. non-arrest custodial interrogation. Their tool is not unlawful or out of bounds.

Despite the Officer's statement to the Defendant that he knew the Defendant did it, that does not contradict his testimony that the Defendant was not under arrest and not failure to leave. When one considers his statement that he accused the Defendant as an investigatory tool to elicit the Defendant's statement.

No law --- now law has been afforded to the Court that declares such methods unlawful.

That the Officers were admittedly employing investigatory tools to illicit inculpatory statements, reflects that they were no longer merely investigating. But investigating with an intent to garner inculpatory statements from the Defendant. This does not automatically transfer the scene from a non-custodial interrogation to a custodial one.

From a totality of the circumstances the morph, for lack of a better word, occurred gradually and finished at the point the Defendant completed his oral statements and the Officers left he and his wife alone.

Now going back to the to the testimony. At this point the Defendant had not made any inculpatory statements. This point meaning when the Defendant was told that the Officers knew that he did. There were exchanges between the Defense Attorney and the witness at this point about things that the witness said -- - that the Defendant said that were not contained in the police report.

The Court finds that such omissions are not fatal to the admissibility of the

alleged statements. Such omissions bear upon the admissibility only if the Court finds that the omissions cast the witness's credibility in a bad light.

The Court does not find the witness's credibility injured by the omissions. The omissions in this case the Court finds are attributable to the reality of humanity in not capturing on paper after an event a written mirror image of that event. The Court recognizes that the police are trained, unlike lay persons to transpose, write reports, but that does not require them to be perfect and the Court, again, does not find anything incredible or ill motivated by the police to have omitted any of those contents.

The witness testified that in his mind the words the Defendant stated to Heather amounted to a confession. This was before the Defendant made his written statement. The Officer testified that at this point the Defendant was not free to leave.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

Witness testified that he and Sovic left and that when they came back in the Defendant had made a written statement by then.

Though argued, the Court finds as follows, though arguably from the Defendant's perspective the world stayed the same when the Officers left he and his wife alone.  However, the honest, though testy testimony of the Officer was that, in fact, at that time the Defendant was not free to leave.

From an objective perspective, with the level of information harbored by the police at that point then the Defendant was not free to leave and the handwritten statement must, therefore, be suppressed.  An objective person, after giving or hearing the inculpatory verbal statement this Court finds would believe that he was not free to leave.

Except as it bears on the credibility of the Defendant and the Officers through the visual structure of the written statement, the statement therefore is moot.  The written statement is, therefore, moot.

The witness testified that he did not ask or instruct the Defendant to add any words to the statement, to the written statement.

At this point the Defendant's case began out of order for convenience for a witness and we proceeded --- and the hearing proceeded with Defendant's direct exam of Heather McBurney.

She testified that a nurse --- I am fast forwarding through some of the preliminary matters and just touching upon the things that the Court found relevant that was not already established by other witnesses.

This witness testified that a nurse came in to Madison's room where she and the Defendant were with Madison. And that she walked with the nurse into the conference room. In the conference room was Officer Sederlund, Sovic, Sara Weaver, and the duty nurse.

She left the conference room and later she returned to the conference room and present was the Defendant and both Officers. The Defendant was at the head of the table.

She testified that she sat down,
Officer Sovic said that, 'Defendant is a good
guy and he has something to tell her.'  The
Defendant said he threw Madison into a crib.

Witness testified that there were tape
recorders on chairs or on the floor, and that
she saw it before strapped around Officer Sovic.
On cross-examination of this witness the witness
testified --- strike that.

Yeah, the witness testified that the
Defendant, that the Defendant originally had
told her that he may have a son, but he didn't
tell me about child abuse because he was not
sure that that child was his son.

She testified that she denied to the
police that either she or the Defendant had
other children.  And, she testified that she did
not speak of the Defendant's purported son,
Nicholas, because she did not know for sure that
Nicholas was his son.

The Court finds that her credibility
is injured here.  The Court finds that this
witness withheld information regarding Nicholas
for a different reason.  If she did not know

whether or not Nicholas was the Defendant's son, she would have told the police that she didn't know rather than affirmatively deny that either of them have children.

She had some other reason to refrain from mentioning a possible child.

The Court will leave to hypothesis the reason that she would not disclose that. Whether it was knowledge or suspicion of his paternity of Nicholas.

She testified that witness --- that Officer Sederlund had a tape recorder on a strap around him under his coat. She testified he took off the recorder and placed it on the floor or the chair and she doesn't know which. The Court returns to its finding regarding this witness's credibility. Though the Court does not find her sinister or malevolent.

Resuming with the Prosecutor's case it has the following testimony --- or summary of testimony is the People's direct examination of Office Sovic. The Court finds that this Officer was not argumentative, he was straight forward and especially creditable. He testified that he

served ten (10) years as a sergeant. At 9:15 p.m. on December 2nd he arrived at the police department in a dress shirt and tie and black leather jacket.

He was briefed by a sergeant there and prepared for investigation of this matter. He met with Officer Sederlund and the sergeant and he went to the supply room looking for a recorder. He could not find one. He obtained a C C --- Criminal History for the Defendant.

He testified that he spoke with the fire department and they were the first responders. He testified that witness Sederlund was dressed in a tweed-like coat and khaki pants.

He testified that he spoke with a clerk looking for the 1998 report concerning the Defendant and the boy named Nicholas. And that he was able to sift through, on microfiche and learn that the Defendant had pled down to Second Degree Child Abuse.

He had learned that Nicholas had skull injuries.

He testified --- the witness testified

that he and witness, Officer Sederlund drove to the University of Michigan Hospital, that they met with Sara Weaver on the first floor, that they were escorted to the fourth floor by security, that no other officers from any agency were present.  That he went into a room and spoke to a doctor.

He testified that Heather came into the room and present in the room, at that time, was Heather, Officer Sederlund, Sara Weaver and a nurse.  He testified that he was wearing a badge on the front left pocket.  He was not wearing a gun belt, not wearing a strap, he was wearing a gun with a waist holster and had a personal cell phone.

The Court --- the Court will omit from the record the testimony that the Officer was wearing a gun with a waist holder.  The witness testified that he did not have a tape recorder and that his coat has straps on it, the inside.

The witness testified that after Heather and the nurse left, Sara left and then Defendant came in.

24

The Court's notes indicate that the -- - that this Officer, of what moment this is and what weight this is may be of minimal or substantial, I don't know at this time, but the Court's notes indicate that this Officer testified that he was wearing a gun with a waist holder.

Is there a stipulation from Counsel as to whether or not this witness testified he was or was not wearing a gun. I don't know if I omitted the word 'not' or not.

MR. WHITE: My recollection is that he said he had a clip-on holster called an 'Uncle Mikie' with his weapon in that holster.

MS. POPE-STARNES: That's correct.

THE COURT: Okay. Thank you. The Court does find, and appreciates the stipulation from Counsel, and I do recollect the phrase that was used here that the nomenclature that was used that this Officer was wearing a gun with a waist holder and that he also had a personal cell phone.

The witness testified that a nurse brought him --- the Defendant in, into the room,

and when the Defendant came into the room that
the witness testified he believed his jacket was
off and hanging on the back of a chair.    That
he identified himself as an Officer as did
Officer Sederlund.

            The witness testified that at no time
during the Defendant's interview did he have a
recording device, that he told him --- that he
told the Defendant whenever reports of
suspicious injury of a child were made that the
police are obligated to investigation.

            He testified that he is familiar with
people under the influence of drugs and alcohol,
that the Defendant did not appear under the
influence, nor tired, or injured, etcetera.

            Witness testified that he asked the
Defendant if he had children from a prior
relationship and the Defendant said, 'No.'   The
Court finds that this statement injures the
Defendant.   The Court believes that the witness
testified accurately --- accurately here in
reciting what Defendant stated and the Court
finds that this statement injures the
Defendant's credibility for the reasons to be

stated when the Court next mentions the
Defendant's statement regarding his son.

Witness testified that he asked the
Defendant why fire and ambulance came to his
home and the Defendant said that Madison was
throwing up all day, that he put her in a bouncy
seat and gave her a bottle and she spit it up.
He put her in the bedroom, changed her diaper,
then she fell back and had a seizure.

The Court respectfully finds that the
Defendant's credibility is injured when this
statement is considered with the other statement
forthcoming that her injury resulted from her
hitting her head on a crib railing.  These
statements are different enough to implicate
credibility issues.

The witness testified that he told the
Defendant that he knew that he had another son
who had suffered child abuse and that the
witness testified that he had told the Defendant
that the mother had been equivocal whether he
was the dad.

The Court's reasons for --- I could
have said it earlier, concerning the injury to

the Defendant's credibility when he denied that
the son, Nicholas, was his son are because of
the uncontested fact that he had pled no contest
and there is no dispute that the son, Nicholas,
was his son.

The witness testified that he said to
the Defendant that he, the witness, knew that
tne Defendant caused this accident and stated
that he told the Defendant, 'Good people
sometimes do bad things and make mistakes.'

He stated that the Defendant said, 'My
life is over.' And that the witness told the
Defendant, 'No, life is not over, Heather needs
you.' And he asked the Defendant to tell him
what happened.

This witness stated that he'd asked if
he wanted Heather into --- to talk to her and
the Defendant said, 'Yes.'

Sederlund left the room to go get
Heather and the witness testified that he said
more of the same to the Defendant that was
previously stated by this Court.

Testified that Sederlund and Heather
came into the room and all four of the people

were together.  There was a long pause and
*eventually the Defendant asked Heather if she*
knew about Nicholas.

And he asked her how she knew.  And
that Heather had stated that Kyle had told her.

The witness stated that *before* this
happened he had told Heather that
'Defendant wants to tell you something and he
fears you don't --- or you won't love him and
that's *not* true.'

Then witness stated that the Defendant
said,

'That he made a mistake, I threw Madison
*into a crib.*'

And Heather asked, 'What happened?'
And the Defendant said,

'You know how difficult she is, that's why
I wanted you to change work shifts.'

The witness testified that the
Defendant talked about Madison's separation
anxiety, gave her a bottle, put her in a bouncy
seat, brought her into *her own room and changed*
her diaper.  He picked her up and she screamed

in his ear. He threw her into the crib and then gave her some breathing assistance.

On cross-examination of Officer Sovic he testified that he does not drink, he does not take prescription medication. That the sergeant at the police department told this witness that the sergeant ran criminal histories for both parents.

The witness testified that he does not recall Heather's criminal history, but that he had learned of Defendant's prior child abuse conviction.

The Court finds that this testimony is believable and it supports both Officers testimony that they were investigating rather than garnering inculpatory evidence against a sole suspect, specifically Defendant at that point in time.

The witness testified that recording equipment is important, but did not find one and did not go to the store to get one.

The witness testified on cross-examination that he and Officer Sederlund told the Defendant that he would leave he and Heather

alone to talk awhile. And that he had asked the Defendant to write anything down.

The witness testified that after he and Sederlund spoke together, after speaking to the Duty Prosecutor, that they agreed that the Defendant was not free to leave.

They stated --- this witness stated that when he and Officer Sederlund returned to the conference room the statement was filled out. They obtained consent to search their home and they placed the Defendant under arrest.

Testified also on cross-examination that he had arrived at the Northville Police Department at approximately 11:20 p.m. on December 2nd, 2006. A clerk showed him or us the microfiche and that this witness started leafing through it.

Witness testified that he learned some information, mostly medical, and that the information was two hundred and fifty (250) pages long.

The witness testified that he learned that the Defendant was interrogated in that prior case and that he recalls --- recalled

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

reading something about Nicholas suffering skull fractures.

He testified on cross-examination that he drove to the hospital with Sederlund that took about fifteen (15) to twenty (20) minutes. They arrived sometime after mid-night that he had been up all night and day since 5:30 a.m.

Testified that he spoke to Sara Weaver. That he met with a doctor and learned about the medical condition of Madison and he concluded that this case would be a Homicide upon the child's passing.

Testified that a nurse brought Heather into the conference room and there were four people present. The Court recognizes that it is speaking in choppy sentences, but I am omitting a lot of chronology that has already been covered by other witnesses.

Witness testified that the only suspect in his mind was the Defendant. The Court finds that since the Defendant was the sole suspect in Witness Sovic's mind that this fact weighs in favor, at that point, that Sovic

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

was attempting to garner evidence inculpatory to the Defendant.

This alone to the Defendant's argument that all of the Defendant's statements, oral and written, were the product of a custodial interrogation. However, from the prospective of a totality of circumstances the Court finds, again, the oral statements were not elicited during or because of a custodial interrogation.

The Court, again, refers to its analysis stated during review of Officer Sederlund's testimony.

Witness testified that at some point he had told the Defendant, 'I know you did it.' The witness testified that he thinks he said that under five times. At these points the witness stated the Defendant had not made any inculpatory statements.

The Court, again, refers back and relies on its analysis covering this point in time.

Witness testified that he had Heather come back into the room, that he told her the Defendant does not want to tell you something

because he does not think you will love him any more.

The Defendant paused and then said, and this, again, is this witness testifying to what he says the Defendant said. The Defendant said,

'I made a mistake. I threw her, I was approximately two feet from the crib. She was crying. I have been trying to get you to change work shifts.'

The witness testified that neither he nor Officer Sederlund directed the Defendant to add words to the written statement. Again, the Court finds this is relevant only on the issue of credibility.

On redirect examination of Officer Sovic this witness testified that the mug shot camera at the police department is permanently affixed to the police station and that he could not have had it with him at the hospital.

He testified that he told the Defendant,

'Listen, I know you are responsible for Madison's injuries ---

34

He told this to the Defendant because he was
taught in police school to try to get on the
same page as the Defendant to get more
information.

The Prosecutor rested.

On direct examination of the Defendant
he testified that he is 32, he is married to
Heather, he had a daughter Madison.  That he
worked as a crew leader for two lawn services
for approximately five years and he has one year
of education at Ferris College.

On November 30th, 2006 he was at home
by noon and was home until 7:30 p.m.
approximately when he went to the hospital with
Madison.  He stated he was at the hospital that
whole time, meaning through December 2nd, except
for two hours when he went home.

He stated that he had not slept at all
or very little.  He stated that a nurse Regina
was uncharacteristically unfriendly to him, and
said, quote:

'They want to talk to you.'  Close quote.

'I did not know what she was referring to.'
The Defendant said.

35

He testified that before he went into the conference room that he had noticed three uniformed officers.  The Court respectfully declares that the Defendant cannot have his cake and eat it too.  He cannot imply that he was sleep deprived and not have it factored into his beneficial testimony, i.e. identifying police officers as distinctive from security guards.

He testified that he went into the room and saw Officer Sederlund and Sovic and Weaver in the room.  That he had met Weaver before and knew that she was from the Child Protective Services.

He testified that as soon as he walked in an Officer said to Weaver --- to the effect, 'Are you all set?'  And she said she has everything she needs and she left.

The Officers identified themselves as police officers.  Sovic instructed the Defendant to have a seat and that Sovic asked him about his marriage and asked him about Madison.

The Defendant testified that he tried to talk about Madison and that an Officer cut

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

him off and said, 'Tell me about the November
30th incident.

He testified that Sovic asked him if
he had another child, and that Sovic asked him
about Nicholas' injuries, and that Sovic asked
him to comment --- strike that.

And that Officer Sovic commented that
Nicholas and Madison's injuries were similar.
He testified that Sovic said,

'That Nicholas' injuries were worse than
Madison's.

The witness testified that Sovic said
that Madison's injuries were not accidental.
Witness testified that he asked to speak to the
doctor and that Sovic said, 'No.'  And that
Sovic told him, 'Look, we know you did it.'

Witness testified that Heather came in
and Sovic said,

'Steven wants to tell you some things.'
Then it was quiet and then Heather and he spoke.
He being the Defendant or the witness.  At that
point Sovic and Sederlund left.

Witness testified that there was a

silverish device under Sovic's chair and that he
noticed it when he walked in.   Question was
asked of the Defendant,

'Did you believe you were being recorded?'
And the Defendant's answer was, 'It was
reasonable to believe that, yes.'

The Court finds this not a clear
answer.   This bears on the Defendant's
credibility, especially since there is no fruit
offered from that camera.

The Defendant testified that
afterwards he was arrested and transported to
the station and that he saw that same camera
again, and it was the same one that was at the
hospital that Sovic --- and that at the station
it was being used by Sovic to photograph him.

The Court finds that based upon the
credibility between the Officers and the
Defendant, the Court believes the Officer's
testimony regarding the fixtured police station
camera, instead of the Defendant's contrary
testimony.

The witness testified that after Sederlund and Sovic left Sederlund came back in and read --- let me back up.

Going back in time to the interview with the Defendant, after Sederlund and Sovic left the Defendant and his wife alone, the witness testified that Sederlund came back in and read the Defendant's handwritten statement and told the Defendant to write in Madison's name above the word quote "her" closed quote. And in the statement to add that the child had a seizure.

The Court finds that the location of the written words regarding Madison's seizure are located within the body of the written statement such that it was --- such that if it was added after the rest of the statement it would not appear as though it was part of the rest of the statement. This respectfully hurts the Defendant's credibility.

The Defendant testified that he walked out of the conference room, that he was handcuffed. The people that he thought were uniformed police were still there.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

Cross-examination of the Defendant was conducted. The Defendant rested. There was no rebuttal from the People. The parties presented closing arguments.

The Court has considered the reference testimony, and the demeanor and credibility of the witnesses, the Exhibits, arguments and law.

For the reasons stated above, the oral statements are admissible and the written statement identified as Exhibit 1 is not and the Court has returned for safekeeping the Exhibits to Counsel.

Thank you.

MR. WHITE: Thank you, your Honor.

THE COURT: An Order may enter reflecting the Court's pronouncement.

MR. WHITE: Yes, thank you. This is set for pre-trial on Monday at one p.m. and for some reason I wrote it in my book. Actually I think it is a handwritten Order setting it at 8:30. And I set up a couple of other court dates in the afternoon. I was wondering if we could adjourn it one week to October 8th at 1:30.

THE COURT:   Is there anything that is affected or hoped to be accomplished at the pre-trial?

MR. WHITE:   I --- I don't think so.   I don't think so.   We have a trial date in December, we have several other motions.

Believe it or not, Judge, it was just a short time ago we got our Preliminary Examination transcript.

So, I do have a Motion to Quash coming, and ---

THE COURT:   How about you Miss Pope-Starnes?

MS. POPE-STARNES:   I have several motions as well and I intend to file them as Motions in Limine rather than have them come up during the trial.

THE COURT:   Sure.   All right.   So, any --- any purpose of the pre-trial from your perspective?

MS. POPE-STARNES:   I don't believe so.

THE COURT:   We can draft an Order, you can draft it today and cancel the

pre-trial and continue the matter for a normal course.  Okay.

You're all set then.

MR. WHITE:  May I be excused?  I have people waiting in my office.  I will get an Order to sister Counsel tomorrow morning.

MS. POPE-STARNES:  I would agree with that, your Honor.  I have Judge Alexander waiting for me.

THE COURT:  Fine.  No problem.  Thank you.

Thank you deputies.

(Whereupon the matter was concluded at this time.)

\*     \*     \*

CERTIFICATE

STATE OF MICHIGAN )

      SS

COUNTY OF OAKLAND )


     I, **Lynn E. Erickson**, Official

Court Reporter for the Sixth Judicial

Circuit Court, State of Michigan, do

hereby certify that the attached is a true

and correct transcript of the hearing held

in this matter.

_Lynn E. Erickson_____

**Lynn E. Erickson, Court Reporter  CSR-0188**