STATE OF MICHIGAN

IN THE 6TH CIRCUIT COURT FOR THE COUNTY OF OAKLAND

PEOPLE OF THE STATE OF MICHIGAN,

v

STEVEN LINDSEY MC BURNEY,

Defendant,

_____/

OAKLAND COUNTY  **07-214651-FC**

JUDGE DANIEL P. O'BRIEN
PEOPLE v MCBURNEY,STEV

TRIAL

BEFORE HONORABLE DANIEL PATRICK O'BRIEN

February 19, 2008

* * * *

APPEARANCES

Sara Pope-Starnes, Esq.
  On behalf of the People

Robert White, Esq.
  On behalf of defendant

RECEIVED FOR FILING
OAKLAND COUNTY CLERK
BY:
DEPUTY COUNTY CLERK
2008 AUG 14 A 11: 22

Barbara Reznick, Court Reporter

FORM CSR · LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

1

# I N D E X

**WITNESSES**

None

**EXHIBITS**

None

FORM CSR-LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

Pontiac, Michigan

February 19, 2008

\* \* \* \*

THE CLERK: The court calls People v McBurney, case number 07-214651 FC.

MS. POPE-STARNES: Good morning, Your Honor, Sara Pope-Starnes, Assistant Prosecuting Attorney.

THE COURT: Thank you.

MR. WHITE: Robert White appearing on behalf of Mr. McBurney.

THE COURT: Good morning counsel.

MR. WHITE: Who is not in the courtroom yet.

THE COURT: I've got the proposed jury instructions from both of you, there's a couple of differences between the two, do you want to go over those real quickly?

MS. POPE-STARNES: Well, Your Honor, I believe they're in regards to the final instructions and I believe according to the case law it will depend on how the facts come out at trial.

THE COURT: I'm talking preliminary.

MS. POPE-STARNES: Oh, I believe – I thought the preliminary instructions were the same, I did ask for –

THE COURT: There's a couple of tweaks; first of all, let's just go right down the list of the things that I've got just so we have everything in order.

Mutual sequestration order I take it?

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

MR. WHITE: Yes.

THE COURT: Okay. Ms. Pope-Starnes.

MS. POPE-STARNES: I would ask that that be with the exception of both officers in charge of the case. The court rule allows for officers who are witnesses who are helpful to the prosecution in trying the case. They've already heard all of the testimony. There's been a Walker Hearing, there's been a Preliminary Examination –

THE COURT: Any objection Mr. White?

MR. WHITE: Yes, I do.

MS. POPE-STARNES: I don't think there is any prejudice to the defense.

MR. WHITE: Yes, I do. I believe that it's necessary that only one be designated as the Officer in Charge –

THE COURT: Little bit louder.

MR. WHITE: I'm sorry. I ask because of their testimony being divergent that we've heard so far at the Walker Hearing in come critical matters that the prosecution be directed to have only one police officer as their Officer in Charge.

THE COURT: You said there's some law on this, Ms. Pope-Starnes?

MS. POPE-STARNES: There's the court rule, Your Honor, and I thought you ruled about this before –

THE COURT: Hold the thought –

MR. WHITE: Your Honor, while she's looking at that, are we anticipating the trial today, tomorrow afternoon, Thursday and Friday?

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

THE COURT: Not tomorrow afternoon, that's crim call for me for this week because yesterday we were off –

MR. WHITE: Yes, sir –

THE COURT: - but otherwise we're good.

MR. WHITE: So we'll resume Thursday morning. Okay.

MS. POPE-STARNES: Okay. I'd asked your clerk yesterday and they told me to plan on going, I have a doctor who may only be available tomorrow afternoon, I'll have to see if I can get her –

THE COURT: Tomorrow afternoon?

MS. POPE-STARNES: Yes, the clerks had told me to make sure I had witnesses.

THE COURT: All right. There's a communication breakdown, yesterday was crim call and that was cancelled because of the holiday so that's why – hold the thought on that Ms. Pope-Starnes, and we'll come back to that.

Do both of you have your preliminary instructions, the initial instructions, we can go through that real quick right now?

MR. WHITE: Yes, I have mine and I have the prosecutors.

THE COURT: Okay. I've taken kind of a hybrid of the two and I'll see, I don't know if there will be any – I don't suspect that there's going to be any issues with the very very preliminary instructions; start out with 1.1; then 1.2; 1.3; - let me back up – 1.1, I combined it with 1.4, the swearing of the oath, I don't know if anybody has any problem with that but that's how I do that so 1.1; 1.4; 1.2; 1.3; 1.5; that's where I'll introduce the parties and the counsels'

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

names and then after I ask if anybody knows any of the parties or

lawyers, then I'll give the floor to Ms. Pope-Starnes and then you Mr.

White to introduce yourselves, your clients and any witnesses that you

have. Also, if you could just indicate cities that they're from and some

kind of a little more information, more than just a name; then we'll

pick the jury; guessing, Mr. White you had written down seven or

eight days you're thinking? What's your thought?

MR. WHITE: That's depending on –

THE COURT: Guesstimate?

MR. WHITE: - yes, guesstimate and I understand sister

counsel intends to call several doctors from the University of Michigan

so I believe that's a pretty solid guess.

THE COURT: What do you think?

MS. POPE-STARNES: I know that the defense expert isn't

going to be here until Tuesday morning –

THE COURT: Okay.

MS. POPE-STARNES: So we're at least going to go that long.

THE COURT: Okay. That's fine.

MR. WHITE: If I may ask, is it still anticipated that Dr.

Dragovic is going to testify Monday morning?

MS. POPE-STARNES: Yes, he's out of town at a conference

and is scheduled to testify first thing Monday morning.

THE COURT: Fine. Then 1.7; 1.8; and that's the reading of

the information and when I get to that, Ms. Pope-Starnes, I'll just have

you read it if you have it there.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

MS. POPE-STARNES: That's fine, Your Honor.

THE COURT: And then 1. – then I'll have the lawyers ask questions and we'll pick the jury and then we'll go to the post selection instructions; 2.1; 2.2; -

MR. WHITE: I'm sorry, Judge, back up –

THE COURT: Go ahead.

MR. WHITE: - did you read 1.9?

THE COURT: 1.9, I've always done. It's kind of weird to put it in this way but in don't know why we – ladies and gentlemen – if you look at 2.1, ladies and gentlemen I'm going to give you – or I've got it mixed up – now 2.2, now I'll explain some legal principles you'll need to know, I don't know why they put 1.9 before that so I customarily have done after the selection of the jury and the swearing of the oath, then I go to 2.2 where I say I'm going to tell you about the principles and then go right to1.9 as part of the principles of law anyway.

MS. POPE-STARNES: That's fine, I have no objection.

MR. WHITE: Okay.

THE COURT: That's 1.9 and then 2.3 and by the way interrupt me if – it would be easier just to interrupt me if anything goes awry; 2.4; 2.5; 2.6; 2.7; 2.8; 2. – or 2.10; 2.11; 2.12; 2.13; 2.14; 2.16; -

MS. POPE-STARNES: I'm sorry, Your Honor 2.14?

THE COURT: Yes, go ahead. What about it?

MS. POPE-STARNES: No, that's – well, I put it in mine although I had asked the secretary to put it so that's fine.

7

THE COURT: All right. So reading again, 2.14; 2.16; 2.18;

2.22; select fourteen both agree?

MR. WHITE: Yes.

THE COURT: Okay. 2.23; 2.24; 2.25; 2.26. Now there's a

couple of requests I think Mr. White had, sequestration and note

taking; the prosecutor requests no note taking.

MS. POPE-STARNES: And Your Honor if I may, I contacted

your clerk last week and asked what's the court's procedure was in

that and that's why I put that down –

THE COURT: Okay. That's fine, do you take any position one

way or the other?

MS. POPE-STARNES: No.

THE COURT: All right. Mr. White?

MR. WHITE: Well, I just – it's a long trial, there's going to be

a lot of medical evidence and I don't know if some of the jurors would

be more comfortable, you know, jotting down some notes. I put

myself in that position and I, you know, anybody whose ever been a

student the reaction is to write down what they would like to recall.

THE COURT: It's, I guess a philosophy as much as anything

else, I normally haven't done it but I have done it on occasion too –

MS. POPE-STARNES: My concern –

THE COURT: - again, schools of thought, you can get

confused by writing things down and not paying attention, that

happens to me sometimes, but it's – you know, if there's an

affirmative request from one of the two of you, I'll certainly entertain it.

MS. POPE-STARNES: My only concern, Your Honor, is just as the court just said, a juror might be stressing the note taking and might miss some of the testimony.

THE COURT: You know, I mean, again, Mr. White if there's an affirmative request, I'll entertain it. But I don't want to try to persuade you against it but then we've got to pass out the notes, then we've got to collect and marshal the notes is another thing to preserve for appellate purposes; again, if there's an affirmative request, I'll certainly entertain it.

That's the same thing with questions of jurors, I don't know if you want to bifurcate or treat them together, on either ground.

MR. WHITE: What do you mean - asking questions?

THE COURT: Yes, do you want me to – I have the prosecutor not requesting note taking.

MR. WHITE: Again, just because, Judge –

THE COURT: Are you saying yes, to let them take notes?

MR. WHITE: My belief is that they're going to want to write down some of these key phrases that come up and we have as many as five or six different doctors testifying and assuming that we have a lay person's knowledge –

THE COURT: Okay.

MR. WHITE: - of medical terms and some of these terms are so very important. And I'm not, you know, saying anything other

9

than, I know as a person my inclination would be if I think it's important to write it down and maybe at some point that I'm going to, you know, remember, because they don't – unless they specifically request, they don't hear the testimony again.

THE COURT: Okay. That other door should open, there's a latch right by your head, maybe there's one below too.

MS. POPE-STARNES: Thank you Your Honor.

THE COURT: Anything further on this, either one of you?

MR. WHITE: No, that's my position.

THE COURT: Okay.

MR. WHITE: I'll leave it up to the court's discretion.

THE COURT: All right. I'll allow it if the jurors request it and I'll just make sure that we have a stack available and I'll make sure to caution them, you know, we all are subject to getting things confused or forgetting or not paying attention to the testimony while we're writing notes. So I'll give them that cautionary.

With respect to questions from jurors, from Ms. Pope-Starnes?

MS. POPE-STARNES: Well, Your Honor, I have requested that that not be done. I don't think that it's appropriate, then we have to deal with whether or not the questions are legally admissible and I think that the jury should have to make their – to determine based on the questions that the lawyers or the court asks and the testimony from the witness stand.

THE COURT: Mr. White?

MR. WHITE: That's fine, Judge.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

THE COURT: Okay. All right.

MR. WHITE: Other than questions that may come out of the jury room in deliberations.

THE COURT: Very well. All right. That might be it as far as I'm concerned before we get started and then we have the issue about the two O.I.C's or one, do you want to take a minute and look for that?

MS. POPE-STARNES: The rule, Your Honor, is MRE 6.15 which has to do with the exclusion of witnesses and the sequestration rule.

THE COURT: Okay.

MS. POPE-STARNES: And it says that it does not authorize the exclusion of a person whose presence is shown by a party to be essential to the presentation of the parties cause.

These two officers both were assigned to do the investigation, at times they did separate things; their job as the Officer in Charge is to help me in the presentation of the case and they are both essential to my being able to do that. And as I have indicated, they have both testified at the Walker Hearing, Sergeant Sovik testified at the preliminary examination where Detective Sederlund sat at the table as an Officer in Charge, their testimony for the most part has been preserved, so if there's any issue counsel can certainly impeach them with it; there's transcripts of all of that.

And I don't believe that there is any reason that they both need to be sequestered.

THE COURT: Is there – I take it from your statement that they're both helping out with the whole case, there's not one detective helping with witnesses one through six and then the other detective –

MS. POPE-STARNES: That's true –

THE COURT: - helping –

MS. POPE-STARNES: - but there are occasionally witnesses that only one of them has interviewed and so for me to have one of them at the table and then have to try to contact the other one if I have a question when the witness is on the stand makes it very difficult for me.

THE COURT: Mr. White?

MR. WHITE: Well you –

THE COURT: Well, let me – hold on one second, Mr. White. Not to belabor the point, other than just trying to keep track of things, when one witness is testifying that only one detective was involved with, what's the harm in having the other detective just casually absent himself from the courtroom at that time, if as you said –

MS. POPE-STARNES: Well, Your Honor then the jury is going to wonder why we're sending one detective, why we're doing detectives in and out and I think so that it's not distracting to the jury-

THE COURT: How often would that happen?

MS. POPE-STARNES: - there has to be consistency.

THE COURT: Don't know how often that would happen?

MS. POPE-STARNES: No. I know Sergeant Sovik interviewed most of the firefighters and at least one of the paramedics.

12

THE COURT: Mr. White, again, I'm sorry.

MR. WHITE: Well, you can extend that argument logic ad infinitum –

THE COURT: I know.

MR. WHITE: -you know, you could have the whole department or everybody involved in the case sitting down there and I don't think that is the intent of the court rule is – the Officer in Charge is to assist the prosecutor in the presentation of evidence, you know, garnering of witnesses; we know this, that the testimony of the two officers has been divergent to a certain degree in critical, critical issues regarding statements made by Mr. McBurney supposedly.

I just, you know, I believe it's fair to say designate one and have the other one on call like, you know, so many others.

THE COURT: Okay. Anything further?

MS. POPE-STARNES: Well, again specifically he's talking about things having to do with defendant's statement. We've had a Walker Hearing an extensive Walker Hearing so all that testimony is preserved and there are transcripts available for him to impeach.

THE COURT: Okay. Thank you. The court has heard the arguments of counsel, considered the law applicable in this matter, the court will permit two Officers in Charge; however, as it relates to those witnesses that one officer had nothing to do with, and I'll leave it to Ms. Pope-Starnes, just have that officer – that officer just leave. It shouldn't be – it wouldn't be disruptive to the jury whatsoever. When

they go to get that witness, that officer just stays out there and then the other one comes back.

MS. POPE-STARNES: So the court is indicating, just so I am clear, that if it's one of the firefighters that only Sergeant Sovik interviewed, then he should remain in the hallway?

THE COURT: That's correct, so I'll leave it to you to distinguish between them.

All right. Anything further?

MR. WHITE: Yes, I do, I have a couple of matters and I think it's better to address them now. The prosecution has stated that with regard to the medical records of Nicholas Kennedy that they intend to introduce four pages from Children's Hospital and I just want to put the court on notice that I have reviewed those four pages and I have an objection.

And the objection is this, if they're going to introduce the discharge documents that were the last three pages of those, that it contains phrases that I believe are testimonial in nature. And specifically, on page two of the medical records from Children's Hospital, it contains the statement, final disposition and there's a number that says Shaken Infant Syndrome and on page three it says two statements, Battered Child Syndrome and Shaken Baby Syndrome and I believe that those fall into the category of testimonial in the sense that they were made with the knowledge or the reasonable expectation that someone would be testifying in court about those

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

diagnoses of alleged child abuse that are mandatory to be reported, that are testimonial in nature.

And so we believe under Crawford v Davis, if these particular documents should be admitted, those phrases should be redacted.

THE COURT: So we have three total?

MR. WHITE: That's correct, Judge.

THE COURT: One on page two and two on page three?

MR. WHITE: That's correct.

THE COURT: Thank you. Ms. Pope-Starnes.

MS. POPE-STARNES: Your Honor, I've taken out references to statements by the father. What counsel is referring to is it says final diagnosis and then it lists the principal diagnosis and/or final diagnosis, it says final diagnosis, 99555, Shaken Infant Syndrome, that's on page two, on page three that he's referring to, it says diagnosis discharge, principal, A.L.T., secondary, Battered Child Syndrome, Shaken Baby Syndrome; conditions that coexist at admission or develop subsequently that affect the treatment received or length of stay, these are medical diagnoses, these are not statements by an individual for the purposes of testimony; these are medical diagnoses.

The witnesses that we're going to present are going to testify that abusive head trauma or concerns of abusive head trauma is a medical diagnosis so I don't believe that these should be stricken. This doesn't meet the standard of Crawford, this is not testimonial.

THE COURT: Anything further Mr. White?

15

MR. WHITE: Well, Judge, again, the mandatory nature of the reporting under Michigan law as to suspected abuse, they have to notify Child Protective Services and they have to notify the police. And that mandatory reporting requirement makes it absolutely – reasonable to assume that there is going to be further testimony in court at some point about this statement.

So it is what I would label a medical/legal diagnosis and because it contains statements that allege acts of intent that it is – you know, for us not to be able to cross examine the author, you know, it puts us at a distinct disadvantage and denies our rights through the 5th Amendment.

So I'd ask, you know, the statements of subdural hematoma, skull fracture, iron loss, blood loss, those things are medical diagnoses, this is in the realm of medical/legal diagnosis that again would put us at a distinct disadvantage if we could not cross examine the author.

THE COURT: You're proposing that they're proposing some bad intent by an actor and therefore they're –

MR. WHITE: Testimony.

THE COURT: I - perhaps you can have a good argument with respect to the statement Battered Child Syndrome, but how does that necessarily connote bad intent by a human with respect to Shaken Infant Syndrome? I'm not being goofy here but if the person is on a machine that shakes it, that does not connote any human action causing it.

MR. WHITE: Well, the whole diagnosis, and you'll see from the doctors and again I'll defer to the court's discretion but it is a diagnosis of non-accidental injury, that this is a particular species of non-accidental, that the child is taken and virtually – not months, Judge, but multiple times and that connotes intentional acts, repeated intentional acts which would satisfy the prosecutor's proofs that these were not accidents.

We don't – you know, shaken baby is not a baby who falls, you know, that can be considered an accident. A shaken baby is one who is subject to repeated and intentional acts, so that, Your Honor you know, it's not – well, the diagnosis is not well this child was let's say in a car or whatever, it is that the baby was subject to severe acceleration and deceleration forces perpetrated non-accidentally. And I think that's the core of the diagnosis and because of it, it translates into intent. That puts us at a distinct disadvantage.

MS. POPE-STARNES: Your Honor, the question for Crawford is whether or not it's intended for testimony, it's a medical diagnosis. The fact that a 3200 is required to be filed by the State of Michigan has nothing to do with the fact that before that doctors have to diagnose patients, try to determine what's wrong with them and treat them. And this is a diagnosis.

Just – if a child was involved in an automobile accident and there were injuries as a result of an automobile accident, they would treat them for that. Here, it's diagnosed as Shaken Baby Syndrome. Now I understand what the court is saying about Battered Child

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

Syndrome but you have to recall that this record is from 1988, that is an old term of Shaken Baby Syndrome, Battered Child Syndrome; in fact, the terminology has changed today, it's now abusive head trauma. But it's a medical diagnosis.

THE COURT: Okay. All right. Thank you, I'll let you folks know on that one shortly. And by the way, if you have an extra copy so I can look at it.

MS. POPE-STARNES: Your Honor, it's attached to our response from last weeks motion.

THE COURT: I've got it – I can take it out.

MS. POPE-STARNES: And I'd indicate to the court that when the court makes a ruling then I guess I reserve the right to call a witness from Children's Hospital. Counsel has waited until the day of trial to address this issue.

THE COURT: Fair enough. Okay. What else have we got?

MR. WHITE: Okay. As far as the court's ruling regarding the testimony, regarding the Nicholas Kennedy case, it's my understanding the court's ruling has been that the prosecution can introduce certain medical records from Children's Hospital which we're arguing about right now, the testimony of Detective Paul Sumner regarding statements allegedly made by Steven McBurney in 1998 on or about March 2, 1998; but we are not admitting the criminal case or the Protective Services cases in any respect.

So my concern is what are we going to call this prior case? We can't call it a conviction because we're not admitting the conviction.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO. 800-626-6313

If , you know, at most it would be an accusation or allegation. I just want to know right now so –

THE COURT: How about circum – I don't want to get into negotiations but I don't think that this should be much of an issue between counsel. The circumstances or something like that, I don't know.

MS. POPE-STARNES: Well, I think that Detective Sumner has to be able to – we have to be able to lay a foundation as to what he's doing. I think he should be able to testify that he was conducting an investigation in regards to these injuries.

MR. WHITE: An investigation, child abuse investigation would be satisfactory to the defense.

THE COURT: That's –

MS. POPE-STARNES: The court has already ruled that the conviction is not admissible, you've already ruled on that Judge.

THE COURT: Okay. So I think we're on the same page.

MR. WHITE: Child – an investigation – so then if the court has ruled, you know, it would be Detective Sumner and Children's Hospital records then I'd anticipate that we're not going to – then I would object if we try to elicit any testimony from Detective Sederlund and Sovik about the Nicholas Kennedy case, because –

MS. POPE-STARNES: Well that would be hearsay, Judge.

THE COURT: Okay. So we're on the same page with that one, okay. That's all right.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO. 800-626-6313

Ms. Pope-Starnes, he's doing a great job, I can understand Mr. White trying to knock these things out.

MS. POPE-STARNES: Well, I'm only concerned about the fact that he's had months of preliminary motions and now all of a sudden –

THE COURT: Fair enough –

MS. POPE-STARNES: - today we're going through all of these motions at the last hour.

THE COURT: Fair enough.

MS. POPE-STARNES: That in a murder case I'm not having an opportunity to respond to in writing.

THE COURT: Some of them were – we're all on the same page so there isn't an issue. But what else?

MR. WHITE: I've tendered to sister counsel three sets of medical records that I had withdrawn to move for entry as part of the motion in limine, the records from St. Joseph Mercy Hospital for Madison McBurney for her birth on 12/25/05 – 12/30/05,her treatment at the emergency department on 2/16/05 and there is I believe a March treatment date also for the hip dysplasia.

I have also given her the medical records from Brighton Dermatology regarding the child's condition for aplasia cutis congenital – and I'll get with you on those and the M.R.S.A., and why are these records important?

First of all, Judge, as to the St. Joseph Mercy Hospital records, the prosecutor's will call as a witness Heather McBurney and the

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

child's birth and treatment for an emergency on October – excuse me, February 16th and treatment for hip dysplasia are very important to track the child's medical history, along with the other two records also. Because this is the doctor's from U of M will testify that this child was subject to repeated abuse; there's repeated instances of trauma and that on November 30th when that child went into emergency, C.T. scans and MRI's showed both new and old hematomas and we beg to differ that there was any instance of abuse giving rise to this specific finding of old and new hematomas and that this child was not subject to abuse, that this child was seen on a regular basis, two to three times a month for different reasons, including her hip dysplasia, including her aplasia cutis congenital, including her MRSA, including her well baby checkups; as many as thirty-two different treatments for different reasons with different doctors from the date of her birth through November 30th when she went into U of M. It would be important for the jury to hear the nature and extent of her medical treatment. Because if the allegation is that she was repeatedly abused, why wouldn't some doctor, somewhere, somehow notice one bit of evidence of abuse. So we believe that those records are necessary for that purpose.

Doctor Ronald Uscinski, the expert in this case, that will testify on Tuesday February 26th will testify that this child had a chronic subdural hematoma that became symptomatic the morning of November 30th and that ultimately became fatal in its complications later that evening. And that hematoma that that child had was visible

21

on the August 31st MRI and could have occurred as a result of the birth of this baby, it could have occurred as a result of a fall of February 16th and it could have occurred as a part of a trivial event. But we know it became symptomatic and we know it became fatal. So with that, giving you an idea of what medical testimony is going to be involved, I believe at this point because of Heather McBurney being a witness early in this case, that we would like these medical records admitted along with the – I have a photo album that Heather McBurney will testify, these are pictures of Madison taken over the course of her life, primarily taken by her father and shows the milieu, the family milieu, shows the nature of the child's – shows the child's response to the father. So I believe with that I'd move for the entry of the St. Joe's records, Brighton Dermatology, Dr. Piro (phonetic) and these pictures.

MS. POPE-STARNES: First of all, Your Honor, I would note that last year in 2007 I served a demand for discovery upon counsel, some of these records I am seeing for the first time this morning. These photographs he told me that he was going to get to me, I am seeing for the first time this morning.

First of all in regards to the photographs, there are pages and pages of photographs here, I don't think that it's necessary, I think that it's repetitive and that it's not necessary and it's not relevant to have all of these photographs.

22

THE COURT: Let me ask you this Ms. Pope-Starnes, if you're just seeing now for the first time would you want to go through them, all of them at some other point and have me rule on this later on or –

MS. POPE-STARNES: Well, he's indicated that with the first witness he wants to put these records in –

THE COURT: Well, his case I take it –

MS. POPE-STARNES: No, Heather McBurney is the first witness in the People's case.

THE COURT: Okay. Well –

MS. POPE-STARNES: And I went through the photographs and then the court came right in at 8:30 so I have not had an opportunity to look through these medical records, so I would like the opportunity to do that –

THE COURT: Okay.

MS. POPE-STARNES: - even before I respond in regards to those photographs.

THE COURT: Fair enough –

MS. POPE-STARNES: I've given the court my response in regard to the photographs; I don't have an objection but I think that we do not need all of these photographs in, that it's repetitive and it's a waste –

THE COURT: But if you have – in fairness, if you want to respond to the photographs if you haven't gone through them all, I don't know if there are some –

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

MS. POPE-STARNES: I haven't gone through all the photographs.

THE COURT: All right. Just with respect to the photographs just so we can have some closure to these issues I do note the prosecutor's objection to the redundancy or duplicative nature of it, nevertheless the court will admit them in total.

Mr. White do you have anything else other than the medical records issues to deal with?

MR. WHITE: Excuse me – I forgot my reading glasses, they're on their way here –

THE COURT: Okay.

MR. WHITE: - so I'm trying to see here, Judge.

Oh yes, sister counsel gave me an address for Christa Kennedy Shelton, the mother of Nicholas Kennedy who could be an important witness in this case and I'm having a very difficult time getting her served. My process server was there at the address given and it doesn't appear that anyone is in the house and I am wondering if, you know, we can deal with this as it goes on, if I can serve through the prosecutor; I know that when I needed the authorization, either Detective Sovik or Detective Sederlund were able to get a hold of her and have her come into the South Lyon Police Department. I don't know if she's out of town or whatever, but if I could – I am asking the court to allow me to serve her through the prosecutor. I don't expect her to be called till next week but my guy sat out at her house this weekend for, you know, I know both Saturday and Sunday for hours in

24

order to try to get her served and he identified the house as hers but no one was there.

THE COURT: Just bring it to my attention as time goes by, maybe he can talk to a neighbor and find out if they have any idea where she is.

MS. POPE-STARNES: Your Honor, I would note that I've already – I just talked to Sergeant Sovik, she was on our witness list, I don't know if she was served since they have assistance to do the service so they're going to check whether or not they've served, to find if she was served by them.

THE COURT: Okay. We can –

MS. POPE-STARNES: I know that she has not contacted me either in regards to her testimony.

THE COURT: Thank you.

MR. WHITE: Finally, Judge, this piece of equipment right here, when Dr. Uscinski testifies I'm going to need a similar piece of equipment, I don't know if that's the prosecutors or the courts; if you tell me I need to bring in my own I'll gladly do it, if the clerks can help me –

THE COURT: What is it, a DVD player or something?

MS. POPE-STARNES: It's my computer, my personal computer –

THE COURT: What –

MR. WHITE: I need a patch cord, I need a projector and I need a screen. So if – just – the clerk will let me know.

THE COURT: I'm going to put the burden on your shoulders. You can, at a break or whatever check, we can help you facilitate getting in touch with the court administrator to see if we have something so you don't have to haul the stuff in from your own office, and if not, then you'll have to bring it in. But we can check with court admin later on.

MR. WHITE: And then one final thing. Sitting in the courtroom right now is my client's mother. Do you want her out of the courtroom for the – and she will be a witness. Do you want her out of the courtroom for jury selection?

THE COURT: You might as well- do you want to treat this jury selection – mutual sequestration from the get go or any objection?

MS. POPE-STARNES: No.

THE COURT: Okay.

MR. WHITE: Okay. Very good.

THE COURT: Okay. With – we have a couple of loose strings, we have the medical records defendant seeks introduction of and I note the prosecutor's objection as to the late raising of this issue and also the matters about the statements in the four pages from the Children's Hospital records concerning Nicholas Kennedy.

The court has considered the arguments as it relates to the latter request from the defense and the court finds the statement on page two and page three, 'Shaken Baby Syndrome' they do not independently connote some bad acts. The court finds by themselves, even though

testimony might make that connection, nevertheless, by themselves they are not testimonial and the court will therefore permit them.

With respect to the statement Battered Child Syndrome, that independently does connote it and arguably the testimonial – the court would find that to be testimonial, as well as diagnosis; nevertheless, the court will order that phrase to be whited out or blacked out; that will be the court's ruling there.

Go ahead and look through the medical records if you want, or if you choose, Ms. Pope-Starnes, and Mr. White if you want you can call court admin in the meantime while she's looking at that and we'll get a jury going pretty quick, we'll have to bring one up here because I know there's a lot of courts that are needing a jury.

MS. POPE-STARNES: Your Honor, I do need to ask the court's assistance.

THE COURT: Yes.

MS. POPE-STARNES: The defense indicated that they wanted the crib brought in, we have it here, where would the court like us to put it during jury selection? We thought we would set it up after the jury was selected so it would not be in the way but it still takes up at least the space of a crib mattress.

THE COURT: Let's check with Judge McDonald's staff and see if they have a jury that's out, and if not, maybe we can borrow their jury room in the meantime.

MS. POPE-STARNES: And then once it's set up it will not be able to fit through the back –

FORM CSR-LASER REPORTERS PAPER & MFG. CO. 800-626-6313

THE COURT: How hard is it to set up –

MS. POPE-STARNES: -- doorway –

THE COURT: - is it –

OFFICER: Very easy.

THE COURT: It's very easy?

OFFICER: Yes, four or eight screws.

MR. WHITE: And I've asked that all the bedding that is part

of the crib that was taken from the house, has that been?

MS. POPE-STARNES: Right there –

OFFICER: The sheets on there –

MS. POPE-STARNES: All right, Your Honor, then we'll

check with your clerk. Thank you.

THE COURT: All right. Thanks. Ms. Pope-Starnes when

you're ready just let us know.

MS. POPE-STARNES: Thank you Your Honor.

THE CLERK: All rise.

(Whereupon a pause was had

in these proceedings)

THE CLERK: The court calls the case of the People v

McBurney, case number 07-214651 FC.

THE COURT: Ms. Pope-Starnes, Mr. White, your

appearances are noted for the record. The record will reflect that your

client is present too, is that right?

MR. WHITE: That's correct, Your Honor, and also the

problem that I had about the witness not being subpoenaed, the witness

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

is here in the courtroom, Ms. Christa Kennedy Shelton and it's my belief that Ms. Pope-Starnes is not going to call her as part of her case and I will call her as part of my case. So I tried to speak to her to ask her if she could just give me a phone number that I could give her twenty-four hours notice to be here and she's somewhat reluctant. I'll gladly call her through the police officers if that's it, so as far as I am concerned, she can be released; however, I just need a means to contact her for her to come in and testify. And I am anticipating next Tuesday, Judge, unless something extraordinary happens.

THE COURT: Ms. Pope-Starnes, the detectives, any objection if they go through you to contact that witness?

MS. POPE-STARNES: No.

THE COURT: All right. Thank you. All right, you can handle that.

MR. WHITE: Thank you.

MS. POPE-STARNES: I understand that they do have her telephone number, so –

THE COURT: Great.

MR. WHITE: That is – you know, as far as –

THE COURT: Where ever she is, ma'am, you're – I take it there's no problem, you're free to go but just, you're going to be on call and we're going to be expecting you to come on back whenever that day is. Okay. Ms. Pope Starnes.

MS. POPE STARNES: I've had an opportunity to review the proposed exhibits although I am concerned that Dr. Piro's records are

29

not certified so I don't know if they're complete. I know that the

testing that he ordered is not reflected in here and I believe his

complete file would include the testing results, the MRI of August

2006 and C.T. Scan of 9/11/06, so I have concerns that this is not a

complete record.

    In regards to – are these Dr. Adams?

    MR. WHITE: No, that's Dr. Lipkin.

    MS. POPE STARNES: Okay. In regards to Dr. Lipkin's

records, again, these are not certified, I don't know if these are the

complete records or not. I would like to see the complete records for

both of these.

    THE COURT: Before you reply substantively?

    MS. POPE STARNES: Yes.

    THE COURT: Okay.

    MS. POPE STARNES: Because I don't believe they have a

record keeper here to admit these, certainly under certified records,

they could put that in that way and I would have no objection to it but

then there'd have to be a certification that these are the complete

records.

    The other records from St. Joseph Mercy I've had the

opportunity to look through, I do have a copy of those and I believe

those are complete.

    THE COURT: Okay. Being no objection to St. Joseph records,

those will be admitted with proper foundation.

    Mr. White response to the other?

FORM CSR - LASER REPORTERS PAPER & MFG. CO.   800-626-6313

30

MR. WHITE: As to the other two, Judge, I ordered those through authorizations, not through subpoena for certification, they came in as a part of my discovery. I gave the prosecutor everything that was provided to me. I cannot tell you as an officer of the court whether it's complete, all I can tell you is that was sent to me supposedly as a complete part of the file and so that's all I can tell you and that which I received I've given to the prosecutor as part of our exhibits.

Now I can subpoena the record keeper and I will do that, Judge, and as for certification of the complete file, I'd ask though to admit these with the understanding that certification would be forthcoming; they are part of the complete medical file of Madison McBurney, which I believe that is at issue in this case, probably should have come from the People. But in any regard I don't – I believe it's necessary for Heather McBurney's testimony.

THE COURT: Okay.

MR. WHITE: So I – and we can – first of all, Dr. Piro, most of his file is U of M's file, because he's the one who ordered the MRI of August 31st.

THE COURT: Let's do it this way, with all due respect, let's table those two, do the subpoenas, let's get them and then we can address them with them in hand.

MS. POPE STARNES: I'll just indicate, we don't need a record keeper, I don't think, Judge, if they can get the certification.

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

THE COURT: Just certification, right, right. Just do that and then perhaps the issues will be moot and we'll take it from there. Fair enough?

MR. WHITE: Fine, that will be fine.

THE COURT: Thank you. Are we ready proceed, we can bring up the —

MR. WHITE: Do I – do we use numbers or letters, Judge?

THE COURT: On Exhibits, however you guys want to handle it.

MS. POPE STARNES: The People typically use numbers, Your Honor.

THE COURT: Okay. Do you want to do letters?

MR. WHITE: Yes.

THE COURT: Okay. Those things that are proffered that are not admitted we'll preserve the number or the letter obviously for appellate purposes it will be clear to a reviewing court.

And nothing else, we can have the jury brought up. All right.

And the sequestration order will be in effect, I'll leave it to counsel to police same. Thanks. Just let us know when the jury is ready.

THE CLERK: All rise.

(Whereupon a pause was

had in these proceedings)

THE CLERK: All rise. Calling the case of the People v McBurney, case number 07-214651 FC.

MS. POPE STARNES: Morning Your Honor, Sara Pope Starnes, Assistant Prosecuting Attorney on behalf of the People.

THE COURT: Good morning.

MR. WHITE: Robert White appearing on behalf of Mr. McBurney who is to my immediate right.

THE COURT: Thank you. Good morning counsel and please be seated, sir.

The record will reflect that we have a room of smiling faces, a whole room of faces, we'll leave it at that. Good morning everyone.

A couple of housekeeping matters, it's about ten o'clock now, how many of you have been called to another courtroom already this morning? Anybody? Okay. All right. Did a judge come down and greet you this morning, say good morning?

JURY PANEL: (Nodding affirmatively)

THE COURT: Okay. Was it a male or female?

JURY PANEL: Female.

THE COURT: Female, okay. If it's a male it could have been Judge Mester and I could get rid of all of the instructions because he goes on and on and on in lots of detail. But just a show of hands and counsel might want to look just for future reference, how many of you have been called for jury duty before, just with a raise of hands?

Okay. A good number of you. Of those with your hands up, how many have actually been selected as a juror? Okay. Just kind of curious and counsel might inquire a little bit further later on.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

Now that you've all gotten comfortable, just so I don't forget

I'm going to ask all of you one more time to please stand and I'll have

you swear an oath as potential jurors, okay? Thank you.

(Prospective jury panel

sworn at 10:00 a.m.)

THE COURT: All right. Thank you folks. You can be seated

one more time. I just want to introduce myself, my name is Dan

O'Brien and also the members of my extended – I call it my extended

family, my staff here, Mr. Jeff Romback, my clerk, we also have free

help here today, Paul, an intern from law school, Ms. Barbara Reznick

who is taking everything down, our court reporter; back behind the

scenes so to speak, people that you may or may not run into, my

secretary Ms. Annette Agazio and I also have a clerk, Ms. Jesica Neff

who works with Jeff so she'll be coming in and out and then also I call

her my brains behind the scene, my staff attorney, Ms. Debra Garelik.

Again, you may or may not be meeting those people but just in case

you can kind of put a name with a face later on.

For those of you who have served before, forgive me if some

of these things sound obvious or kind of repeating what you've already

experienced; those of you that haven't, it might be new information for

you, those of you that haven't, just from watching TV or talking to

people who have served on juries before, it might seem kind of

redundant and so forth and forgive me if you will, I've got some

necessary reading that I have to provide for you, it kind of gives you a

thumbnail sketch of what to expect here.

34

I know that jury duty may be a new experience for some of you, jury duty is one of the most serious duties that members of a free society are asked to perform. Our system of self government could not exist without it.

The jury is an important part of this court, the right to a jury trial is an ancient tradition and part of our heritage. The law says that a person – both a person who is accused of a crime and the prosecution have the right to a trial not by one person but by a jury of twelve impartial persons. Jurors must be as free as humanly possible from bias, prejudice or sympathy for either side. Each side in a trial is entitled to jurors who keep open minds until the time comes to decide the case.

I'm not ignoring the lawyers, in a couple of minutes they're going to introduce themselves and their clients and potential witnesses but we'll come to that in just a couple of minutes.

A trial begins with jury selection. The purpose of this process is to obtain information about you that will help us choose a fair and impartial jury to hear this case. During the jury selection the lawyers and I will ask you some questions and this is called the voir dire. The questions are meant to find out if you know anything about this particular case. Also we need to find out if you have any opinions or personal experiences that might influence you for or against the prosecution, the defendant or any of the witnesses; one or more of these things could cause you to be excused in this particular case even though you may be otherwise qualified to serve as a juror.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

The questions may probe deeply into your attitudes, beliefs and experiences, they are not meant to be an unreasonable prying into your private life. The law requires that we get this information so that an impartial jury can be chosen. If you do not hear or understand a question you should say so.

By the way, way in the back, everybody hearing me okay?

JURY PANEL: (No verbal response)

THE COURT: Good enough. Thanks.

If you do understand the questions you should answer truthfully and completely. Please do not hesitate to speak freely about anything you believe we should know.

During the jury selection you may be excused from serving on the jury in one of two ways. First I may excuse you for cause, that is I may decide that there is a valid reason why you cannot or should not serve on this particular case or a lawyer from one side or the other may excuse you without giving any reason for doing so. This is called a peremptory challenge. The law gives each side the right to excuse a certain number of jurors in this way. If you are excused you should not feel bad or take it personally, as I explained before, there simply may be something that causes you to be excused from this particular case.

This is a criminal case involving the charges of homicide, felony murder and child abuse first degree and I will explain them more fully later. These charges have been made against the defendant who is Steven McBurney and the defendant's lawyer is Mr. Robert

36

White. The lawyer for the State of Michigan is Assistant Prosecuting Attorney Sara Pope-Starnes.

Just from those names, anybody recognize the names of anybody so far?

JURY PANEL: (No verbal response)

THE COURT: Okay. At this time I'm going to turn the floor over first to the prosecution and then to the defense and they'll introduce themselves again and any of the witnesses and people that are assisting them and also if you could kind of put a location with a name if you can just so – Mary Jones from Farmington Hills and so forth if you can.

Ms. Pope Starnes

MS. POPE STARNES: Good morning ladies and gentlemen. Again, my name is Sara Pope-Starnes and I'm Assistant Prosecuting Attorney here in Oakland County and I am joined today by Sergeant Christopher Sovik from South Lyon Police Department and Detective Christopher Sederlund from South Lyon Police Department.

The list of witnesses that we may call besides the two officers are Sergeant Baaki from South Lyon Police Department, Officer Barbour from South Lyon Police Department, from the South Lyon Fire Department, David Johnston, Craig Johnston, Kevin Schuldt, Alex Smith; from Huron Valley Ambulance, Dennis Timmerman or Matthew Calus; possibly Sara Weaver from Washtenaw County Protective Services. From University of Michigan Hospital possibly Dr. Fleming, Nurse Regina Kynard, Dr. Sikavitsas, Dr.Louie, Dr.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

Sang, Dr. Yang, Dr. Lena Dev, Dr. Shanley, Dr. Steven Leber, Dr. Odetola, Dr. Margolin, Dr. Cormac Maher, Dr. Christopher Fox or Dr. Gail Annich.

Also the People intend to call Sergeant Paul Sumner from the Northville Township Police Department, Dr. Dragovic, the Oakland County Medical Examiner and possibly Sue Smith a social worker from Huron – excuse me – University of Michigan Hospital. Thank you.

THE COURT: Thank you. Any of those names, anybody recognize? Okay. Sir, I don't want you to answer yet because in the event you're not even called it will be a moot point but just hold the thought, okay?

JUROR: Thank you.

THE COURT: Mr. White.

MR. WHITE: Good morning. My name is Robert White, I represent Steven McBurney, Steven lives in South Lyon, Michigan –

THE COURT: Little bit louder, Mr. White –

MR. WHITE: I'm sorry.

THE COURT: That's okay.

MR. WHITE: Witnesses that we may call are his wife, Heather McBurney, his mother, Cynthia McBurney, by the way Heather lives in South Lyon also; Cynthia McBurney lives in Plymouth, Michigan, Gary Linville, father-in-law, lives in Kalamazoo, Trina Hartman a friend of the family who lives in Fenton, Lynn Peterson and Sharon Klump (phoen) they're child care workers

38

working at Pitter Patter at South Lyon, Michigan. Dr. Robert Adams, he works at Brighton Family Care, a pediatrician, Krista Shelton, she lives in Superior Township, I believe that's by Ypsilanti and Dr. Robert Uscinski, he is a pediatric neurosurgeon who practices in Maryland, affiliated with Georgetown University. I believe those are the witnesses that we may call in this case.

THE COURT: Thank you Mr. White. And again, show of hands, does anybody recognize any of those names?

JURY PANEL: (No verbal response)

THE COURT: Okay, seeing none, thank you.

What we're going to do now folks is we're going to draw names, Mr. Romback is going to select your name and then you'll fill in the back row, we're going to select fourteen jurors. As I've mentioned earlier, we're going to have a jury of twelve and I'll explain why we're going to have a couple of alternates and we'll explain that later on.

MR. WHITE: I'm sorry, Judge –

THE COURT: Go ahead.

MR. WHITE: Scott Merriman of Plymouth, Michigan also may be a witness who is S.M. Lawn Service.

THE COURT: Thank you, no problem. Again, anybody know that name? Okay. Seeing none.

We'll just call your names by name or number and then you'll fill up the back row starting at this end working your way down and then we'll fill the front row, okay, and then we'll take it from there.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO  800-626-6313

Jeff.

THE CLERK: Court calls juror number 117, Penelope
Avesian.

THE COURT: Morning ma'am –

JUROR: He did well with my name.

THE COURT: How about that, he's been practicing it, I saw
him.

THE CLERK: Court calls juror number 99, Ryan Jin.

THE COURT: Boy you're here for the long haul. Good
morning – and look at him too – good morning, sir.

JUROR: Good morning.

THE CLERK: Court calls juror number 48, Ronald Cronan.

THE COURT: Morning to you, sir.

JUROR: Morning.

THE CLERK: Court calls juror number nine, John Hill.

THE COURT: Mr. Hill, hi there.

JUROR: Hi.

THE CLERK: The court calls juror number 132, Leroy Waite.

THE COURT: Morning to you, sir.

JUROR: Morning.

THE CLERK: Court calls juror number 216, Elizabeth Zuazo.

JUROR: Zuazo

THE COURT: Well, he can't do them all right. Morning to
you ma'am.

THE CLERK: Court calls juror number 47, Kevin Boes.

40

THE COURT: Mr. Boes, hi there.

JUROR: Hi.

THE CLERK: Court calls juror number 14, Patricia Chamberlain.

THE COURT: Ms. Chamberlain, always have to be in the farthest corners. Morning Ms. Chamberlain.

JUROR: Morning.

THE CLERK: Court calls juror number 8, Amy Chalmers.

THE COURT: Hi Ms. Chalmers.

JUROR: Morning.

THE COURT: Morning.

THE CLERK: Court calls juror number 111, Karen Anderson.

THE COURT: Morning to you Ms. Anderson.

JUROR: Morning.

THE CLERK: Court calls juror number five, Nina Johnston.

THE COURT: Hi Ms. Johnston.

JUROR: Hi.

THE CLERK: Court calls juror number 41, Rafat Kuza.

THE COURT: How did he do? Do all right?

JUROR: Yes.

THE COURT: All right, good.

THE CLERK: Court calls juror number 204, Frank James.

THE COURT: Hi Mr. James.

JUROR: Morning.

THE COURT: That front row is disappearing quick.

THE CLERK: And the court calls juror number 3, David

Hurd.

THE COURT: Mr. Hurd, good morning to you.

JUROR: Morning.

THE COURT: In a couple minutes, folks, I'm going to have a

couple of brief questions and counsel is going to ask you some

questions but actually I'm going to first talk to everyone whose names

I've not chosen. I invite you if you're having any difficulty hearing

me, those that are in the back, to move up a little bit closer. If you're

okay that's fine.

But your job is actually going to be more difficult than the

potential jurors who have been selected or called right now. Counsel is

going to ask them a series of questions and if for whatever reason any

of them are excused, your name will be called and you'll possibly be

called and you'll come up in their spot. Rather than go through the

whole litany of all the questions over again, I'm just going to ask if

you were able to see and hear everything okay and I'd ask you right

now as you hear the questions that are being posed to these folks, just

make mental notes and store them in the back of your mind so that

when your name is called, oh, yeah, you know, one question about this

and so on and so forth, are you following me? So if you'd just kind of

keep that in mind. All right.

We're thinking that this trial is going to last seven or eight days

is the best guess so to speak, I'm supposed to read a sentence, I guess

I'll just read it; if you believe that the length of the trial will be a real

42

hardship for you, please let me know this right now; well, I don't

know of any type of a hardship except real hardships, obviously, and

by being here we're all – you're all suffering a hardship. So what I'm

going to basically ask if there's any unworkable conflicts that any of

you have that you feel are more distinct than anyone else's.

Yes, we'll start with you, ma'am.

JUROR:  All right. I'm recovering from treatment from lung

cancer and –

THE COURT:  Sorry –

JUROR:  - and lung infection, plus my daughter who I haven't

seen for almost a year is coming to visit for five days tomorrow,

starting tomorrow.

THE COURT:  Okay.

JUROR:  So I'd like to be available to see her.

THE COURT:  She's out of state or something?

JUROR:  Yes.

THE COURT:  Okay. All right. How's it going with the

recovery?

JUROR:  It's going okay, but it's been a tough battle.

THE COURT:  I'm sure. You look great.

JUROR:  Thank you.

THE COURT:  Do you have to do anything with the recovery

in terms of going to doctors?

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

JUROR: Yeah, I see my oncologist regularly, I see him – I have my next appointment on Friday and I'm on medication for a fungal infection that's in my lung right now.

THE COURT: Okay.

JUROR: So – and I do experience vertigo and it's difficult for me sometimes to get out –

THE COURT: Okay. All right. Let's just say that if the case does go for a couple weeks, how many appointments would you, assuming – perhaps we can – if for whatever reason you're selected, tweaking schedules to – you know, we won't be going five days a week, we'll have half days here, half days there and so forth and how many appointments would you anticipate that you would have to –

JUROR: Probably two or three.

THE COURT: Two or three, okay, all right. Hold the thought, we'll come back to you. Okay. Thanks.

And, sir, you had your hand up –

JUROR: Yes –

THE COURT: Well, let's just go right down, juror number two go ahead.

JUROR: Actually – I have a conference scheduled Thursday till Sunday.

THE COURT: Thursday till Sunday. All right. Is that out of state or –

JUROR: It's actually in Florida –

THE COURT: I'm sorry?

**44**

JUROR: Florida.

THE COURT: Florida, yeah, sure.

JUROR: And I also have some medical treatments, I am actually an oncologist.

THE COURT: I'm sorry?

JUROR: I'm an oncologist.

THE COURT: An oncologist, all right. Jokes aside, everybody – and I'm not saying that it's not meritorious or anything but those are the conflicts that we're all kind of – you all are kind of dealing with. But again, hold the thought and we'll come back to you.

Yes, sir, you're number four.

JUROR: I have a business trip, I've booked everything, tickets I've paid for and I'm leaving for Europe I'm supposed to leave on the 29th and I'm supposed to be in trial on the 27th.

THE COURT: Is it a business for yourself or you work for someone or – .

JUROR: For my employer.

THE COURT: I'm sure that you're specially chosen for the trip but is there any possibility that anyone else can serve in your place? And the reason why I ask, let me emphasize all three of you I personally and I know counsel agree with me, these are all hardships but you've got to also look at it from our perspective, we remove all of you, these people come up, it's a balancing test as to what hardship is more distinct than everyone else's. So that's why I ask that, not because I think we'll – it's not sufficient, are you following me?

45

JURY PANEL: (No verbal response)

THE COURT: Is there anyone that can serve in your place?

JUROR: I've scheduled – I'm in the UK and then I'm in Germany and then I'm back in the UK so it's something that it would be difficult to get somebody else to step in.

THE COURT: Okay. When are you scheduled to leave?

JUROR: I'm flying out the night of the 29th but I'm supposed to be in trial on the 27th –

THE COURT: So you're availability barring any denial of your circumstances is up through the 27th?

JUROR: Yes.

THE COURT: What's the date today?

MS. POPE STARNES: 19th.

THE COURT: The 19th okay, so next week some time, next Wednesday, okay. Likewise just store it away, we'll address that. Anybody else in the back row?

JURY PANEL: (No verbal response)

THE COURT: And in the front row, yes, sir, whatever number you are?

JUROR: Yes, I run a retail store, a supermarket in Ecorse and I mean I work – I have to be there, you know, I'm the one that opens and closes every day, I work like seven days and I'm there from 8 a.m. to 8 p.m., I mean it's a financial obligation, I have to do it for my family –

THE COURT: I understand –

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

JUROR: - and I left my cashier today just to run the operation, I mean I have to be there, I've been doing it for over two years, no – I mean no time off or nothing –

THE COURT: Sure.

JUROR: - so I'm very very committed to that place, I have to be there, I have to run it, there's a lot of transactions we do, you have to understand there's a lot of things that we do in that place –

THE COURT: What is it a grocery store?

JUROR: Yeah –

THE COURT: Yep, I worked at one for eight years so I hear you.

JUROR: And we have the office and we do a lot of transactions in that city and I mean we take care of about four or five cities around us so I'm very very heavy needed there, and I have to, there's nobody else that does it except me.

THE COURT: Okay.

JUROR: So that's a problem.

THE COURT: Same thing, I echo the same words that I said before, there is nobody that's sitting here that's not suffering a hardship –

JUROR: No, I understand that –

THE COURT: No I know, we're not arguing, I'm just – I appreciate it and we'll store that away and address it when the time comes.

JUROR: Thank you.

47

THE COURT: Okay. Thank you.

Yes, sir.

JUROR: I'm reluctant to tell you that I'm self employed and I have the same problems as my neighbor –

THE COURT: Certainly –

JUROR: - I run a catering business and it's kind of nice to be there all the time.

THE COURT: That's why I have kind of taken the liberty to tweak these instructions, when it says does anybody have any real hardships, but nevertheless, we'll store that away and counsel is aware of it and we'll address it as time goes by.

We kind of touched on this one of already, some of you may have health problems that would prevent you from serving on a jury, for example, does anyone have a medical problem that makes you unable to sit for two or three hours at a time?

And, ma'am, does that kind of pertain to you or are you okay on that line?

JUROR: No, I can sit.

THE COURT: All right.

JUROR: If you had me standing I couldn't do it.

THE COURT: Good enough. Does anyone have any sight problems.

JURY PANEL: (No verbal response)

THE COURT: And I don't know how anybody could possibly answer –

JUROR: Excuse me, Judge.

THE COURT: Oh, I'm sorry, yes, ma'am.

JUROR: I do have a vision problem, I can't see far away very well.

THE COURT: Can you see me all right?

JUROR: Oh, yeah.

THE COURT: I'm sorry for you but – okay. But in terms of – as you sit right next to Ms. Reznick, you'd be able to see that okay?

JUROR: Oh, yeah, when you said vision problems.

THE COURT: Okay. I don't know how anyone can possibly answer this question. Does anyone have a hearing problem? Well, you'd have to be able to hear the question in order to say yes, but – does everybody, just nod of the head can hear me okay?

JURY PANEL: (No verbal response)

THE COURT: Okay. Good enough. All right, thanks. Ma'am, we'll store your information away and come back to it when the time comes if necessary.

At this time we'll talk about the charges in this case, this is, again as I mentioned, a criminal case. The document used to charge the defendant with a crime is called an information. The information in this case, I'm going to ask Ms. Pope Starnes to read it for you just so you hear specifically the charges.

Ms. Pope Starnes.

MS. POPE STARNES: Thank you.

The People of the State of Michigan v Steven Lindsey McBurney, in the name and by the authority of the People of the State of Michigan, David G. Gorcyca, Prosecuting Attorney for the County of Oakland who prosecutes for and on behalf of the People of the State of Michigan appears before the court and informs the court that in Oakland County Michigan the defendant on or about November 30, 2006, Count I, Homicide, Felony Murder, did while in the perpetration or attempted perpetration of Child Abuse in the First Degree, Murder one Madison McBurney contrary to the statute in such case made and provided and against the peace and dignity of the People of the State of Michigan.

Count II, Child Abuse in the First Degree; did knowingly or intentionally cause serious physical harm to Madison McBurney, age eleven months, a child, contrary to the statute in such case made and provided and against the peace and dignity of the People of the State of Michigan.

THE COURT: Thank you Ms. Pope Starnes.

The defendant has pled not guilty to these charges. You should clearly understand that the information that has just been read is not evidence. An information is read in every criminal trial so that the defendant and jury can hear the charges. You must not think it is evidence of his guilt or that he must be guilty because he has been charged.

Now with that I would turn the floor over to Ms. Pope Starnes, again, like I said, she's going to ask some questions loud enough for

FORM CSR-LASER REPORTERS PAPER & MFG. CO. 800-626-6313

all of you to hear as well, and just store the information and then we'll
proceed with Mr. White after that. Ms. Pope Starnes.

MS. POPE STARNES: Your Honor, may I move the podium?

THE COURT: Yes. In fact, have the wheels been fixed? Oh,
good, hopefully that will wiggle around, we've seen a couple of trials
where the people almost flipped over, so it's working all right?

MS. POPE STARNES: Warn me now, Judge, before I do that.

THE COURT: All right.

MS. POPE STARNES: Good morning again, ladies and
gentlemen. Now I know the judge asked if any of you had any
previous experience as a juror and a lot of people raised their hands.
Would you in the jury box please raise your hands if you've had
previous experience as a juror?

Okay. Let's start with juror number one, Ms. Avesian?

JUROR: Yes.

MS. POPE STARNES: And what type of case did you serve
as a juror?

JUROR: It was robbery.

MS. POPE STARNES: Was that here in Oakland County?

JUROR: Uh-huh (affirmatively)

MS. POPE STARNES: And was your jury able to come to a
verdict?

JUROR: Yes.

FORM CSR-LASER REPORTERS PAPER & MFG. CO. 800-626-6313

MS. POPE STARNES: Is there anything about that experience that you believe would make you unable to be fair and impartial in this case today?

JUROR: I don't think so.

MS. POPE STARNES: Mr. Cronan did you raise your hand?

JUROR: Yes.

MS. POPE STARNES: Juror in seat number three, what type of jury did you sit on?

JUROR: It was a civil case but I was selected as a juror, seated and during the lunch period they settled out of court so we never actually went through the trial.

MS. POPE STARNES: Okay. Is there anything about that experience that you believe would make you unable to be fair and impartial in this case?

JUROR: No.

MS. POPE STARNES: Mr. Cronan while we're talking, are you any relation to Chief Cronan, the police chief in the Bloomfield area?

JUROR: No.

MS. POPE STARNES: Okay. And Ms. Chamberlain?

JUROR: Yes.

MS. POPE STARNES: And you had previous jury experience?

JUROR: Yes. I was on a case here for an attempted murder.

THE COURT: And if you could just be a little bit louder.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

JUROR: Oh. I was on a case here for attempted murder –

MS. POPE STARNES: Okay.

JUROR: - and I was – after the case was all heard, after two weeks I was asked to leave –

MS. POPE STARNES: Oh, you were –

JUROR: - they picked one juror to leave and it was me.

MS. POPE STARNES: You were one of the alternates?

JUROR: Yes, I was.

MS. POPE STARNES: Okay. And you understand that we have two alternates in this case, correct?

JUROR: Yes.

MS. POPE STARNES: Okay. And is there anything about that experience that you think would make you unable to be fair and impartial in this case?

JUROR: No.

MS. POPE STARNES: While we're speaking, Ms. Chamberlain, I know that you have some issues with your vision-

JUROR: Yes.

MS. POPE STARNES: You can see this box over here on the far side of the courtroom that has like a string that pulls down?

JUROR: Yes.

THE COURT: I'm sorry I thought you were talking about the chalkboard, the visual you're looking at?

MS. POPE STARNES: I'm indicating the screen.

THE COURT: Got you.

MS. POPE STARNES: And we may be showing some photographs on that screen during the trial. Can you tell me, are you able to see that distance?

JUROR: Yes, I could be okay with that.

MS. POPE STARNES: Okay. So the photographs that's hanging on the wall of previous judges, you're able to see that?

JUROR: Yes –

MS. POPE STARNES: Okay. Great –

JUROR: - don't ask me to read it but I can see the picture.

MS. POPE STARNES: Now you've heard from a list of witnesses that we've given that we're going to be calling some police officers as witnesses.

Are there any of you who have had any type of experience with a police officer that you believe would make you to be unable to be fair and impartial in judging the credibility of the police officers in this case?

JURY PANEL: (No verbal response)

MS. POPE STARNES: Okay. Now the judge has already given you some instructions and as the trial goes along he will give you further instructions about the law and one of the things that he'll talk about is that crimes are made up of parts that we call elements and the judge will talk to you about what the elements or the parts of felony murder and child abuse in the first degree are that we're required to prove.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

Do you all understand that the People don't have to prove
every single fact beyond a reasonable doubt but only each and every
part or element of those crimes beyond a reasonable doubt, do you all
understand that?

JURY PANEL: (No verbal response)

MS. POPE STARNES: Okay. Now do any of you have any
experience in medicine?

Okay. We'll start with juror in seat two, is it doctor?

JUROR: Yes.

MS. POPE STARNES: Dr. Jin?

JUROR: Yes.

MS. POPE STARNES: And I believe that you said that you're
an oncologist?

JUROR: Yes.

MS. POPE STARNES: What hospitals are you affiliated with?

JUROR: Henry Ford.

MR. WHITE: I didn't hear the response?

THE COURT: Henry Ford Hospital.

JUROR: Henry Ford.

MS. POPE STARNES: And Dr. Jin are you familiar with any
of the doctors from the University of Michigan Hospital that's been
listed as witnesses?

JUROR: No.

MS. POPE STARNES: Is your area of oncology just with
adults or children?

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

JUROR: Mostly adults.

MS. POPE STARNES: And are you familiar with Dr.

Dragovic, the Oakland County Medical Examiner?

JUROR: I've worked with his wife who is also an oncologist.

MS. POPE STARNES: At Henry Ford Hospital?

JUROR: Yes.

MS. POPE STARNES: Is there anything about the fact that

you work with Dr. Dragovic's wife that you believe would make you

unable to be fair and impartial in this case?

JUROR: No.

MS. POPE STARNES: And are you familiar with Dr.

Uscinski, the defense expert that was noted and talked about?

JUROR: No.

MS. POPE STARNES: Now I believe, ma'am, Ms. Johnston –

JUROR: Chalmers –

MS. POPE STARNES: All right. Okay. You are also in the

medical field?

JUROR: Yes.

MS. POPE STARNES: What do you do?

JUROR: I'm a Registered Nurse at Beaumont Urology.

MS. POPE STARNES: And are you familiar with any of the

doctors that we've talked about that could be witnesses in this case?

JUROR: I've heard of them but –

MS. POPE STARNES: Okay. Do you work with children at

Beaumont or adults?

JUROR: Adults only.

MS. POPE STARNES: While we're talking about this, there will be a considerable amount of medical testimony in this case that will be important for you to help decide what's happened here and whether or not a crime was committed. There will also be testimony from the Medical Examiner Dr. Dragovic and possibly some photographs that Dr. Dragovic – that we'll seek to admit through Dr. Dragovic so he can explain and show the injuries that he found at the autopsy.

Are there any of you that will be unable to sit as a juror because of the nature of that type of testimony or of those types of photographs?

JURY PANEL: (No verbal response)

MS. POPE STARNES: Okay. Now I'd like to ask the jurors about – I'd like to ask you about your occupation; I know that you all filled out a questionnaire and counsel and I have had access to them but not all the information that we have is complete.

So Ms. Avesian, are you employed?

JUROR: I'm a retired art teacher.

MS. POPE STARNES: Art teacher, where did you teach?

JUROR: I taught at Detroit Country Day for twenty-one years and I retired in 2006.

MS. POPE STARNES: Are you married?

JUROR: Yes.

MS. POPE STARNES: And is your spouse retired as well?

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

JUROR: No, he's still working, someone has to bring in the bacon.

MS. POPE STARNES: Good for you. Do you have any children?

JUROR: Yes, I have three children and the youngest daughter is living at home, the oldest daughter is in Colorado and a son who lives in Troy who is an auxiliary police officer for Birmingham.

MS. POPE STARNES: And how long has he worked as an auxiliary police officer?

JUROR: Oh, gosh, it's been years, I'd say – he's thirty-two, he's done it probably for at least eight years.

MS. POPE STARNES: Do you and he talk about his work?

JUROR: A little bit, he's – he's very dedicated, he likes doing the volunteer work, he's very – he comes over – a lot of times he comes from work to our house to change and put on his vest and his uniform and go to work and everything so I have a great deal of respect for what he does.

MS. POPE STARNES: Is there anything about the fact that your son works as an auxiliary police officer that you believe would make you unable to be fair and impartial in this case?

JUROR: I don't think so other than I have a high regard for police officers.

MS. POPE STARNES: Are you able to listen to a police officer's testimony and give it the – consider it and give it the same

weight or credibility as any other witness? In other words, not give it more weight just because they're a police officer?

JUROR: Well –

THE COURT: Actually, let me –

JUROR: I'd like to –

THE COURT: - go ahead.

JUROR: - think that he'd be a little more truthful or honest but I guess that's not really relevant. I don't think so.

MS. POPE STARNES: Okay. Dr. Jin we talked about your employment. Are you married, sir?

JUROR: Yes.

MS. POPE STARNES: And is your spouse employed?

JUROR: No.

MS. POPE STARNES: Do you have any children?

JUROR: I have a two and a half year old and six months.

MS. POPE STARNES: Mr. Cronan how are you employed, sir?

JUROR: I'm a buyer for Halloween U.S.A. Stores.

MS. POPE STARNES: Halloween U.S.A.?

JUROR: Yes.

MS. POPE STARNES: My kids love those stores. And how long have you been doing that?

JUROR: Fifteen years.

MS. POPE STARNES: And are you married, sir?

JUROR: Yes.

MS. POPE STARNES: And is your spouse employed outside the home?

JUROR: Yes.

MS. POPE STARNES: What does she do?

JUROR: She works at the Travel Hub here in Waterford.

MS. POPE STARNES: And do you have any children?

JUROR: Two.

MS. POPE STARNES: And what are their ages?

JUROR: Thirty and twenty-seven.

MS. POPE STARNES: And grandchildren?

JUROR: Not yet, one on the way.

MS. POPE STARNES: Congratulations.

Mr. Hill, I believe that you testified that you're scheduled to go on a business trip?

JUROR: Yes.

MS. POPE STARNES: And what is your employment, sir?

JUROR: It's Liden's Automotive (phoen) American but it does auto parts.

MS. POPE STARNES: And what type of work do you do for them?

JUROR: I'm director of sales.

THE COURT: And if everybody could just really try hard to keep your voices up because actually it's not just for us but for everybody back there too, so.

JUROR: Okay.

60

MS. POPE STARNES: And are you married, sir?

JUROR: Yes.

MS. POPE STARNES: And is your spouse employed outside

the home?

JUROR: No.

MS. POPE STARNES: Do you have any children?

JUROR: Four.

MS. POPE STARNES: And what are their ages?

JUROR: Thirty-five, thirty-one, twenty-six and twenty-three.

MS. POPE STARNES: And do you have any grandchildren?

JUROR: Two.

MS. POPE STARNES: And their ages?

JUROR: Three and seven.

MS. POPE STARNES: Okay. Mr. Waite –

JUROR: Yes.

MS. POPE STARNES: Are you employed, sir?

JUROR: Yes.

MS. POPE STARNES: How are you employed?

JUROR: I'm a truck driver.

MS. POPE STARNES: How long have you done that?

JUROR: Forty years.

MS. POPE STARNES: And are you married?

JUROR: Yes.

MS. POPE STARNES: And is your wife employed outside the

home?

JUROR: No.

MS. POPE STARNES: Do you have children, sir?

JUROR: Yes.

MS. POPE STARNES: And what are their ages?

JUROR: Forty-four down to thirty-three.

MS. POPE STARNES: And do you have grandchildren?

JUROR: I have ten.

MS. POPE STARNES: Congratulations.

Ms. Zuazo – is it Zuazo?

JUROR: Zuazo.

MS. POPE STARNES: Zuazo, am I pronouncing that correctly?

JUROR: Uh-huh (affirmatively)

MS. POPE STARNES: Are you employed, ma'am?

JUROR: No, I'm retired.

MS. POPE STARNES: What did you do before you retired?

JUROR: I was a supervisor at Amerisure Companies which is an insurance company.

MS. POPE STARNES: Are you married?

JUROR: Yes.

MS. POPE STARNES: And is your husband employed or retired?

JUROR: My husband still works with Oakland County Health Department as an environmentalist.

MS. POPE STARNES: Okay. And do you have any children?

JUROR: Yes, three.

MS. POPE STARNES: What are their ages?

JUROR: Thirty-six, twenty-nine, twenty-six.

MS. POPE STARNES: And do you have grandchildren?

JUROR: Not yet.

MS. POPE STARNES: Okay. Mr. Boes.

JUROR: Yes.

MS. POPE STARNES: Are you employed, sir?

JUROR: Yes.

MS. POPE STARNES: How are you employed?

JUROR: Computer sales.

MS. POPE STARNES: And are you married?

JUROR: Married, two children, twelve and seventeen.

MS. POPE STARNES: Does your wife work outside the

home?

JUROR: Outside the home, no, in the home part time.

THE COURT: Don't let her –

JUROR: You know what I mean, she gets the paycheck for

part time work – not from me.

THE COURT: - you're dead –

MS. POPE STARNES: Oh, okay, what type of part time work

does she do?

JUROR: Medical billing.

MS. POPE STARNES:  Do you know who, in regards to medical billing whether or not – are you familiar with any of the doctors that we have named?

JUROR:  No.

MS. POPE STARNES:  Okay. Ms. Chamberlain –

JUROR:  Yes.

MS. POPE STARNES:  And how are you employed ma'am?

JUROR:  I work for Huron Valley Schools, I'm a cafeteria manager and also satellite manager, I feed eleven elementry's every day.

MS. POPE STARNES:  So you don't work specifically at one of the elementary –

JUROR:  No, I –

MS. POPE STARNES:  - you oversee all of them?

JUROR:  I oversee every elementary and my middle school.

MS. POPE STARNES:  One of the middle schools or?

JUROR:  Muir Middle School –

MS. POPE STARNES:  In Milford, yes.

JUROR:  I manage that cafeteria plus – everything is based out of Muir for all of the eleven elementary schools, everything comes out of my kitchen and goes to them.  Okay. I make a lot of lunches every day.

MS. POPE STARNES:  Are you married?

JUROR:  Yes, I am.

MS. POPE STARNES:  And how is your husband employed?

JUROR: He is a plumber.

MS. POPE STARNES: And do you have any children?

JUROR: Yes, I have two, thirty-one and twenty-eight.

MS. POPE STARNES: And do you have grandchildren?

JUROR: Yes, I do.

MS. POPE STARNES: How old are they?

JUROR: They're three and I have two that are seven days apart, they're two years old.

MS. POPE STARNES: Ms. Anderson –

JUROR: Yes –

MS. POPE STARNES: Oh, I'm sorry, ma'am, I missed –

THE COURT: Is it Chalmers?

MS. POPE STARNES: My mistake, Ms. Chalmers, are you employed?

JUROR: Yes.

MS. POPE STARNES: How are you employed, ma'am?

JUROR: I'm a Registered Nurse at Beaumont Urology.

MS. POPE STARNES: That's right, we talked about –

JUROR: Royal Oak.

MS. POPE STARNES: - I'm sorry. And are you married?

JUROR: No.

MS. POPE STARNES: Do you have any children?

JUROR: Yes.

MS. POPE STARNES: How many children do you have?

JUROR: One fifteen year old daughter.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

MS. POPE STARNES:  And Ms. Anderson, how are you employed, ma'am?

JUROR:  I'm an accounting clerk.

THE COURT:  Again, just if you can, just real loud, okay.

JUROR:  Accounting clerk.

MS. POPE STARNES:  And are you married, ma'am?

JUROR:  No, I'm single.

MS. POPE STARNES:  Do you have any children?

JUROR:  Thirty-six and thirty.

MS. POPE STARNES:  You don't look that old.  Do you have any grandchildren?

JUROR:  Eighteen and seventeen.

MS. POPE STARNES:  Thank you. And Ms. Johnston –

JUROR:  Yes.

MS. POPE STARNES:  Are you employed, ma'am?

JUROR:  I recently retired from the Pontiac School District.

MS. POPE STARNES:  Congratulations. What did you do at Pontiac School District?

JUROR:  I was an administrative assistant but actually I worked in the school offices all over the district, all levels, high school, junior high, elementary.

MS. POPE STARNES:  And are you married?

JUROR:  No, I'm a widow.

MS. POPE STARNES:  I'm sorry. Do you have children?

JUROR:  Four children, three grandchildren, one on the way.

66

MS. POPE STARNES: Congratulations. Mr. Kuza.

JUROR: Yes.

MS. POPE STARNES: I know that you told us that you are the owner of a retail store?

JUROR: Yeah.

MS. POPE STARNES: Are you married, sir?

JUROR: Yes, married. Name of the store by the way is O'Brien's Supermarket.

THE COURT: Does that mean I get a discount. He may charge me double.

JUROR: Yes, married, my wife she works – she helps out with the paperwork for the business and she works out of the home. I have three children, seventeen, sixteen and fifteen.

MS. POPE STARNES: Thank you nicely done. Mr. James.

JUROR: Yes.

MS. POPE STARNES: You told us that you are self employed in a catering business?

JUROR: Yes.

MS. POPE STARNES: And are you –

JUROR: But it's not O'Brien's Catering.

MS. POPE STARNES: And are you married?

JUROR: Yes.

MS. POPE STARNES: And does your wife work outside of the home?

JUROR: She works for the City of Birmingham part time.

MS. POPE STARNES: And what does she do?

JUROR: She's a payroll clerk.

MS. POPE STARNES: And do you have any children?

JUROR: I have two, thirty-eight and thirty-six.

MS. POPE STARNES: And grandchildren?

JUROR: Three grandchildren, five, three and two – no, five three and a half actually.

MS. POPE STARNES: Thank you. And Mr. Hurd?

JUROR: I'm a self-employed photographer.

MS. POPE STARNES: Are you married?

JUROR: Yes, I am.

MS. POPE STARNES: And does your wife work outside the home?

JUROR: No, she doesn't, she works at home.

MS. POPE STARNES: Okay. Being a homemaker or in a part time –

JUROR: No, she's a advertising designer.

MS. POPE STARNES: Okay. And do you have children?

JUROR: Yes, I have five.

MS. POPE STARNES: And what is their age ranges?

JUROR: Twenty-two to thirty-two.

MS. POPE STARNES: Okay. Now, in Michigan our legislature has created laws prohibiting the intentional abuse of children by their parents. Obviously if they had done that then it's because there are occasions when children are abused by their parents.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

Are there any of you, first of all, that believe that child abuse should not be a crime?

JURY PANEL: (No verbal response)

MS. POPE STARNES: Are there any of you that believe that a parent could not possibly abuse or injure their child?

JUROR: Say that again?

MS. POPE STARNES: Are there any of you that believe that a parent couldn't possibly injure or abuse their child?

JURY PANEL: (No verbal response)

MS. POPE STARNES: Now I need to ask, have any of you seen or heard anything about this case in a newspaper or on the television or the radio?

JURY PANEL: (No verbal response)

MS. POPE STARNES: And do you all understand that what's important in this case and the judge will talk to you about this, is the evidence that you have to consider is only what you hear in this courtroom, only what comes from this witness stand and what the judge rules is allowed into evidence as an exhibit, do you all understand that?

JURY PANEL: (No verbal response)

MS. POPE STARNES: Would you all agree with me that unfortunately, frequently the news media can be incorrect in their reporting of a story?

JURY PANEL: (No verbal response)

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

MS. POPE STARNES: As a juror, you are called to sit upon this case in judgment, in other words, to make a decision. Do you all understand that we are not asking you to make a decision or sit in judgment as to whether or not the defendant is a good or bad person but simply to make a decision about what happened and whether or not what happened was a crime, do you all understand that?

JURY PANEL: (No verbal response)

MS. POPE STARNES: Do you also understand that your job as jurors is to determine whether or not the defendant is guilty of a crime and it's the judge's job alone to decide what if any penalty is appropriate, do you all understand that?

JURY PANEL: (No verbal response)

MS. POPE STARNES: Are there any of you that have been the victim of child abuse, a witness to a child abuse or know someone who has been the victim of child abuse?

Ma'am, Ms. Anderson? Do I have the name right?

JUROR: Yes.

MS. POPE STARNES: Okay.

JUROR: Sexually abused as a child.

MS. POPE STARNES: In this case we're talking about physical abuse, not sexual abuse, okay.

JUROR: Okay.

MS. POPE STARNES: So is there anything about your personal experience that you think would make you unable to be fair and impartial in this case?

JUROR: No.

MS. POPE STARNES: The judge will tell you that the burden of proof in this case is beyond a reasonable doubt, not beyond any doubt, or all doubt, but we have to prove the elements of the crime beyond a reasonable doubt, do you all agree to listen to the judge's instructions about that and not to require the People to prove a higher burden of beyond any and all doubt? Do you all agree?

JURY PANEL: (No verbal response)

MS. POPE STARNES: Do any of you have any moral or religious or philosophical conviction that would prevent you from being a juror in this type of case?

JURY PANEL: (No verbal response)

MS. POPE STARNES: Do you think that you would be able or capable or rejecting the testimony of an expert witness if you decide that their testimony is not consistent with the facts of the case or the evidence or with common sense, are you all able to do that?

JURY PANEL: (No verbal response)

MS. POPE STARNES: May I have just one moment, Judge?

THE COURT: Sure.

MS. POPE STARNES: Thank you.

THE COURT: Thank you Ms. Pope Starnes. Mr. White.

MR. WHITE: Thank you.

Again, my name is Robert White, offices are in Waterford right down from Travel Hub. I will try not to cover the same things that Ms. Pope Starnes covered but I may so it's going to be a minute.

71

Has everybody on the jury been an Oakland County resident the majority of their life? If not would you raise your hand.

How long have you lived in Oakland County?

JUROR: About three years.

MR. WHITE: And if I may ask, what county did you live in before that?

JUROR: Wayne.

MR. WHITE: Okay. –

THE COURT: I'm sorry, voice up, yes, Mr. White and likewise, I'm sorry, I know –

JUROR: I'm sorry, Wayne County.

MR. WHITE: I'm sorry too. But a resident of Michigan your whole life?

JUROR: Yes.

MR. WHITE: And if I may go through each juror if you'd be so kind to tell me your educational background. Yes, what area did you go to high school?

JUROR: I went to high school, college and a Master's Degree in education.

MR. WHITE: What particular geographic area?

JUROR: Oh, I'm sorry, I went to Bowling Green State University and Eastern Michigan University –

MR. WHITE: Okay.

JUROR: - and I've gone to Wayne State too.

72

MR. WHITE: Okay. How about you Mr. Jin, where did you do your work – where did you do your undergraduate?

JUROR: I did my undergraduate partially in California and partially in Salt Lake City, Utah.

MR. WHITE: Okay. And what schools?

JUROR: Actually I went to graduate school in Salt Lake City as well.

THE COURT: We've got to keep emphasizing to everybody –

MR. WHITE: Right –

THE COURT: - because it's conversational, it's kind of the way the system is set up it's conversational yet we need to project, we're kind of public speaking here, so.

JUROR: So then after that I came to Michigan and I went to medical school at Wayne.

MR. WHITE: Wayne State University?

JUROR: Yes.

MR. WHITE: And what about you Mr. Cronan?

JUROR: I graduated from high school in Walled Lake.

MR. WHITE: Okay. And Mr. Hill?

JUROR: High School, Boston College High School in Dorchester, Mass, University of Massachusetts and I got my MBA from University of Pennsylvania.

MR. WHITE: Okay. Mr. Waite?

JUROR: High school in Wayne County.

MR. WHITE: Ms. Zuazo -- did I do it right?

JUROR: Pretty good. High school Harper Woods, Michigan.

MR. WHITE: Okay. And Mr. Boes?

JUROR: High school, Birmingham, Michigan and Ferris State.

MR. WHITE: Okay. Which Birmingham, Seaholm?

JUROR: Brother Rice.

MR. WHITE: Okay.

JUROR: Don't like that aye?

MR. WHITE: We used to play you a lot, it was never a
friendly game – Ms. Chamberlain?

JUROR: Chalmers –

JUROR: I'm Ms. Chamberlain.

MR. WHITE: I'm sorry. Ms. Chamberlain?

JUROR: High school and statewide training courses through
Oakland County.

MR. WHITE: Have you attended any university?

JUROR: No.

MR. WHITE: Now it's your turn.

JUROR: Ferndale High School, I still reside in Ferndale, I've
been there twenty-three years, went to U of D Mercy Nursing School,
Bachelor's Degree.

MR. WHITE: Ms. Anderson?

JUROR: High school, Pershing, Wayne County and Wayne
State University and Davenport University in Dearborn.

MR. WHITE: Spencer Haywood. Ms. Johnston.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

JUROR: High school and Oakland Community College and Oakland University.

MR. WHITE: Mr. Kuza?

JUROR: High school, Southfield-Lathrup High School, Oakland County.

MR. WHITE: Mr. James?

JUROR: I went to high school in Denver and I graduated from the University of Denver.

MR. WHITE: Thank you. Mr. Hurt?

JUROR: High school, Royal Oak, Michigan.

MR. WHITE: Dondero or –

JUROR: Dondero.

MR. WHITE: Has any member of the prospective jury ever been a member of the armed forces or military? Mr. James?

JUROR: Yes.

MR. WHITE: What branch?

JUROR: Navy.

MR. WHITE: What years?

JUROR: 1960 to 1964.

MR. WHITE: Okay.

THE COURT: Did you want a drink of water or something?

JUROR: No – a little cough, no thank you.

MR. WHITE: I believe Mr. Hill?

JUROR: Air Force '66 to '70.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

MR. WHITE: Anybody apply to be in the military, sought admission into a military branch?

JURY PANEL: (No verbal response).

MR. WHITE: Any member of the jury – I know Dr. Jin, do you have any other kind of professional degree or certification?

JURY PANEL: (No verbal response)

MR. WHITE: Now any member of the jury ever been a witness in a case, actually testified in court?

JURY PANEL: (No verbal response)

MR. WHITE: Ever been a party where you've had to come to court for either a civil matter or any kind of matter where you've been involved in a legal proceedings?

Yes, Mr. James?

JUROR: Yeah, we – thirty years ago we were suing one of our contractors and I was a witness as well as a – as a – I don't know what it was called, I was suing him.

MR. WHITE: Okay. You were suing him?

JUROR: Yeah.

MR. WHITE: Was it in this court?

JUROR: No, it was in Oakland County but not in this courtroom.

MR. WHITE: In this building though, Oakland County Circuit Court?

JUROR: It was thirty years ago, it might have been.

MR. WHITE: That's back when you were younger –

THE COURT: I promise, I wasn't the judge.

MR. WHITE: He was just a sparkle in his dad's eye.

Does any member of the prospective jury ever come to court to observe, to sit and watch and see how courtrooms work, have you ever done that?

JUROR: Excuse me, did you want to know about coming to traffic court or anything like that?

MR. WHITE: Well, yes, I mean –

JUROR: Okay. Been to traffic court, fought a ticket –

MR. WHITE: Fought a ticket?

JUROR: Yes –

MR. WHITE: Was your experience favorable, unfavorable?

JUROR: Favorable.

MR. WHITE: Favorable – congratulations. Was it in Oakland County?

JUROR: Yes.

MR. WHITE: I know Ms. Avesian, you said your son is a –

JUROR: Volunteer –

MR. WHITE: - volunteer police officer for West Bloomfield, correct?

JUROR: Birmingham.

MR. WHITE: Birmingham, I'm sorry, and he's been that way for eight years?

JUROR: Right.

MR. WHITE: And you admire his dedication and respect his position, correct?

JUROR: Yes.

MR. WHITE: Any other member of the jury ever served in a police capacity?

JURY PANEL: (No verbal response)

MR. WHITE: Any member of the jury have a close friend or relative who is a police officer or has been a police officer? Yes, Mr. Waite?

JUROR: Yeah, he was a police officer in Redford, Michigan.

MR. WHITE: And who is that?

JUROR: Don Dorn.

MR. WHITE: Who – is that your friend?

JUROR: He's my son-in-law's father.

MR. WHITE: Okay. And how long has he been your son-in-law's father – I mean how long has he been your son-in-law, he's always been his father.

JUROR: He's been my son-in-law for about twelve years.

MR. WHITE: Okay. Have you ever talked to him about his job as a police officer?

JUROR: Yes, because he was a weigh master and I drive a semi.

MR. WHITE: Okay. Anybody – who else raised their hand, Mr. Cronan?

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

JUROR:  Bob Raimey (phoen) was the police chief of Warren for a number of years, he's retired now.

MR. WHITE:  A good friend of yours?

JUROR:  My cousin.

MR. WHITE:  Do you know what years he was in Warren?

JUROR:  He retired about five years ago and he was with the force for probably twenty-five years.

MR. WHITE:  Okay. Did you discuss his job with him on a regular basis?

JUROR:  No, nothing.

MR. WHITE:  Anybody else, yes, Ms. Chamberlain?

JUROR:  I have a nephew that's an Oakland County Police Officer.

MR. WHITE:  Oakland County Sheriff?

JUROR:  No, just a police officer.

MR. WHITE:  Do you know what department he serves?

JUROR:  No, his name is Michael Plank, I think he was at the jail maybe –

MR. WHITE:  Okay.

JUROR:  - and then they put him out in the traffic too.

MR. WHITE:  And do you have an opportunity to discuss his job with him?

JUROR:  No.

MR. WHITE:  Mr. Hurd I believe you had your hand up?

JUROR: Yes, my brother-in-law is a sheriff/detective for Oakland County.

MR. WHITE: Okay. And may I ask his name?

JUROR: Tim Sheridan.

MR. WHITE: And how long has he been on –

JUROR: I believe two years, he was former Captain of West Bloomfield.

MR. WHITE: And do you discuss with him his position?

JUROR: Sometimes we do.

MR. WHITE: Okay. And would that be in context of social get- togethers?

JUROR: Yes.

MR. WHITE: Okay. Anybody else that raised their hands? Yes, Ms. Chalmers.

JUROR: Close friend's husband is a Pontiac detective.

MR. WHITE: Okay. Thank you. Anybody else? Ms. Johnston?

JUROR: My uncle, but in Scotland, a Scottish Bobby.

THE COURT: Like Scotland Yard?

JUROR: Yes, exactly.

MR. WHITE: Okay. Anybody else that I've missed?

JURY PANEL: (No verbal response)

MR. WHITE: Anybody that has a close friend, actually themselves or a close friend or relative that has worked in a police department but not necessarily a police officer, you know, a

dispatcher, a clerk or administrative position, you know, anybody

that's – yes, Ms. Chalmers?

JUROR:  A close friend works for Highland Park.

MR. WHITE:  Do you know what position is held?

JUROR:  She was a – an accounting clerk.

MR. WHITE:  And what about you Ms. Johnston?

JUROR:  Do you mean just in Oakland County?

MR. WHITE:  Anywhere, even as far as Scotland.

JUROR:  Oh, close friend in Atlanta, Guinet (phoen) County

Police Department, robbery division and then the evidence division,

they're husband and wife.

MR. WHITE:  And do they still presently work there?

JUROR:  Oh, yes.

MR. WHITE:  And do you discuss with them their

employment, the things that they do in that context?

JUROR:  Yes.

MR. WHITE:  Okay. Thank you.  Anybody else that has

friends or relatives or themselves that has ever worked in a police

department?  Yes –

JUROR:  A good friend of mine's wife is an assistant to Hackel

in Macomb.

MR. WHITE:  Okay.

JUROR:  But I don't talk any –

MR. WHITE:  - no –

JUROR: - legal anything.

MR. WHITE: No social discourse about her position?

JUROR: No.

MR. WHITE: Okay. I'm losing track whether people who are coming in may be witnesses –

THE COURT: Okay.

MR. WHITE: I don't know if Ms. Pope Starnes is –

MS. POPE STARNES: May we approach the bench?

(Whereupon a brief discussion

was had off the record)

MR. WHITE: Has anyone on this prospective jury ever been a licensed attorney?

JURY PANEL: (No verbal response)

MR. WHITE: Or any friends or relatives, close friend or relatives that are attorneys or have been attorneys?

JUROR: I have relative that's an attorney in Indiana.

MR. WHITE: Okay. And cousin or –

JUROR: He's my wife's brother's kids.

MR. WHITE: Okay. So I take it it's a fair statement though that you haven't spent a lot of time talking to him –

JUROR: No, I haven't –

MR. WHITE: - about his job or whether it's criminal defense or prosecution?

JUROR: No, I don't know.

MR. WHITE: Okay. Some other people had raised their hands too, Mr. James?

JUROR: I have an employee whose husband is an attorney in Southfield –

MR. WHITE: Okay.

JUROR: - and I've got a couple attorneys that are clients.

MR. WHITE: And the type of law that –

JUROR: Malpractice.

MR. WHITE: Malpractice defense?

JUROR: No, no, uhm –

MR. WHITE: Plaintiff's?

JUROR: Yeah.

MR. WHITE: And may I ask what firm?

JUROR: You can but I don't know.

MR. WHITE: Okay. You said this person that works in plaintiff's malpractice is – how do you know this person?

JUROR: He's my manager's husband.

MR. WHITE: Okay. And how long has this person been your manager?

JUROR: For about seventeen years, his name is Spagnola.

MR. WHITE: Okay. Who else?

JUROR: My brother-in-law is an attorney –

MR. WHITE: And –

JUROR: Cass Conley, Oakland County and I have a good friend, Pat Bagley whose an attorney in Waterford.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

MR. WHITE:  Mr. Bagley, aye.  Do you ever talk to Pat about his work?

JUROR:  Not really, it's more social, we never really discuss any type of cases.

MR. WHITE:  Have you ever gone to visit his office or anything like that?

JUROR:  No, I actually never – no, just at restaurants and social gatherings.

MR. WHITE:  Social gatherings with Mr. Bagley are interesting.

JUROR:  I would have to agree with you.

MR. WHITE:  Anybody else that has a close friend or relative that is an attorney – and let me expand that question now then to worked in an attorney's office?  Yes, Ms. Johnston?

JUROR:  My daughter is a legal secretary, she substitutes right now but she did work in Bloomfield Hills for attorneys.

MR. WHITE:  Okay. And any particular firm that she's worked with that comes to mind?

JUROR:  I'm drawing a blank.

MR. WHITE:  Let me ask you this, any particular type of work that she's done as a legal secretary in the field of law, commercial –

JUROR:  All different types because now she substitutes and she's like –

MR. WHITE:  Okay.

JUROR:  - all over Southfield and Bloomfield.

MR. WHITE: So she is a professional pinch hitter?

JUROR: Well, she's a full time student, she does this on the side.

MR. WHITE: Okay. So as far as any particular – you can't say yes, she's mostly been in malpractice or real estate or defense or anything?

JUROR: Not mostly because it's just all different, you know, all different attorneys.

MR. WHITE: Anybody else?

JURY PANEL: (No verbal response).

MR. WHITE: Anybody themselves or have a close friend or relative ever worked in a prosecutor's office in any fashion in any way, the clerk all the way to an investigator or anything of that nature?

JURY PANEL: (No verbal response)

MR. WHITE: Anybody who has ever worked or had a close friend or relative work in a court, either here or this county or any other place that they have courts?

JURY PANEL: (No verbal response).

MR. WHITE: A jail or a prison or any kind of detention facility, anybody that you know or yourselves or anybody else that's been working in those kind of facilities?

JURY PANEL: (No verbal response).

MR. WHITE: Has anybody on the jury had any experience working with a governmental agency and when I say working with, working for a governmental agency as an employee or contractor?

Yes –

JUROR: I work for United States Post Office.

MR. WHITE: Okay. How long have you worked for them?

JUROR: Twelve years.

MR. WHITE: You've been driving a truck for forty?

JUROR: I've been driving truck for forty and working for the

Post Office for the last twelve.

MR. WHITE: Last twelve –

JUROR: As a sub-contractor for the Post Office.

MR. WHITE: You drive for the Post Office now?

JUROR: Yes.

MR. WHITE: Anybody have a close friend or relative that has

worked – works or has worked in a governmental agency that you can

think of – and let me throw a couple out – Ms. Johnston?

JUROR: Does that mean like where my husband works for

General Dynamics as a contractor for a government agency.

MR. WHITE: Well, he worked for General Dynamics?

JUROR: Right.

MR. WHITE: And then he would sub-contract out for, you

know, government jobs, correct?

JUROR: Right.

MR. WHITE: His employment was with General Dynamics,

correct?

JUROR: Right.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

MR. WHITE:  He would do work not necessarily as an

employee of the Department of Agriculture or whatever?

JUROR:  Oh, right.

MR. WHITE:  Right.  And I'm specifically asking – let me ask

you this, any close friend or relative ever worked for the Family

Independency Agency or Children Protective Service or any other

government agency that you can think of that investigates or addresses

itself to situations where there's been an allegation of child abuse?

Ms. Johnston.

JUROR:  Well, I had to report it constantly where I worked.

MR. WHITE:  You're subject to the mandatory reporting laws

of Michigan correct?

JUROR:  I was the one that sent the report in.

MR. WHITE:  So in that sense you were actively involved

then?

JUROR:  Absolutely.

MR. WHITE:  Okay. The age group that you work with again?

JUROR:  All different, K through Twelve.

MR. WHITE:  K through twelve, how many years did you do

that?

JUROR:  From 1988 to 2007.

MR. WHITE:  Okay. Is anybody affiliated by either

membership, club membership or any kind of connection to a police

department or police agency such as, you know, contributing money or

being a member of a club or organization that promotes police

departments, police work or donating money to such causes?

JUROR: They call on the phone, we give them money.

MR. WHITE: Is that generally true with everybody or-

JUROR: No, but when the police departments call –

MR. WHITE: When local police call –

JUROR: It seems so, yeah.

MR. WHITE: Any member of the jury ever have any

particular fascination or regularly watch TV shows that involve the

legal system –

JUROR: Court TV junkie.

MR. WHITE: Any particular type of cases that you find

particularly interesting?

JUROR: All the forensic evidence stuff is very interesting.

MR. WHITE: CSI shows?

JUROR: I don't really –

MR. WHITE: I don't know how many there are.

JUROR: - watch the CSI stuff but everything in court.

MR. WHITE: You watch Court TV?

JUROR: Uh-huh (affirmatively)

MR. WHITE: Okay.

JUROR: My daughter is going to school full time to be a

criminal psychologist, we watch CSI, and any, you know, court shows

or cop shows that are on TV.

THE COURT: How about Andy Griffith?

MR. WHITE: We know that he's far too young to remember Andy Griffith.

THE COURT: TV Land.

MR. WHITE: Now I believe some of this has been covered so please excuse me if I'm being redundant at all; I know Dr. Jin's medical experience; anybody else, and Ms. Chalmers, Registered Nurse, anybody else has a license in any way or have been licensed in any way to work in the medical field?

JURY PANEL: (No verbal response)

MR. WHITE: Anybody that's ever worked in a medical facility besides Dr. Jin and Ms. Chalmers?

JURY PANEL: (No verbal response)

MR. WHITE: Close friends or relatives that work at a medical facility and I'll give an expansive definition, hospital, doctor's office –

Ms. Johnston?

JUROR: My daughter-in-law is a Registered Nurse; my aunt was a Registered Nurse.

THE COURT: Okay. Daughter-in-law is now?

JUROR: Yes.

THE COURT: And where?

JUROR: Genesys Hospital.

MR. WHITE: Okay. In Genesee County?

JUROR: Right.

MR. WHITE: Okay. And you said who else?

JUROR: My aunt but –

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

MR. WHITE: Right, distant?

JUROR: Yes, she's deceased now but we had a lot of contact before.

THE COURT: Okay. Anybody else have a close friend or relative that works in a medical office, a medical treatment center? Yes, Ms. Chamberlain?

JUROR: My sister is a Registered Nurse in Baltimore.

MR. WHITE: Okay. How long has she been a Registered Nurse?

JUROR: Twenty-six years.

MR. WHITE: In the Baltimore area most of her life or?

JUROR: Yes.

MR. WHITE: Okay. And I assume with your sister, that you've had an opportunity to discuss her work with her?

JUROR: A lot.

MR. WHITE: And what type of –

JUROR: She is an E.R. doctor – or an E.R. nurse, emergency room nurse.

MR. WHITE: Anybody else?

JURY PANEL: (No verbal response).

MR. WHITE: Now I'm going to ask you some questions and I don't mean to pry, its part of my job, part of the selection of the jury process in determining whether you're capable or that we're all capable of being a fair and impartial juror in this case.

There will be extensive testimony from doctors in this case, and has anybody had any case they believe is a malpractice case against a medical professional?

JURY PANEL: (No verbal response)

MR. WHITE: Has anybody thought that they may have a malpractice case against a medical professional?

JURY PANEL: (No verbal response)

MR. WHITE: Does anybody have an opinion about whether doctors should be accountable for their negligence or mistake? No opinion one way or another?

JURY PANEL: (No verbal response)

MR. WHITE: Do you believe that if a doctor makes a mistake they should be held accountable just like anybody else?

MS. POPE STARNES: Your Honor, I'm going to object as to the relevancy.

THE COURT: I think – are you towards the end, Mr. White?

MR. WHITE: Yes.

THE COURT: Just a nod of the head or shake of the head. I respect the objection but I'll overrule it, I'll allow it.

MR. WHITE: Let me ask you this, do you think a doctor is capable of making an erroneous determination, an erroneous diagnosis, do you think that they're people just like the rest of us?

JURY PANEL: (No verbal response)

MR. WHITE: Are you going to hold them to a standard that's greater than a person just like you and I?

91

JURY PANEL:  (No verbal response)

MR. WHITE:  Anybody that says a doctor should be given greater weight or credibility because he or she is testifying and they're a doctor?

JURY PANEL:  (No verbal response)

MR. WHITE:  Anybody watch TV shows that involve the medical field – yes, Ms. Chalmers?

JUROR:  House of course.

MR. WHITE:  House.  Gray's Anatomy is another one, is that one – anybody else who is an avid watcher of medical TV shows?

JUROR:  I watch Forensic Files.

MR. WHITE:  Forensic Files?

JUROR:  Yes.

MR. WHITE:  Is that a particular show or is that a CSI type program?

JUROR:  No, it's a particular show with court cases.

MR. WHITE:  And is it a fair statement, Mr. Waite, to say that those shows are primarily – those forensic files deal with criminal cases?

JUROR:  Yes.

MR. WHITE:  And would it be a fair statement to say that they do criminal cases involving homicides?

JUROR:  Yes, suspected homicides, yes.

92

MR. WHITE: Okay. Now I know that some had answered positively has anybody worked in the insurance field before, any type of insurance, car insurance – Ms. Johnston?

JUROR: Liberty Mutual Insurance Company.

MR. WHITE: And what did you do for them?

JUROR: Secretary.

MR. WHITE: And how long did you work for them?

JUROR: Couple years, two or three.

MR. WHITE: Would it be within the last ten years?

JUROR: No, longer than that.

MR. WHITE: Do you remember the kind of work that you did, was it commercial policies, homeowners?

JUROR: It was kind of homeowners I think.

MR. WHITE: Okay. Ms. Zuazo?

JUROR: I work for Amerisure Companies for twenty-six and a half years; I was a supervisor in the worker's comp unit.

MR. WHITE: When was the last time that you worked for Amerisure?

JUROR: 2003.

MR. WHITE: Did you deal with any kind of – any work in the field of medical malpractice?

JUROR: No.

MR. WHITE: Anybody else who worked in any kind of insurance field, auto, homeowners, anything?

JURY PANEL: (No verbal response)

93

MR. WHITE: Anybody who has a close friend or relative that works in the insurance field?

JUROR: My brother works in the insurance field.

MR. WHITE: What type of insurance?

JUROR: It's – he's insuring businesses, it's commercial property.

MR. WHITE: It doesn't have to liability –

JUROR: Not health or liability.

MR. WHITE: Okay. Anybody else?

JUROR: My father-in-law was an insurance agent for Farmers Insurance for about twenty ears.

MR. WHITE: Do you know what kind of policy he was involved in, auto policy?

JUROR: Yeah, auto, homeowners, that type of thing.

MR. WHITE: Any professional liability work that you're aware of?

JUROR: No.

MR. WHITE: Anybody on the prospective jury ever work for South Lyon?

JURY PANEL: (No verbal response)

MR. WHITE: Or had a close friend or relative that's worked now or ever with South Lyon?

JURY PANEL: (No verbal response)

94

MR. WHITE: Anybody on the prospective jury ever, attended

the University of Michigan, in any branch, Flint, Dearborn or Ann

Arbor?

JURY PANEL: (No verbal response)

MR. WHITE: Does anybody have a close friend or relative

that's attended the University of Michigan, any campus?

JUROR: That's where my sister went through nursing school

is U of M.

MR. WHITE: U of M?

JUROR: My sister went to U of M.

MR. WHITE: And that would have been more than twenty-six

years ago?

JUROR: Yes – to be a nurse.

MR. WHITE: Yes. And you said your sister also went to

U of M?

JUROR: Uh-huh (affirmatively)

MR. WHITE: And when was that?

JUROR: That would have been late 70's, early 80's.

MR. WHITE: Anybody ever been employed by University of

Michigan, in any capacity including a contract job or had a close

friend or relative that's been employed by the University of Michigan?

JURY PANEL: (No verbal response)

MR. WHITE: Any member of the jury, are you affiliated in

any way with the University of Michigan, donation, club membership,

in any capacity?

JURY PANEL: (No verbal response)

MR. WHITE: Does anybody have a U of M bumper sticker?

JURY PANEL: (No verbal response)

MR. WHITE: The accusation in this case is that Mr. McBurney committed the offense of felony murder, first degree child abuse against a daughter that was born to him and Heather McBurney, his wife; this is a powerful, powerful accusation of tragic portion, and it attacks us viscerally and intellectually and I am going to ask each and every one of you some very difficult questions –

THE COURT: You have to keep the voice up –

MR. WHITE: I'm sorry, Judge.

- about this area, this – your personal reflections and beliefs and your ability to sit and judge and be a fair and impartial juror in this case considering the nature of the accusations.

First of all, everyone that has had children, we can all assume that we've all changed diapers, fed our babies and bathed them, clothed them and did all the things necessary for us to have them be taken care of and prosper and grow, I assume that's true, isn't that true?

JUROR: Yes.

MR. WHITE: We've all done that. And for all of us who have had children, is there anybody who says that they're above being frustrated with their children, they were never frustrated, never a frustrating experience?

JURY PANEL: (No verbal response)

MR. WHITE: Any member of the jury that had a child that was particularly difficult in terms of eating, sleeping or – and I'm talking about zero to two years, the infancy stage, that taxed us for instance my twenty-four month old didn't sleep for the first year, that was an experience. Anybody had an experience similar to that?

JURY PANEL: (No verbal response)

MR. WHITE: Well, you're all lucky.

Anybody on the jury ever had a child that was injured by a negligent act?

JUROR: I was at work and my five year old daughter was home with my grandfather who was watching her in the summer and her friend who was about six years old came over to play, she usually did, and when I came home – it was another young female and when I came home I noticed mark on her neck, she was five at the time, the other little girl was six and then I found out that the six year old little girl had inserted a tampon into my daughter – so – I took her to Beaumont, had her checked out.

MR. WHITE: Was everything okay?

JUROR: Yeah, I confronted the mother, before anything could be done they left Ferndale, so – and now she's fifteen so she doesn't remember anything, hopefully.

MR. WHITE: Any other member of the jury ever have a child that has been injured by a negligent act of yourself or someone else, for instance a car accident is in terms of a negligent act, possibly someone is negligent, possibly more than one; slamming a finger in a

97

door, trip and fall, not secure a door where someone fell down the stairs; anybody have one of their children injured by an accidental act?

JUROR: She also was – when she was three she was a model when she was three and she was accidentally bitten by my aunt's elderly Golden Retriever in the face so she was brought to me at my doctor's office where we had to immediately suture her forehead.

MR. WHITE: Anybody else?

JURY PANEL: (No verbal response)

MR. WHITE: Has any member of the prospective jury ever felt responsible for causing injury or pain to their child, other than a disciplinary act such as an accident where the child was injured and you felt responsible, whether you were responsible in fact or not?

JURY PANEL: (No verbal response)

MR. WHITE: In this case you will hear testimony that there was a prior child abuse investigation involving Mr. McBurney, eight years ago, in 1998, involving Nicholas Kennedy, his oldest son. So not only will you hear the charges of felony murder and child abuse in the first degree of Madison McBurney, but there was a prior investigation and you will hear testimony regarding that investigation and some medical records and the testimony from a detective from Northville Township Police Department named Paul Sumner –

THE COURT: Same thing with the voice –

MR. WHITE: I'm sorry, Judge, I'm sorry.

Ms. Jin – excuse me – Ms. Avesian, considering the fact that we've got this tragic case, a prior investigation, do you believe that

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

you could sit as a fair and impartial juror in this case and decide whether Mr. McBurney is innocent or guilty of the offenses charged in this case based upon the evidence?

JUROR: I don't have any prior – what did you say before that?

MR. WHITE: Do you believe that you can sit as a fair and impartial juror in this case?

JUROR: Oh, yes.

MR. WHITE: What about you Dr. Jin?

JUROR: Yes.

MR. WHITE: Mr. Cronan?

JUROR: Yes.

MR. WHITE: Mr. Waite?

JUROR: Yes –

MR. WHITE: I'm sorry, Mr. Hill?

JUROR: I – probably personal beliefs but I coached for thirty years –

MR. WHITE: Coached?

JUROR: Coached baseball, basketball, travel teams –

THE COURT: Got to keep the voice up.

JUROR: - and I've never come across a bad kid, most of the problems are always with the parents.

THE COURT: Kind of the same question though, you – I'll give you instructions, as Ms. Pope Starnes mentioned, you've got to decide this case based only on the facts and evidence presented here. Can you give everybody a fair shake?

JUROR: Yes.

MR. WHITE: How about you, Mr. Waite?

JUROR: Yeah.

MR. WHITE: Ms. Zuazo?

JUROR: Yes.

MR. WHITE: Okay. Mr. Boes?

JUROR: Sure, yes.

MR. WHITE: Ms. Chamberlain?

JUROR: Yes.

MR. WHITE: Ms. Chalmers?

JUROR: Yes, but I have a comment. Being in the medical field, working the ER we had to deal with young children being brought in with accusations regarding parents.

MR. WHITE: My question is – that's your work –

JUROR: Yes –

MR. WHITE: - that's your career and does this experience you have, considering what a small portion of what the evidence is and the charges are in this case, do you still think you can sit and say well, I'm going to listen to the evidence that comes out from this witness stand, the documents and exhibits that are presented in this court that this judge allows and you can say I will decide this case based upon the evidence that comes into this court?

JUROR: Yes, I intend not to be biased.

MR. WHITE: How about you Ms. Anderson?

JUROR: Yes.

MR. WHITE: And your horrific experience you had as a child, do you believe you can set that aside and say I am going to decide this case on the evidence that comes in this court and I am able to handle it?

JUROR: Yes.

MR. WHITE: Ms. Johnston?

JUROR: Yeah, except that since I have to deal with that for so many years, actually physical – I mean watched it happening right at school in my – you know, in my face a lot, sometimes it's difficult to –

THE COURT: If I can –

JUROR: - separate that.

THE COURT: If I can throw in just real quick for everybody's ears and everybody back there as well; no one is asking you to leave your experiences at the doorstep; everybody is going to bring in their different experiences. The question is whether or not you can take that and nevertheless evaluate this case on the merits or the demerits and give a fair shake to the People and a fair shake to the defense; that's kind of what we're getting at.

JUROR: Well, okay, well, yeah.

THE COURT: Go ahead.

MR. WHITE: And you would see it with the students that you dealt with correct –

JUROR: Right –

MR. WHITE: - you would hear of it?

JUROR: Right.

MR. WHITE:  And then actually based upon your

observations, and you actually made reports also?

JUROR:  Yes.

MR. WHITE:  Because it was your duty in the position you

were in, your duty as a citizen in this country, correct?

JUROR:  Right.

MR. WHITE:  Knowing no one has any tolerance for child

abuse.

JUROR:  Absolutely not.

MR. WHITE:  Okay. What about you, Mr. Kuza?

JUROR:  I can't – I can't handle something like this, as far as

the case with kids and all that, I'm just being a father of three –

THE COURT:  You're saying you can't be fair –

JUROR:  I can't be fair, either way and I'm not saying no to or

not guilty, I can't do it, judge, I can't hear the case like this. This is

very very bad to me, I take it too personally –

THE COURT:  Do you think –

JUROR:  - you know, like it just hurts me just to see it, like on

TV shows and stuff like that, hurts me a lot –

MR. WHITE:  I respect –

JUROR:  - you know, kids –

MR. WHITE:  - your opinion.

JUROR:  So that's my opinion on that,  I can't, it's hard for

me. I get very emotional, it's very very hard, kids just –

THE COURT:  Okay. We've got it. Go ahead, Mr. White.

MR. WHITE: Thank you for being candid.

JUROR: No, that's okay.

MR. WHITE: Mr. James –

JUROR: Yes.

MR. WHITE: - do you believe that you can sit and hear and be a fair witness, a fair juror in this case and say I'm going to decide this case on the evidence that comes in this courtroom, do you believe you can?

JUROR: I believe I can.

MR. WHITE: Okay. Mr. Hurd?

JUROR: Yes.

MR. WHITE: Now the judge will inform you in a few minutes when we're done with this that when we get into the case that there are certain constitutional safeguards we have in this country, in this legal system that have been in existence since the birth of our nation and will be as long as we continue to be a free society and first and foremost is that a person accused of a criminal offense is presumed innocent, presumed innocent. Does any member of the prospective jury have any issue with that presumption?

JURY PANEL: (No verbal response)

MR. WHITE: Does any member of the jury believe because a prosecutor of a particular county has charged the defendant of accused offense that that person must be guilty?

JURY PANEL: (No verbal response)

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

MR. WHITE:  Any member of the prospective jury have any problem with the fact that the law says it's the prosecutor's burden to prove beyond a reasonable doubt that the accused is guilty of the offenses charged, that is the defendant, the accused has to prove nothing; does anybody have any problem with that?

JURY PANEL:  (No verbal response)

MR. WHITE:  Including the fact that an accused in a criminal case has the right not to testify, the judge will tell you it's an absolute right not to testify; does any member of the jury have any problem with that constitutional safeguard that if a person is not testifying they must be hiding something, they must – there must be something wrong?

JURY PANEL:  (No verbal response)

MR. WHITE:  All members of this prospective jury, are you willing to honor those constitutional safeguards?

JURY PANEL:  (No verbal response)

MR. WHITE:  Is there any reason that anybody as we sit here can think of after going over all of these issues and what you've been given a flavor of what's going to come out, is there any reason that any one of you think that you cannot sit as a fair and impartial juror on this case and render a verdict based upon the facts that come into evidence?

JURY PANEL:  (No verbal response)

MR. WHITE:  Thank you.

THE COURT:  Thank you Mr. White.

Can you wiggle that podium back.

THE COURT: Remember we were talking about challenges for cause and peremptory challenges, we're going to get to that stage right now, we just go back and forth with the prosecutor –

Thank, you counsel.

Ms. Pope Starnes, we'll start off with cause.

MS. POPE STARNES: None for cause, Your Honor.

THE COURT: Mr. White, cause?

MR. WHITE: I'd thank and excuse –

THE COURT: We're on cause, I'm sorry.

MR. WHITE: I'm sorry. I will challenge for cause Mr. Kuza in all due respect because of his candidacy in explaining that this is something that he feels he is so emotionally powerful about that he cannot be fair and impartial.

THE COURT: Ms. Pope Starnes?

MS. POPE STARNES: I don't have an objection, Your Honor.

THE COURT: The court will allow you to be removed for cause. I don't find you, sir, that you can't be fair and I don't mean this punitively or to be mean or anything, I've not met one human being in my life who is in charge of his or her faculty who cannot be fair; but for some reason, however, you've indicated that you won't be fair, whatever that reason is remains to one's speculation. But nevertheless, for that reason the court will excuse you for cause.

You'll have to report to the jury office, sir. I only have control over this case so whether you get chosen for another case like, who

105

knows what, a six week medical malpractice trial, that's for another judge to decide. But you can be excused and return to the jury office.

JUROR: Thank you Your Honor. Should I leave now?

THE COURT: Yes, you can leave now.

Can we get a new name, Jeff.

THE CLERK: Court calls juror number 120, Todd Norton.

THE COURT: Mr. Norton – good morning to you, sir.

JUROR: Morning.

THE COURT: Actually what we're going to do folks – know that seems the better way but for typing and so forth we'll keep you at your same spot. I'll explain it all later, it's really confusing otherwise.

JUROR: Sorry –

THE COURT: No, I know, and I appreciate that.

Mr. Norton now do you know why I said we're not going to go through all the questions over again?

JUROR: Yes.

THE COURT: Able to see and hear everything okay?

JUROR: Hearing was a little bit of a problem.

THE COURT: Yes, I know and that's – the same thing, keep that invitation open to everybody back there who is having any difficulty. We're through the bulk of the questions but nevertheless, feel free to come on closer if you're having a hard time.

Things that you were able to see and hear, do any of them stand out or pertain to you in particular?

JUROR: No.

THE COURT: Will you commit to apply the law as I give it to you, as Mr. White has indicated and Ms. Pope Starnes, after we select a jury I'm going to give you some preliminary instructions and then at the end I'll give you some final instructions; I just ask you, will you commit to apply the law as I give it to you to the facts and circumstances and the evidence in the case?

JUROR: Yes.

THE COURT: Okay. To Ms. Pope Starnes, any questions?

MS. POPE STARNES: Mr. Norton how are you employed, sir?

JUROR: I work on machine repair –

THE COURT: Same thing, keep your voice up –

JUROR: - Okay, I'm sorry. Machine repair at S.P.S. Technologies.

MS. POPE STARNES: Are you married, sir?

JUROR: Yes.

MS. POPE STARNES: And does your wife work outside of the home?

JUROR: Yes.

MS. POPE STARNES: What does she do?

JUROR: She's a medical biller.

MS. POPE STARNES: And who is she a medical biller for?

JUROR: Heart Care Cardiologists.

MS. POPE STARNES: And are they affiliated with any particular hospital?

JUROR: Probably, I don't know.

MS. POPE STARNES: Okay. But you don't know.

JUROR: No.

MS. POPE STARNES: Okay. And do you know any of the doctors that we've talked about as possible witnesses in this case?

JUROR: No.

MS. POPE STARNES: And do you have any children?

JUROR: Yes.

MS. POPE STARNES: How many and how old?

JUROR: Twenty-three and twenty.

MS. POPE STARNES: I wanted to talk to you about the questions defense counsel had asked about the television programs, medical programs, CSI, law programs; are you aware of the fact that CSI for example has been awarded – I can't recall what year it was but they were given an award for one of the best science fiction programs on television?

JUROR: No.

MS. POPE STARNES: Are you aware of the fact that it's television and not everything that they do on television can we do in real life?

JUROR: Certainly.

MS. POPE STARNES: And are you willing to consider the evidence as you see and hear it in this courtroom alone and not expect us to do something that they can do on television, because this is real life?

JUROR: Certainly.

MS. POPE STARNES: Okay. Thank you. I have no other questions, Judge.

THE COURT: Mr. White.

MR. WHITE: Briefly Mr. Norton any affiliation with the University of Michigan ?

JUROR: Nope.

MR. WHITE: And any members of your family or close friends that are police officers?

JUROR: Nope.

MR. WHITE: What about – besides – your wife is a medical biller you said?

JUROR: Uh-huh (affirmatively)

MR. WHITE: Anybody else, close friend or relative that works in the medical field?

JUROR: My daughter is going to Ferris State University to be a Registered Nurse.

MR. WHITE: Okay.

JUROR: Yes –

MR. WHITE: How long has she been there, at Ferris State?

JUROR: Four years.

MR. WHITE: You heard the questions and I know my voice tails off so excuse me but did you hear my questions about child abuse in this case?

JUROR: Yes.

109

MR. WHITE:  This is an accusation that Mr. McBurney caused serious physical injury to his daughter and in the context, murdered her.

JUROR:  Yes –

MR. WHITE:  Do you believe notwithstanding that very very horrific charge that you're able to sit as a fair juror in this case and listen to the evidence and decide if in fact these charges are true –

JUROR:  Yes –

MR. WHITE:  - do you believe you can make the decision based upon the evidence?

JUROR:  Yes.

MR. WHITE:  Do you believe that as a result of something that you felt responsible for, that one of your children were ever injured?

JUROR:  No.

MR. WHITE:  Do you believe that your child or children were ever injured as a result of someone else's responsibility, negligence injury?

JUROR:  No.

MR. WHITE:  Do you believe that police officers are entitled to a greater credibility than anybody else?

JUROR:  No.

MR. WHITE:  What about doctors?

JUROR:  No.

MR. WHITE:  Have you ever pursued a malpractice claim?

JUROR:  No.

MR. WHITE:  You didn't but you could have one?

JUROR:  No.

MR. WHITE:  Okay. Thank you.

THE COURT:  Thank you Mr. White.

To the People now.

MS. POPE STARNES:  No challenges for cause, Your Honor.

THE COURT:  Thank you. Mr. White for cause?

MR. WHITE:  Your Honor, I have concern about Ms.

Avesian's medical condition and I know it's not one of the enumerated

challenges for cause in the court rule but I have, considering what

she's disclosed so far and from what I can see and knowing that this

trial can easily go into next week, that I am concerned.  So –

THE COURT:  Ms. Pope Starnes, any comment?

MS. POPE STARNES:  I don't have anything to add, no.

THE COURT:  All right. Ma'am, I am going to excuse you for

cause. Again, I can't speak as to the next case if there is another case,

we wish you the best of luck and congratulations on your recovery.

JUROR:  Thank you.

THE COURT:  Mr. Romback another name, please.

THE CLERK:  Court calls juror number 210, Brian Weber.

THE COURT:  Mr. Weber, good morning to you, sir.

JUROR:  Morning.

THE COURT:  Work your way up and again, I'm sorry about –

that's really – that's the first time I've seen jurors actually shift like

that, that's a great idea but it doesn't work.

111

As you're working your way down I'll ask you, were you able to see and hear everything okay?

JUROR: Yes, I was.

THE COURT: Anything stand out or pertain to you in particular?

JUROR: Well, some of the questioning, I am a graduate of the University of Michigan, my wife is a retired Registered Nurse, she worked thirty years in blood collection for the Red Cross.

THE COURT: Okay.

JUROR: We – my mother died as a result of a complication of a procedure and we did pursue a malpractice suit –

THE COURT: Sorry about that –

JUROR: - not carried through but – maybe you can refresh some of the other questions?

THE COURT: Okay. I commend you and I appreciate you keeping that in during that length of time. So far with respect to those things that you mentioned, anything that would stand out or prevent you from being fair and impartial in this case here?

JUROR: No.

THE COURT: All right. And you would commit to apply the law as I give it to you to the evidence and to be fair to both sides?

JUROR: If I may, I do have somewhat of an emotional sensitivity, usually when there are pictures that come on the TV of these kinds of things I choose to look away, so –

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

THE COURT:  You know, I suspect I won't do it but I suspect, not to make your comments trite because they're not but if we did a show of hands I would hazard a guess that most everybody would share in that regard but I appreciate that and again I ask you, would you commit and be fair here?

JUROR:  Yes.

THE COURT:  Okay. Thank you, sir.

Ms. Pope Starnes.

MS. POPE STARNES:  I have no questions. Thank you Your Honor.

THE COURT:  Mr. White

MR. WHITE:  The years that you went to University of Michigan ?

JUROR:  I graduated in 1970.

MR. WHITE:  Okay. And did you go to engineering school?

JUROR:  Yes.

MR. WHITE:  And did you do graduate work there?

JUROR:  No.

MR. WHITE:  Did –

JUROR:  - but also I was employed by the university during my interim years as a co-op student.

MR. WHITE:  You'll hear more than one University of Michigan  physician testify in this case, as you sit as a juror. Is there anything about your affiliation with the university that would lead you

to believe that their testimony should be given greater credibility because they come from your alma mater?

JUROR: No.

MR. WHITE: I suppose Michigan State – oh, okay. Anything about your malpractice matter that would interfere with your ability to decide the facts in this case based upon what comes into evidence?

JUROR: No.

MR. WHITE: There will be pictures, there will be pictures from the Medical Examiner, the hospital and they're nothing short of tragic; do you believe that that would cause such an emotional reaction by you that you would be unable to sit and listen, intellectualize cognize the evidence and decide what facts are true and what facts are not true?

JUROR: I don't – I don't think so. That's just a hard question I guess for me to answer.

MR. WHITE: Well and I know because you haven't seen the pictures and I'm just putting you on notice that there will be pictures, eleven months old, pediatric intensive car, head bandaged, tubes, Medical Examiner pictures are never pretty, they're graphic. You're going to – as the jury in this case will see these, they will – I know it's something Dr. Jin may see on a regular basis but, you know, we as lay people don't often see that. Do you think that would interfere with your ability to be able to give a fair and impartial verdict in this case?

JUROR: I'm struggling with that, I'm sorry.

114

MR. WHITE: That's okay and we understand, sir, it's not a personal –

JUROR: Yes –

MR. WHITE: - it's not immoral – I'm just asking you for the sake of this case, if it does, if it would, then let us know and the judge will do the appropriate thing. I'm telling you now that this is going to happen.

THE COURT: Let me ask you this if I can just zero in on it a little bit more because it will be uncomfortable for everybody, I'm sure.

The question is not will you feel uncomfortable, will looking at the pictures cause you – the affect, would it cause you to actually be unfair to somebody? That's kind of the nub of the issue, not will it be uncomfortable, certainly it will be uncomfortable.

JUROR: No, that's –I could say that it would not affect my being fair.

THE COURT: Okay.

MR. WHITE: And the type of engineering that your in?

JUROR: My degree is in electrical engineering and currently I am a co-owner of a company that manufactures testing machines or testing materials.

MR. WHITE: And is that company also in Troy?

JUROR: No, it's in Walled Lake.

MR. WHITE: Okay. Thank you.

JUROR: If I may also add one other thing. I'm schedule to --

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

THE COURT: Hold on –

JUROR: - leave on vacation on March 1st –

THE COURT: - hold on one second, sir.

(Potential juror)

THE COURT: Counsel, have you any problems?

MR. WHITE: No objection.

THE COURT: No, go ahead ma'am, certainly we understand. Let me have counsel approach real quick.

(Whereupon a brief discussion

was had off the record)

THE COURT: By the way just so you know, we're going to break at the noon hour for lunch and then we'll resume. We won't have – oh, she's back. We didn't want to do any questions while any of the potential jurors were out. We'll resume at 1:30. But, Mr. White.

MR. WHITE: I have no further questions.

THE COURT: Thank you. We're back to I think Ms. Pope Starnes?

MS. POPE STARNES: None for cause, Your Honor.

THE COURT: Mr. White.

MR. WHITE: Pass for cause at this time.

THE COURT: Peremptory from the People?

MS. POPE STARNES: Your Honor, the People would thank and excuse Mr. Weber in seat number one.

THE COURT: Mr. Weber, that was short lived, you're all set, you can be excused. If you'd please return to the jury office, okay.

116

Do you want call a new one.

THE CLERK: Court calls juror number 62, Arthur Itkis.

THE COURT: Morning, sir.

JUROR: Morning.

THE COURT: Same questions to you, able to see and hear everything okay?

JUROR: Yes.

THE COURT: Anything stand out or pertain to you in particular?

JUROR: No.

THE COURT: All right.

JUROR: Nothing in particular, not from U of M.

THE COURT: Okay. You're going there now?

JUROR: No, I did not go to U of M.

THE COURT: Oh, you did not. Okay.

Will you be able to be fair in this case, commit to being fair and apply the law as I give it to you to the evidence in this case?

JUROR: Yes, I do.

THE COURT: Thank you. Ms. Pope Starnes.

MS. POPE STARNES: Mr. Itkis?

JUROR: Itkis, correct.

MS. POPE STARNES: Thank you. And how are you employed, Mr. Itkis?

JUROR: I worked at C. P. Richard Ellis (phoen), it's a commercial real estate company.

117

MS. POPE STARNES: What do you do there?

JUROR: Sales, I'm a real estate broker.

MS. POPE STARNES: And are you married?

JUROR: I am.

MS. POPE STARNES: And does your wife work outside the home?

JUROR: Yes, she does, she manages a travel agency.

MS. POPE STARNES: Okay. And do you have children?

JUROR: No.

MS. POPE STARNES: Any of the witnesses that we've talked about in this case, are you familiar with any of them?

JUROR: No..

MS. POPE STARNES: Have you ever had the opportunity to take care of a child under the age of two?

JUROR: Uh-huh (affirmatively)

MS. POPE STARNES: Was that a sibling or –

JUROR: Yeah, my sister.

MS. POPE STARNES: How old were you when you cared for her –

JUROR: She was about four at the time.

MS. POPE STARNES: So you babysat.

JUROR: I babysat.

MS. POPE STARNES: Did you ever baby sit or care for a child who was under the age of two?

JUROR: My cousin once.

118

MS. POPE STARNES: Thank you.

THE COURT: Mr. White.

MR. WHITE: Mr. Itkis, any friends or relatives, close friends or relatives that are police officers?

JUROR: No.

MR. WHITE: What about work in a medical facility, hospital, doctor's office?

JUROR: I have a friend of mine who is a podiatrist –

MR. WHITE: Okay.

JUROR: - he's in private practice.

MR. WHITE: How long has he been your friend?

JUROR: Oh, he's been my friend for about eighteen years.

MR. WHITE: Is his office local?

JUROR: Yeah, he's in Southfield.

MR. WHITE: How long have you been in Oakland County?

JUROR: Twenty-eight years.

MR. WHITE: And I don't think I saw your hand raised before but have you ever served on a jury before?

JUROR: I was not selected, I was called but never selected.

MR. WHITE: Okay. In this county?

JUROR: Yeah.

MR. WHITE: Any prior courtroom experience?

JUROR: No.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

MR. WHITE: Do you have a belief that because a police officer testifies that he has a higher degree of credibility than anybody else?

JUROR: No.

MR. WHITE: What about doctors?

JUROR: No.

MR. WHITE: Are you willing to honor the defendant's right not to testify in this case?

JUROR: Yes.

MR. WHITE: Thank you. I have no further questions, Judge.

THE COURT: We're to Mr. White peremptory?

MR. WHITE: The defense would excuse Dr. Jin.

THE COURT: Doctor, you're all set. You can return to the jury office, you've got a few more minutes before the lunch break.

THE CLERK: Court calls juror number 110, Donald Clayton.

THE COURT: Morning sir.

JUROR: Morning.

THE COURT: As you're working your way down I'd ask you the same question, were you able to see and hear everything okay?

JUROR: Yes.

THE COURT: Anything stand out or pertain to you in particular?

JUROR: About thirty years ago I was accused by my wife of abusing our daughter – I should say ex-wife at that time –

THE COURT: Okay.

JUROR:  - and I was in this court and the charges were

dismissed.

THE COURT:  Okay. Anything else stand out or pertain to

you?

JUROR:  No.

THE COURT:  All right. And your life experiences, including

that situation, nevertheless, can you and do you commit to accept the

law as I give it to you?

JUROR:  Yes, sir.

THE COURT:  And apply only to the evidence in this case?

JUROR:  Yes, sir.

THE COURT:  Okay. Thank you. Ms. Pope Starnes.

MS. POPE STARNES:  Mr. Clayton, the allegations that you

said that were brought against you, did they involve physical or sexual

abuse?

JUROR:  Both.

MS. POPE STARNES:  You understand in this case we're

talking about physical abuse?

JUROR:  Yes.

MS. POPE STARNES:  And what police agency was involved

in your case?

JUROR:  I'm not really sure, it was through the county.

MS. POPE STARNES:  Through the sheriff's department?

JUROR:  Yes, I believe so.

MS. POPE STARNES:  Is there anything about that case that you think could make you unable to be unfair and impartial as a juror in this case?

JUROR:  Well, it was false, you know, I proved it was false, you know, even before – it didn't even get to court I don't think, I took the lie detector's test and the charges were dismissed.

MS. POPE STARNES:  So if I understand correctly you're saying that after you showed that it was false, that the right thing was done, it was dismissed?

JUROR:  Yeah, but still my daughter spent three and a half years in a foster home because of my ex-wife's allegations.

MS. POPE STARNES:  So are you able to be fair and impartial in this particular case and set aside your personal feelings about what happened to you?

JUROR:  I don't think so –

MS. POPE STARNES:  Thank you.

THE COURT:  That's the one thing that I'm confused about and I appreciate you've got to be honest.

I thought you said, correct me if I'm wrong, that your wife – nevertheless you can be fair here – maybe I'm confused because then you just said that you can't?

JUROR:  No, I don't think I could.

THE COURT:  Anything, Mr. White?

MR. WHITE:  Were you actually arrested, sir?

JUROR: No, I just received a letter from the county that my daughter was in the custody of Oakland County, I was a student at Ferris State at the time.

MR. WHITE: And you were charged criminally?

JUROR: I believe so. I was never arrested though.

MR. WHITE: You hired or had an attorney?

JUROR: Yes, appointed.

MR. WHITE: Okay. And eventually the charges were dismissed as a result of your successful passing a polygraph?

JUROR: Yes, sir.

MR. WHITE: Okay. Now that experience that you said that prevents you from being a fair and impartial juror in this case?

JUROR: I think so.

MR. WHITE: Why would that be?

JUROR: Cause I don't trust the system.

MR. WHITE: Thank you for your honesty.

JUROR: You're welcome.

MR. WHITE: I have nothing further, Judge.

THE COURT: Thank you.

MS. POPE STARNES: Your Honor, for cause we would ask that Mr. Clayton be excused?

THE COURT: Mr. White?

MR. WHITE: It appears necessary.

THE COURT: We'll excuse you, sir, you'll have to return to the jury office and see what happens in the next case.

123

JUROR:  Okay.

THE COURT:  Jeff.

THE CLERK:  The court calls juror number sixty, Loura Ketelsen.

THE COURT:  Morning, Ms. Ketelsen..

JUROR:  Hi.

THE COURT:  Hi.  Work your way up there, sorry about the tight quarters there.  And as you're working your way down, same question to you, were you able to see and hear everything okay?

JUROR:  Yes.

THE COURT:  All right. Anything stand out or pertain to you in particular?

JUROR:  Yes.  My daughter is a Children Protective Service worker for the Judson Center and before that she worked for Haven.

THE COURT:  Okay.

JUROR:  And I have donated money and time and done some things with them.

THE COURT:  Okay. Anything else?

JUROR:  I've gone blank.

THE COURT:  Okay. Just so we're back on information I think the lawyers were asking about marriage and children, you have one daughter obviously?

JUROR:  I am married, I have two daughters and a step-son, they're thirty-eight, thirty-seven, my one daughter teaches in Turkey and my daughter is the Children Protective Service worker –

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

THE COURT: Turkey –

JUROR: - I am married, my husband is a builder and I am on disability so I am not working.

THE COURT: Okay. The disability that you're experiencing, are you nevertheless able to – you've been sitting here for quite awhile already, normally we won't be going this long, we take breaks in between.

But are you medically able to sit through like you have been so far?

JUROR: Today I am.

THE COURT: Any reason –

JUROR: Well, fibromyalgia is one of my problems, chronic headaches –

THE COURT: Okay.

JUROR: - the case is extremely interesting but –

THE COURT: The question – the question that is most important, more than interesting or not is willingness to give everybody a fair shake and to give everybody a fair shake and to apply the law as I give it to you.

We're not asking you to leave your common sense and your past experiences at the doorstep but being fair, giving everybody a fair shot, the prosecutor and the defense. Can you commit to that, do you commit to that?

JUROR: Yes, sir, I will.

THE COURT: All right. Thank you.

THE COURT: All right. Thank you. To the People.

MS. POPE-STARNES: Before you went on disability what kind of work did you do?

JUROR: I was an auditor I worked at the headquarters at Michigan National at the time.

MS. POPE-STARNES: Michigan National Bank?

JUROR: Yes. I worked in the control division.

MS. POPE-STARNES: And I believe you said you are married?

JUROR: Yes.

MS. POPE-STARNES: And how is your husband employed?

JUROR: He's a builder.

MS. POPE-STARNES: Now you said that one of your children, I believe you said your daughter, works for the Judson Center?

JUROR: Yes. She's a family and child protective service worker.

MS. POPE-STARNES: Is she a foster care specialist?

JUROR: Yes. Well – no, she gets called in on family cases.

MS. POPE-STARNES: And do you and your daughter talk about her work?

JUROR: Not names but I socialize with the people so I pick up things, I don't think there's any breach of –

126

MS. POPE-STARNES: Right, I understand but what I'm getting at is that, you know, do you talk about the cases in general and the different allegations in those cases of abuse and/or neglect?

JUROR: No. She just she just states things like, mom, these poor kids don't have any coats or like toys for Christmas and then I'll go get some toys and – but other than that, no.

MS. POPE-STARNES: Okay. Is there anything about that that you think would make you unable to be fair and impartial in this case?

JUROR: Oh, yeah there's one other thing I wanted to mention, that my daughter does –

THE COURT: Keep your voice up.

JUROR: She was a victim of sexual assault in college.

MS. POPE-STARNES: I'm sorry to hear that. You understand from what we're talking about today that this case involves physical abuse, not sexual abuse allegations. Are you able to separate that and be fair and impartial in this case?

JUROR: I think so.

MS. POPE-STARNES: Okay.

THE COURT: Thank you, Ms. Pope-Starnes

MS. POPE-STARNES: Thank you – oh, I'm sorry, Your Honor, I did have one other.

THE COURT: Go ahead.

MS. POPE-STARNES: You said that the disability you suffer from causes you to have headaches?

127

JUROR: Yes, migraine, I have problems.

MS. POPE-STARNES: Now how often do you have this migraine – I'm sorry to be –

JUROR: I understand. It's very unpredictable but some days I'm really good and some days I'm dragging.

MS. POPE-STARNES: When you have these migraines are you able to pay attention to what's going on around you or do these require you to lay down or – what –

JUROR: Usually –

MS. POPE-STARNES: - do you think you're going to be able to sit through all of the trial and listen to all of the testimony?

JUROR: Usually I'm required to lie down, I usually require like medication and sometimes I get nauseous.

THE COURT: How –

JUROR: But that doesn't always occur.

THE COURT: How often, in the past week or can you give it on a weekly basis average, zero, maybe it's monthly or maybe it's every six months?

JUROR: Probably three times a month. I saw my doctor yesterday for bursitis.

MS. POPE-STARNES: Thank you.

THE COURT: Mr. White.

MR. WHITE: Ms. Ketelsen how long has your daughter been a protective services worker?

128

JUROR: Probably six, seven years and before that I think she worked at Haven for about twelve years.

MR. WHITE: And how many children do you have?

JUROR: Two and I have a stepson.

MR. WHITE: And where does she fit in is she older?

JUROR: She's my oldest, she's the one that was sexually assaulted and I have a daughter that is working at a university in Turkey and my stepson, he's a builder.

MR. WHITE: Okay. When you said that this case is interesting, you've heard the charges against my client, child abuse, felony murder; horrific charges, do you believe that you can sit and decide the facts of this case notwithstanding those accusations?

JUROR: I would like to think that I could – well, I believe in our constitutional rights so I would give it a go.

MR. WHITE: Okay. And I appreciate that. Is there any reason, you know, I do have concern for your health but let's say ideologically or emotionally, is there any reason that you can think of right now that would prevent you from sitting here and listening to the evidence and deciding the facts based upon what comes in this courtroom?

JUROR: I just have heard so many bad stories during the past years, I guess I would really really have to separate those issues.

MR. WHITE: Do you think you would be able to?

JUROR: I would try.

MR. WHITE: Thank you. Nothing further Judge.

THE COURT: We're to Mr. White now, am I correct?

MS. POPE-STARNES:  Your Honor, I'm sorry I believe it's the People.

THE COURT:  Oh, am I mixed up here?

MR. WHITE:  I believe so. She's had one and I've had one.

THE COURT:  I certainly invite counsel to correct me.  So we're back to Ms. Pope-Starnes.

MS. POPE-STARNES:  Right.  We're to the People for cause I believe.

THE COURT:  Go ahead.

MS. POPE-STARNES:  The People would thank and excuse Mr. Itkis, in seat one.

THE COURT:  This is peremptory  I take it?

MS. POPE-STARNES:  That's correct.

THE COURT:  Thank you. And counsel, do continue to interrupt me, its higher – not higher math but I can still screw it up. Thank you sir, you can be excused. If you'd please return to the jury office.

THE CLERK:  Court calls juror number 78, Cheryl Ryan.

THE COURT:  Ms. Ryan.  Good morning ma'am. At least you're going to have a little more comfortable seat up here. I don't know if that's much of a consolation and if you don't mind while you're working way down I can just start off the questions as you can predict.  Anything – were you able to see and hear everything okay?

JUROR:  Yes.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-826-6313

THE COURT: And anything stand out or pertain to you in particular?

JUROR: Sorry?

THE COURT: Anything stand out or pertain to you in particular?

JUROR: Many things.

THE COURT: Okay. Go right ahead.

JUROR: I would have a very difficult time hearing this case. To kind of go to the least relevant, my brother is a U of M grad but that wouldn't be a problem.

THE COURT: Okay.

JUROR: I am a religious volunteer at Scott Correctional Facility and I've been doing that for about seven years and have come into contact with many people who have been victims of abuse and are abusers themselves. Morally I would have a huge problem with this case.

THE COURT: In being fair?

JUROR: Yes.

THE COURT: Anything else?

JUROR: I have a good friend who is a paramedic in South Lyon on the fire department.

THE COURT: Because I have to distinguish between all particular jurors and everything I feel obliged to ask you, what is it about the morality that kind of separates you from other people, if you kind of know what I'm saying?

JUROR: I feel that as it got down to a decision of guilt or innocence and then the degree of penalty or whatever would come into play there, that my beliefs about the penalties for a case like this would be very different from what the law would be.

THE COURT: And one of the things that I would instruct you, in fact we may have touched on it, that is not your department so to speak –

JUROR: I know that –

THE COURT: - I used to work bottles at the grocery store and I didn't cut meat, and I'm not making trite of it but –

JUROR: No, I understand.

THE COURT: - I'm trying to kind of say it's not your department.

JUROR: What I would worry about is that – that I would cause a problem in coming to a unanimous decision.

THE COURT: Ms. Pope-Starnes?

MS. POPE-STARNES: I understand from your questionnaire that you're a homemaker and that you do volunteer work?

JUROR: Uh-huh (affirmatively)

THE COURT: You have to say yes or no by the way just so we can get it on the record.

JUROR: Oh, I'm sorry. Yes. I've been a sub-pastor for seven years for the correctional facility, Huron Valley Correctional, Saline and now at Scott Correctional facility.

MS. POPE-STARNES: Are you married?

JUROR: Yes, I am.

MS. POPE-STARNES: What does your husband do?

JUROR: He's an I.T. director for United Insurance Group, an insurance company in Milford.

MS. POPE-STARNES: And do you have children?

JUROR: I have two boys, twenty-seven and twenty-two and a very new grandbaby, four weeks.

MS. POPE-STARNES: Congratulations.

JUROR: Thank you.

MS. POPE-STARNES: Now you said that part of the volunteer work that you've done that you've talked to people in those facilities and those facilities involve women, correct?

JUROR: Women only.

MS. POPE-STARNES: That have been victims of abuse or have been perpetrators of abuse?

JUROR: Yes, two new members of the group and obviously I have, you know, it's open to anyone who chooses to sign on for these religious services, but two of the newer members, one is charged with distributing child pornography and the other one member just recently was charged and just recently came to jail for first degree criminal sexual conduct against a minor.

THE COURT: Hold the thought for one second. We are after the noon hour. I think we'll have to take probably a few more questions from Ms. Pope-Starnes so what we'll do is we're going to take a break for lunch and I would respectfully ask and emphasize,

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

don't anybody, if you see anyone other jurors or whatever, don't talk about the case to yourselves. I'd ask you to break for lunch until 1:30 and then report back here, not back to the jury office but back here and we'll resume where we left off.

If you see any of the lawyers, I know them both they're both personable people and if they look the other way, likewise my staff if we look the other way, we're not being impersonal, we're just avoiding any appearance of impropriety. So with that I'd ask – thank you all and we'll see you back here at 1:30.

THE CLERK: All rise.

(Whereupon a pause was

had in these proceedings)

THE CLERK: The court recalls People v McBurney, case number 07-214651 FC.

MS. POPE-STARNES: Sara Pope-Starnes, Assistant Prosecuting Attorney on behalf of the People.

THE COURT: Thank you.

MR. WHITE: Robert White appearing on behalf of Mr. McBurney, Your Honor.

THE COURT: Thank you. Good afternoon everyone. Your client is back and we have the jurors sequestered, potential jurors sequestered. Jeff you can bring them all in now, okay.

(Prospective jurors seated)

THE COURT: It's tight quarters there, sorry about that. Good afternoon again everyone, we're going to stay standing because there's

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

the next grouping but you guys stay seated, please. Thanks Jeff, good job.

All right. Be seated. Thanks. Hello again everyone, good afternoon. You may all be seated. You all look well rested, thank you very much. We appreciate your indulgence, especially it's been another twenty-five minutes, we had some other miscellaneous matters we had to tend to.

The record will reflect the case has been called, counsels names have been noted for the record. The potential jurors are back in the box as well as in the galley. And I think we left off, Ms. Pope-Starnes, you were asking some questions of Ms. Ryan I believe?

MS. POPE-STARNES: I was. Thank you.

THE COURT: You can resume. Thank you.

MS. POPE-STARNES: Ms. Ryan, the volunteer work that you do at those facilities is facilitating some type of religious class?

JUROR: I am what is called a religious volunteer and I help with meetings of Jehovah Witnesses that are held at those facilities.

MS. POPE-STARNES: Okay. Are you a Jehovah Witness?

JUROR: Yes, I am.

MS. POPE-STARNES: Okay. As a Jehovah Witness is there something in your moral or religious beliefs that prevents you from being able to sit in judgment of another person?

JUROR: Not specifically. In fact I came here today with the full expectation of probably sitting on a jury but I had no idea that it would be a case like this, involving murder, abuse and in a case like

this I feel that I would not be able to set aside my religious feelings

and just concentrate on what the law says.

MS. POPE-STARNES:  Based on what you just said do you

believe that you can be fair and impartial in this case or not?

JUROR:  No, I do not.

MS. POPE-STARNES:  Thank you.

THE COURT:  Mr. White, did you have any questions?

MR. WHITE:  I don't have any questions, thank you, Ms. Ryan

for your candid answers.

THE COURT:  Very well. And we're to Mr. White.

MR. WHITE:  I would challenge her for cause.

THE COURT:  Any comments.

MS. POPE-STARNES:  No, I would agree with counsel.

THE COURT:  Ma'am, I'll excuse you for cause.  You will

have to report to the jury office and we don't know what the next case

will be but you are to report back there. Thank you very much.

JUROR:  Okay. Sorry I caused a problem.

THE COURT:  Thank you.

MR. WHITE:  May we take care of that other matter too,

Judge.

THE COURT:  Yes.  You told me and then I –

MS. POPE-STARNES:  May we approach?

THE COURT:  Yes, please approach. It was only five minutes,

what do you expect me to do, remember?

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

(Whereupon a brief discussion

was had off the record.)

THE COURT: Mr. Hill, we were not ignoring your

circumstances and again, I emphasize for your ears as well as everyone

else's ears here as well, we're not saying you're more important than

anybody else but your situation about the travel, you're the one that's

going to U.K. and things like that?

JUROR: Yes.

THE COURT: And there wasn't any adequate substitute for

you, is that right?

JUROR: Yes, sir.

THE COURT:  There's no question, there's hardly any

question that we're going to be continuing during that period of time

and though everybody is going to be inconvenienced, we think that

that might be – I think that's a bit too much of an inconvenience.

Maybe you'll get called for a shorter trial.  We'll return you to the jury

office right now, barring any objection from counsel?

MR. WHITE: No objection, Your Honor.

THE COURT: And Ms. Pope-Starnes?

MS. POPE-STARNES: No objection.

THE COURT: Thank you, thank you sir.

So we can get two names Mr. Romback.

THE CLERK: Court calls juror number 220, Derek Nowak.

THE COURT: Mr. Nowak, and if you'd take the number one

spot up there, please.

137

THE CLERK: And the court calls juror number 224, Jane Crossman.

THE COURT: Good afternoon to you, ma'am.

Sounding like a broken record, I apologize. But to both of you, able to see and hear everything okay today?

JUROR: Yes.

JUROR: Yes.

THE COURT: All right. Anything stand – we'll start with you, sir, anything stand out or pertain to you in particular?

JUROR: Just that I'm the registered vendor of the University of Michigan.

THE COURT: Okay.

JUROR: We do some business with them.

THE COURT: Okay. Anything about that that would prevent you from being fair or impartial in this case?

JUROR: Not that I'm aware of.

THE COURT: Okay. Anything else that you could think of?

JUROR: No.

THE COURT: Thank you. And ma'am, anything stand out or pertain to you?

JUROR: No.

THE COURT: All right. Do you both commit that you'll apply the law as I give it to you, even if you disagree with it, who knows what it will be, but nevertheless apply it as I give it to you to the evidence in this trial?

JUROR:  Yes.

THE COURT:  Thank you very much.  Ms. Pope-Starnes.

MS. POPE-STARNES:  Thank you Your Honor.  If I could have just one moment?

THE COURT:  Sure.

MS. POPE-STARNES:  Mr. Nowak, what type of business do you do?

JUROR:  I sell accessibility lifts for people with mobility challenges.

MS. POPE-STARNES:  And in the course of your work with University of Michigan specifically what department do you come in contact?

JUROR:  I personally work with therapists, occupational therapists, physical and doing service meetings there and my company has installed some lifts there.

MS. POPE-STARNES:  And do you know any of the doctors that we've listed from University of Michigan Hospital?

JUROR:  No.

MS. POPE-STARNES:  Is there anything about the fact that you do business with the University of Michigan Hospital that you think would make you unable to be fair and impartial in this case?

JUROR:  I don't believe so.  I mean it's always been a deal about paying but other than that they're okay.

MS. POPE-STARNES:  Are you married sir?

JUROR:  Yes.

MS. POPE-STARNES: And is your wife employed outside the home?

JUROR: Yes.

MS. POPE-STARNES: How is she employed?

JUROR: She's an office manager for a furniture store.

MS. POPE-STARNES: And do you have any children?

JUROR: One.

MS. POPE-STARNES: How old.

JUROR: Eleven.

MS. POPE-STARNES: And Ms. Crossman, are you employed, ma'am?

JUROR: Self-employed.

MS. POPE-STARNES: What type of business are you employed in?

JUROR: Agriculture.

MS. POPE-STARNES: Really –

THE COURT: Oh, just real loud if you would, please.

JUROR: I'm sorry.

THE COURT: Okay. Agriculture?

JUROR: Yes.

MS. POPE-STARNES: What do you do with agriculture?

JUROR: Farm.

MS. POPE-STARNES: Okay.

JUROR: Cash crop.

THE COURT: Is that in Oakland County?

140

JUROR: Ortonville.

THE COURT: Ortonville? I've got a cottage in Rose Township, I've got a bunch of farmers out there too.

MS. POPE-STARNES: Are you married, ma'am?

JUROR: Yes, too long.

THE COURT: Too long – there's two people that are now on the record, I think you – something about you earlier.

MS. POPE-STARNES: And is your husband in the same line of work?

JUROR: Yes.

MS. POPE-STARNES: It's a family farm?

JUROR: Yes.

MS. POPE-STARNES: Okay. And do you have children?

JUROR: Four.

MS. POPE-STARNES: And what are their age ranges?

JUROR: I've got to think, twenty, twenty-three, twenty-five, twenty-nine.

MS. POPE-STARNES: Do you have any grandchildren?

JUROR: One granddaughter twenty months.

MS. POPE-STARNES: Thank you. I have no other questions.

THE COURT: Thank you. Mr. White.

MR. WHITE: How long have you been doing business with University of Michigan?

JUROR: Personally just within the last six months myself but our company has worked for them for years.

141

MR. WHITE:  You've probably been a University of Michigan

fan, is that a fair statement in your adult life?

JUROR:  Yes.

MR. WHITE:  Okay. Now believe me I have nothing against

University of Michigan, my daughter went there, okay.  So it's just

that the hospital, the doctors that will testify for the prosecution come

from the University of Michigan Hospital.  My questions in that regard

are are you going to think that they're more believable as a witness or

as a expert witness because they come from the University of

Michigan?

JUROR:  No, not necessarily, no.

MR. WHITE:  Okay. You have an eleven year old?

JUROR:  Yes.

MR. WHITE:  And any friends or relatives that are police

officers?

JUROR:  I have a few friends that are retired from the Detroit

police force.

MR. WHITE:  And is that where you come from, Detroit?

JUROR:  Yes.

MR. WHITE:  Okay. How long have you lived in Oakland

County?

JUROR:  About six years.

MR. WHITE:  Okay. And did you move right from Wayne to

Oakland County?

142

JUROR: No, I lived in Macomb for a while and Monroe County for a while.

MR. WHITE: Okay. Do you have any friends or relatives that work in the medical field other than in the context of your employment?

JUROR: My sister is a medical biller and my aunt is a Registered Nurse in Texas.

MR. WHITE: At any time do you believe that yourself or any member of your immediate family potentially had a malpractice claim against a physician for treatment or lack of proper care?

JUROR: No.

MR. WHITE: Do you have an opinion, Mr. Nowak, that doctors are – have greater credibility than the average person if they come and testify on the witness stand?

JUROR: No, I mean I think that they should be experts in the medical field but other than that, no.

MR. WHITE: Okay. And what about police officers? Do you think that they have greater credibility than either you or I because they're certified police officers?

JUROR: The friends that I have are just like me, normal human beings.

MR. WHITE: Normal human beings, capable of error?

JUROR: We all are, we're human beings.

MR. WHITE: Ms. Crossman, any friends or relatives that are police officers?

JUROR: I have some friends.

MR. WHITE: And close friends?

JUROR: No, more acquaintance than anything.

MR. WHITE: What department do they work for?

JUROR: Let's see, Madison Heights, Genesee County mostly.

MR. WHITE: And has anyone in your family ever worked in a police department?

JUROR: No.

MR. WHITE: Any member of your family ever worked in a court or a jail?

JUROR: No.

MR. WHITE: You've heard the information being read by the prosecutor, that is the charging document and you've heard the fact that this is a child abuse case and the accusation is child abuse in the first degree and felony murder, emotional words and emotional charge; do you believe that you're able to sit in this case and hear the evidence and decide it upon the facts, other than the emotion that it generates?

JUROR: Yes.

MR. WHITE: Has any member of your family been subject to abuse?

JUROR: No.

MR. WHITE: Any close friends that believe their child has been abused?

JUROR: No.

144

MR. WHITE: You've heard my question also about the

willingness to observe and respect constitutional safeguards of the

accused in a case like this such as the right not to testify?

JUROR: Yes.

MR. WHITE: Do you believe that that's something that you

can honor?

JUROR: Yes.

MR. WHITE: Thank you very much

THE COURT: Thank you Mr. White. To the People?

MS. POPE-STARNES: None for cause, Your Honor.

THE COURT: Okay. Mr. White.

MR. WHITE: None for cause.

THE COURT: Ms. Pope-Starnes, peremptory?

MS. POPE-STARNES: I believe the peremptory is with

defense.

THE COURT: Somebody else want to take over this job here?

Mr. White.

MR. WHITE: We would thank and excuse Mr. Nowak.

THE COURT: Mr. Nowak thank you, again, it's that number

one spot there.

JUROR: It's the hot seat.

THE COURT: Hot seat, yes, thank you, please return to the

jury office, sir.

JUROR: Thank you Your Honor.

THE COURT: Okay, Jeff.

THE CLERK:  The court calls juror number 85, Julie Kujan.

THE COURT:  Good afternoon ma'am.  And same questions to you, able to see and hear everything okay?

JUROR:  Yes.

THE COURT:  All right. Anything stand out or pertain to you?

JUROR:  No.

THE COURT:  Okay. And you'll accept the instructions as I give them to you, apply them only to the evidence in this case?

JUROR:  Yes.

THE COURT:  All right. Thank you.  Ms. Pope-Starnes.

MS. POPE-STARNES:  Good afternoon.  Are you employed, ma'am?

JUROR:  Yes, I am.

MS. POPE-STARNES:  How are you employed?

JUROR:  I am an analyst with an industry -

MS. POPE-STARNES:  What type of company is that?

JUROR:  Automotive.

MS. POPE-STARNES:  Okay. And are you married?

JUROR:  Yes I am.

MS. POPE-STARNES:  Does your husband work?

JUROR:  Yes, he does.

MS. POPE-STARNES:  What does he do?

JUROR:  He's a computer programmer.

MS. POPE-STARNES:  At the same company or –

JUROR:  No –

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

MS. POPE-STARNES:  - different company?

JUROR:  Different company.

MS. POPE-STARNES:  And do you have any children?

JUROR:  No.

MS. POPE-STARNES:  Okay. Have you ever – excuse me –
have you ever had occasion to watch or care for or baby sit a child
under the age of two?

JUROR:  Oh, yes.

MS. POPE-STARNES:  When would that have been?

JUROR:  Recently I have a nephew that's two.

MS. POPE-STARNES:  Okay. And then growing up maybe as
a teenager did you do babysitting?

JUROR:  Yes, nieces, nephews, cousins.

MS. POPE-STARNES:  Okay. Have you ever sat as a juror
before?

JUROR:  No.

MS. POPE-STARNES:  Thank you. Thank you Judge, I have
no other questions.

THE COURT: Thank you,  Mr. White.

MR. WHITE:  Ms. Kujan, did you go to college?

JUROR:  Yes.

MR. WHITE:  Where?

JUROR:  Macomb Community.

MR. WHITE:  Okay. And what about your husband?

JUROR:  Yes, he was Oakland University.

147

MR. WHITE: And have you or your husband ever worked in a police agency?

JUROR: No.

MR. WHITE: How about in the medical field?

JUROR: No.

MR. WHITE: Any affiliation with South Lyon, South Lyon Village – City or Village?

MS. POPE-STARNES: City.

MR. WHITE: I'm sorry, City of South Lyon?

JUROR: No.

MR. WHITE: Do you believe that if a doctor testifies that he has greater credibility than an ordinary witness?

JUROR: No.

MR. WHITE: Same question with a police officer?

JUROR: No.

MR. WHITE: Are you able to set aside the emotion that these accusations bring and be able to judge this case on the facts that you hear that come from the witness stand and documents and other material that comes into evidence?

JUROR: That I'm not sure of.

MR. WHITE: Okay. Why not?

JUROR: Last year my brother-in-law was arrested for domestic abuse and felonious assault against my niece.

MR. WHITE: And what about that? And I don't mean to pry but we're talking about that, what about that has caused you think that maybe you can't be a fair and impartial juror in this case?

JUROR: It was very emotional.

MR. WHITE: This will be very emotional also –

JUROR: Uh-huh (affirmatively)

MR. WHITE: - with pictures and a lot of medical testimony and a lot of tears so you think –

JUROR: Uh-huh (affirmatively)

MR. WHITE: - knowing that this is what's going to happen in this courtroom, that this is going to be bothersome and interfere with your ability?

JUROR: Yes.

THE COURT: Let me just expound on that just a little bit if you would, Mr. White.

MR. WHITE: Sure.

THE COURT: It's kind of implicit but its okay to make it explicit, it's going to be bothersome, no question for everybody it's going to be bothersome; the question is whether the bothersome is going to transform into unfairness and I emphasize I really want your honest opinion but what I – arguably one would say you know what, especially in light of my experience with my brother-in-law and niece the system needs a juror like me that would be fair and impartial. I'm not trying to force your hand so to speak but do you kind of understand my perspective?

FORM CSR - LASER    REPORTERS PAPER & MFG. CO.    800-626-6313

JUROR: Right.

THE COURT: And without the jury system we have no system whatsoever. I just want to make sure that we're not – that we're consciously transferring from yes, it's going to be bothersome to I cannot be fair and it's two different matters. It will be bothersome, we take obvious note of that, but will you nevertheless feel you can –

JUROR: I could be fair.

THE COURT: You could be fair? Okay. Thank you. Go ahead, Mr. White.

MR. WHITE: If I may ask, why will it be bothersome?

JUROR: I just – just the emotional feelings that I had gone through in my own – not my situation but my family situation, I'm a sensitive person.

MR. WHITE: Okay. And do you think it will be bothersome because you don't like the nature of this type of accusation?

JUROR: Yes.

MR. WHITE: Okay. And do you think it would be bothersome to the degree that you can't sit and judge the evidence based upon what's said as opposed to how you feel about it, the emotions that you bring to this courtroom?

JUROR: That I'm not sure of.

MR. WHITE: Thank you for your candor.

THE COURT: Ms. Pope-Starnes.

MS. POPE-STARNES: None for cause, Your Honor.

THE COURT: And Mr. White, cause?

MR. WHITE: Your Honor, I think Ms. Kujan is trying so hard to express herself I am concerned that her experience and the emotions that she's said she's going to in all probability to experience influence her ability to be fair and impartial. I think it's proper that we ask she be excused for cause, Your Honor.

THE COURT: In fairness I was a little bit – we might have gotten a little bit confused but I'm not trying to put words in your mouth but, bothersome, difficult notwithstanding, can you be fair?

JUROR: I can be fair.

THE COURT: Okay.

JUROR: But emotionally it's –

THE COURT: It's going to be taxing?

JUROR: Uh-huh (affirmatively).

THE COURT: Okay. All right. Anything in response, Ms. Pope-Starnes?

MS. POPE-STARNES: Yes, Your Honor, I don't believe that that is not the requirements for cause.

THE COURT: Okay. Thank you.

MS. POPE-STARNES: She's indicated she could be fair.

THE COURT: All right. The court respectfully will deny for cause and I believe we're to Ms. Pope-Starnes for peremptory?

MS. POPE-STARNES: The People would thank and excuse juror in seat number twelve, Mr. Norton.

THE COURT: Mr. Norton, thank you, sir, if you'd return to the jury office, appreciate your service. And, Jeff.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

THE CLERK: The court calls juror number 188, Kathryn

Wolak.

THE COURT: Good afternoon, ma'am.

JUROR: Good afternoon.

THE COURT: Able to see and hear everything okay?

JUROR: Pretty much so.

THE COURT: Okay. Anything stand out or pertain to you?

JUROR: Um –

THE COURT: Anything stand out or pertain to you in

particular that you can think of?

JUROR: Um, there are two attorneys in my family-

THE COURT: Okay.

JUROR: - but I don't really keep track of what they do.

THE COURT: All right.

JUROR: And forty years ago, a little more than forty years ago

I was a caseworker for the Wayne – at that time it was called Wayne

County Bureau of Children's Services and did aid to families with

dependency issues.

THE COURT: Okay. Good memory keeping all of that during

this whole length of the day. Anything else that stands out or pertains?

JUROR: No, sir.

THE COURT: All right. Those two matters or those two

situations, could you – are they going to affect you or can you be fair

and impartial in this case?

JUROR: I think I can be fair.

THE COURT:  Okay. You'll take the law as I give it to you and apply it just to the evidence?

JUROR:  Yes.

THE COURT:  Okay. Thank you very much. Ms. Pope-Starnes.

MS. POPE-STARNES:  Good afternoon ma'am. I know from your questionnaire most recently you have worked in education?

JUROR:  Uh-huh (affirmatively)

MS. POPE-STARNES:  As a teacher?

JUROR:  Yes.

MS. POPE-STARNES:  What grades did you teach?

JUROR:  I worked with kids all the way from kindergarten to Wayne State, I taught a little bit at Wayne State.

MS. POPE-STARNES:  Are you still teaching now?

JUROR:  No.

MS. POPE-STARNES:  Now previously you said you worked for the Bureau of Children Services?

JUROR:  At the time –

MS. POPE-STARNES:  They've changed their name so many times.

JUROR:  - it was Wayne County Bureau of Social Aid.

MS. POPE-STARNES:  And specifically was your work in working with families that needed financial aid?

JUROR:  Basically, yes.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

MS. POPE-STARNES:   Okay. So you didn't work in a
protective services capacity?

JUROR:  I had a little bit of training for a few weeks while I
was there.

MS. POPE-STARNES:   Okay. But you never did any
fieldwork actually investigating allegations of abuse?

JUROR:  No, I just worked with somebody else who did.

MS. POPE-STARNES:   Okay. And then I believe you said
you had some family members that are lawyers?

JUROR:  Yes, I have –

MS. POPE-STARNES:   What relation to you?

JUROR:   - a brother-in-law, he works I believe for the
Attorney General for the state, and a step-son-in-law I guess you'd call
him, and he works in Chicago, he's got his own practice and I think he
just does mostly business type things.

MS. POPE-STARNES:   Okay. And do you talk to them –
excuse me, do you ever talk to them about the work that they do?

JUROR:  Not too much.

MS. POPE-STARNES:   Are you married?

JUROR:  Yes.

MS. POPE-STARNES:   And is your husband employed?

JUROR:  No, he's retired.

MS. POPE-STARNES:   What did he do before he retired?

JUROR:  He worked for a couple of car dealerships.

MS. POPE-STARNES:   Do you have children?

JUROR:  No, stepchildren, two children.

MS. POPE-STARNES:  How long have your stepchildren live with you?

JUROR:  They don't live with us, they're long married and they have children of their own.

MS. POPE-STARNES:  Did they ever live with you?

JUROR:  No.

MS. POPE-STARNES:  No.  Okay. Other than your work as a teacher, have you ever had occasion to care for children under the age of two?

JUROR:  Yes.

MS. POPE-STARNES:  And how is that?

JUROR:  I'm the oldest of seven and my youngest sister is almost eighteen years younger than I am so I did a lot of childcare.

MS. POPE-STARNES:  Right. Thank you. Thank you Your Honor, I have no other questions.

THE COURT:  Thank you. Mr. White.

MR. WHITE:  What did you teach?

JUROR:  Social studies and math.

MR. WHITE:  And do you still do it?

JUROR:  No, I'm retired.

MR. WHITE:  Oldest of seven, eighteen years difference so you would help mom and dad a great deal, changing diapers, feeding, bathing, everything, so you were a mom as a sibling?

JUROR:  Right.

MR. WHITE: Did you attend college?

JUROR: Michigan State.

MR. WHITE: That fine university in East Lansing. Okay. You've heard the nature of the charges, child abuse, first degree felony murder; you've heard that there's prior child abuse investigation involving Mr. McBurney, you've heard that is a tremendously emotional and provocative statements or charges, are you going to be able to sit and listen to the evidence in this case and decide this case on the evidence that comes in this court?

JUROR: Yes.

MR. WHITE: Thank you.

THE COURT: Thank you Mr. White. Ms. Pope-Starnes, for cause?

MS. POPE-STARNES: None for cause, Your Honor.

THE COURT: And Mr. White?

MR. WHITE: None for cause.

THE COURT: Thank you and we're to Mr. White for peremptory I believe?

MR. WHITE: Yes. I'd thank and excuse Ms. Kujan, juror number one.

THE COURT: Juror number one. I'm telling you, there's something about that seat. Thank you ma'am, if you would just return to the jury office, okay.

THE CLERK: Court calls juror number 173, Terri McKay.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

THE COURT:  Good afternoon, ma'am.  Too bad we don't have another seat, I'd have you sit somewhere else, get rid of that number one spot.

Able to see and hear everything okay?

JUROR:  Yes, sir.

THE COURT:  All right. Anything stand out or pertain to you in particular?

JUROR:  I have a cousin that's a police officer.

THE COURT:  Okay.

MR. WHITE:  I'm sorry, I didn't hear?

JUROR:  I have a –

THE COURT:  You have a cousin that's a police officer.

JUROR:  - cousin that's a police officer in New York City.

THE COURT:  Okay.

JUROR:  Now I can't think of anything, that's just the one thing.

THE COURT:  All right. Let me just ask you the broad brush questions, you've heard the schedule, you've heard the charges, I'm going to give you instructions on the law; will you apply the law as I give it to you to the evidence in this case?

JUROR:  Yes.

THE COURT:  All right. And you see yourself as being a fair person both to the prosecutor and the defense?

JUROR:  Yes.

THE COURT:  Okay. Thank you. Ms. Pope-Starnes.

MS. POPE-STARNES: Good afternoon.

JUROR: Good afternoon.

MS. POPE-STARNES: Are you employed?

JUROR: Yes.

MS. POPE-STARNES: How are you employed?

JUROR: Sales support.

MS. POPE-STARNES: What does that mean?

JUROR: Good question, I've been a little bit of everything, sales analysis to the manufacturing aspect.

MS. POPE-STARNES: What company do you work for?

JUROR: Tech Temper (phonetic)

MS. POPE-STARNES: Are you married?

JUROR: I am, he's unemployed.

MS. POPE-STARNES: Okay.

JUROR: I have a daughter, she's seventeen.

MS. POPE-STARNES: Okay. And when your husband – was your husband employed previously?

JUROR: Yes, customer service.

MS. POPE-STARNES: What type of business, retail?

JUROR: No, call centers.

MS. POPE-STARNES: You've heard us as questions about whether or not you know anyone or you've ever been the victim of child abuse?

JUROR: I've never been a victim.

158

MS. POPE-STARNES: And you've heard us go into talking about the fact that there will be a lot of medical testimony, there will be some photographs that the medical examiner may have that may be somewhat graphic in nature, you understand that's necessary in this type of trial?

JUROR: Yes.

MS. POPE-STARNES: And you will be able to sit through this trial and make a decision despite the graphic and uncomfortable nature of it?

JUROR: I can.

MS. POPE-STARNES: Okay. We've talked about the fact that the Judge will give you the law at the end of the trial about what the parts or elements are of felony murder and first-degree child abuse?

JUROR: Yes.

MS. POPE-STARNES: Do you agree to follow the law as the Judge gives it to you?

JUROR: Yes.

MS. POPE-STARNES: Thank you very much.

THE COURT: Thank you Ms. Pope-Starnes, Mr. White.

MR. WHITE: Ms. McKay, what's your educational background?

JUROR: I went to high school in Georgia and two years at Georgia State.

MR. WHITE: And how long have you been in Michigan?

JUROR: Seven years.

159

MR. WHITE: You've lived in Oakland County during that time?

JUROR: Yes.

MR. WHITE: Ever sit on a jury before?

JUROR: No.

MR. WHITE: Ever been involved in the jury selection process, like sitting in the pews or anything?

JUROR: No.

MR. WHITE: So this is your first experience?

JUROR: Yes.

MR. WHITE: Okay. Ever been in a courtroom before?

JUROR: Yes.

MR. WHITE: In this state or?

JUROR: Yes.

MR. WHITE: And if I may ask, in what context, as a witness or what?

JUROR: I was in a domestic violence case.

MR. WHITE: Okay.

JUROR: In the Novi court.

MR. WHITE: And were you the complaining witness in that case?

JUROR: I'm not sure, I think so. My husband didn't take his medication and went a little crazy one day.

MR. WHITE: I see. Thank you very much. Anything from that experience that you had that would lead you to believe that you couldn't be a fair and impartial juror in this case?

JUROR: No, it was very satisfactorily resolved.

MR. WHITE: Okay. Any friends or relatives that are police officers?

JUROR: My cousin in New York.

MR. WHITE: Your cousin in New York, and what about medical field?

JUROR: No.

MR. WHITE: Any affiliation with South Lyon, University of Michigan?

JUROR: No.

MR. WHITE: Any strong feelings about people accused of child abuse?

JUROR: I obviously – I think anybody would have an opinion, a strong opinion for that.

MR. WHITE: I mean – and I agree, that was an in artful question, excuse me. The question is, you know, the accusations, child abuse and murder in this case and is by the very nature of those words, they're emotionally provoking; but the question is, the nature of those words and the accusations, will they interfere with your ability to hear and judge the evidence on its terms?

JUROR: I don't believe so.

161

MR. WHITE:  You think you can see what an accusation is

understand what evidence is and be able to render a fair impartial

verdict?

JUROR:  Yes.

MR. WHITE:  Okay. Thank you, Mr. White.

THE COURT:  Thank you. Ms. Pope-Starnes, for cause?

MS. POPE-STARNES:  None for cause, Your Honor.

THE COURT:  Mr. White?

MR. WHITE:  No.

THE COURT:  Thank you. And to Ms. Pope-Starnes?

MS. POPE-STARNES:  May I have just one moment, Your

Honor?

THE COURT:  You may.

MS. POPE-STARNES:  The People would thank and excuse

the juror in seat number two, Ms. Ketelsen.

THE COURT:  Ms. Ketelsen, thank you, ma'am, appreciate

you coming down, if you'd just report to the jury office, okay?

JUROR:  Thank you Your Honor.

THE COURT:  Thank you. Okay, Jeff.

THE CLERK:  The court calls juror number 80, Rosemary

Biundo.

THE COURT:  How did he – how is it?

JUROR:  Biundo.

THE COURT:  That was pretty good. That – sure, that was his

second choice, right. Yes, ma'am.

JUROR:  Should I go back where I was?

THE COURT:  Yes, go back to the jury office where you first checked in this morning.

All right. Ms. Biundo, were you able to see and hear everything okay?

JUROR:  Yes.

THE COURT:  All right. You know the rest of the story, anything stands out or pertains to you?

JUROR:  I remember it all.

THE COURT:  Okay.

JUROR:  I work with a policeman, he's a reservist,  my nieces graduated from U of M, my brother-in-law is a nurse, respiratory therapist, I'm married, he's a contractor, two kids, twenty-seven and twenty-one.

THE COURT:  I think we should clap for her. Good job, thank you ma'am.

Anything about those facts that would prevent you from being fair and impartial here?

JUROR:  No.

THE COURT:  Again, I'm sounding like a broken record but it's important that I say it each time. Will you accept the law as I give it to you and apply it to the evidence in this case?

JUROR:  Yes.

THE COURT:  Be fair to both sides?

JUROR:  Yes.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

THE COURT: Thank you, ma'am. Ms. Pope-Starnes.

MS. POPE-STARNES: I just have a few questions with that.

THE COURT: Okay.

MS. POPE-STARNES: The people that you know that are involved in the medical field, do you know if any of them are with the University of Michigan?

JUROR: No.

MS. POPE-STARNES: Okay. And you said you know a police officer?

JUROR: He's a reservist with Roseville, I work with him.

MS. POPE-STARNES: What type of work do you do?

JUROR: Sales.

MS. POPE-STARNES: Is there anything about you knowing a reserve police officer from Roseville that would lead you not to be fair -- you know, unfair or impartial?

JUROR: No.

MS. POPE-STARNES: I don't have anything else. Thank you.

THE COURT: Thank you. Mr. White.

MR. WHITE: Biundo?

JUROR: Yes.

MR. WHITE: How long have you lived in Oakland County?

JUROR: Twenty-seven years.

MR. WHITE: And do you have any interest in watching TV shows about medical or legal?

JUROR: I watch ER, I like mystery diagnosis.

MR. WHITE: Is that – I don't watch much TV, is mystery diagnosis a specific show or is that just a general generic term?

JUROR: Its reality based, someone is sick, they try to find the cause.

MR. WHITE: Okay. So it's medical more than legal?

JUROR: Yes.

MR. WHITE: Any friends or relatives that work with governmental agencies?

JUROR: No.

MR. WHITE: Have close friends or relatives ever been – or yourself ever been affiliated with South Lyon?

JUROR: No.

MR. WHITE: And do you believe notwithstanding the horrific nature of these allegations you can sit as a fair and impartial juror in this case?

JUROR: I would try my best, yes.

MR. WHITE: You would listen to the Judge's instructions about how to judge evidence, what evidence to consider and be able to determine credibility issues and are you willing to say that you'd judge a doctor testifying as if he was any other person or she was any other person?

JUROR: Yes.

MR. WHITE: And a police officer?

JUROR: Yes.

MR. WHITE: Okay. Thank you very much.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

THE COURT: Thank you. Ms. Pope-Starnes for cause?

MS. POPE-STARNES: None for cause, thank you.

THE COURT: Mr. White?

MR. WHITE: None, Your Honor.

THE COURT: Thank you. And to Mr. White, peremptory.

MR. WHITE: Excuse me one second.

THE COURT: Sure.

MR. WHITE: We'd thank and excuse the juror seated in seat eleven, Ms. Johnston.

THE COURT: Ms. Johnston, thank you ma'am, you made it for a good length – yes, that's you, you're excused for peremptory , yes, if you'd just return to the jury office, okay, please. Thank you very much. Okay. Jeff.

THE CLERK: The court calls juror number 175 William Goodwin.

THE COURT: Afternoon, Mr. Goodwin.

JUROR: Good afternoon.

THE COURT: Okay. And as you're working your way up there and as you're coming up, able to see and hear everything okay?

JUROR: Yes.

THE COURT: All right. Anything in particular with your situation or your background?

JUROR: I happen to attend University of Michigan Engineering School there.

THE COURT: Okay.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

JUROR: And I often cheer for other teams so –

THE COURT: Perfect equality.

JUROR: And my father-in-law is an attorney, worked as general counsel for the Michigan Farm Bureau, he's retired for about ten years.

THE COURT: Okay. That pretty much covers it from your perspective?

JUROR: Yes, pretty much.

THE COURT: All right. Either of those two situations would affect you in any way in this case?

JUROR: No.

THE COURT: Commit to being fair to both sides here and apply the law as I give it to you?

JUROR: Yes.

THE COURT: Thank you, sir. Ms. Pope-Starnes.

MS. POPE-STARNES: Thank you Your Honor. What type of engineering work do you do?

JUROR: I work in the automotive field, power train.

MS. POPE-STARNES: Electrical engineering or?

JUROR: It's mechanical and electrical.

MS. POPE-STARNES: Okay. Mechanical. And are you married?

JUROR: I am.

MS. POPE-STARNES: And is your spouse employed outside of the home?

FORM CSR - LASER    REPORTERS PAPER & MFG. CO.    800-626-6313

JUROR:  She is not.

MS. POPE-STARNES:  Okay. Do you have any children?

JUROR:  Yes, five.

MS. POPE-STARNES:  Five?

JUROR:  Yes.

MS. POPE-STARNES:  What are their ages?

JUROR:  Thirteen down to six.

MS. POPE-STARNES:  Did your wife ever work outside of the home prior to having children?

JUROR:  She did before we were married.

MS. POPE-STARNES:  What type of work did she do?

JUROR:  She was in advertising.

MS. POPE-STARNES:  Okay. Is there anything about the nature of this case that you think would make you unable to be fair and impartial?

JUROR:  Not that I've seen.

MS. POPE-STARNES:  Okay. And you're willing to consider the testimony as you hear it from the witness stand and the evidence as it's presented and allowed to be admitted by the court?

JUROR:  Yes.

MS. POPE-STARNES:  Now, you've obviously heard through the morning and this afternoon that there will be several experts that testify as well several doctors that were involved in the treatment of Madison?

JUROR:  Yes.

MS. POPE-STARNES: I guess what I want to ask you, sir, you work in engineering, you will not attempt to try to substitute what you know about engineering and mechanical engineering for the testimony of witnesses who may testify about the force necessary to cause these types of injury?

JUROR: Yes, I will not.

MS. POPE-STARNES: Thank you. I have no other questions, Your Honor.

THE COURT: Mr. White.

MR. WHITE: Mr. Goodwin what years did you attend that university?

JUROR: I finished undergrad in '89 and then went back for two years of graduate school in '92 to '94.

MR. WHITE: How long have you lived in Oakland County?

JUROR: Eight years.

MR. WHITE: Your children you said are thirteen to six?

JUROR: Six months.

MR. WHITE: Six months, I'm sorry I missed that. So as far as parents are considered, you're in that professional category?

JUROR: I wish.

MR. WHITE: Do you think it's possible that one could be frustrated with one's child?

JUROR: Oh, yes.

MR. WHITE: Have you been a hands on dad, the diapers, the feeding and —

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

JUROR: Yes –

MR. WHITE: - the bathing, sticking their little arms in their shirts –

JUROR: Yes.

MR. WHITE: So it's something that you have a great deal of personal knowledge of?

JUROR: Yes.

MR. WHITE: And now the allegations in this case, my client is accused of child abuse in the first degree and felony murder, you would be able to render a verdict based upon your judging the weight and credibility of evidence that comes in in this court?

JUROR: Yes.

MR. WHITE: Thank you very much.

THE COURT: Thank you. Ms. Pope-Starnes, for cause.

MS. POPE-STARNES: None for cause Your Honor.

THE COURT: Mr. White.

MR. WHITE: None, Your Honor.

THE COURT: And now to the People for peremptory?

MS. POPE-STARNES: People would thank and excuse Mr. Goodwin in seat number eleven.

THE COURT: Thanks Mr. Goodwin, appreciate it. You may return to the jury office.

THE CLERK: The court calls juror number 81, Gayle Leismer.

THE COURT: Hi, ma'am.

JUROR:  Hi.

THE COURT:  Appreciate your patience, everyone's patience, you've been wonderful.  Able to see and hear everything okay?

JUROR:  Yes.

THE COURT:  All right. Anything stand out or pertain to you, ma'am?

JUROR:  My daughter-in-law works for the Oakland County Prosecutor's Office –

THE COURT:  Did or does?

JUROR:  She does.

THE COURT:  Okay. What's her name?

JUROR:  Michelle Leismer.

THE COURT:  Okay. All right.

JUROR:  We were involved in a case a couple years ago.

THE COURT:  When you say we?

JUROR:  My family.

THE COURT:  Okay.

JUROR:  It was prosecuted by Wayne County, it was a charge of third degree sexual misconduct, whatever it was – it went to jury, it was a hung jury, they ended up pleading no contest and that's what happened with that.

I believe I could be a good juror because of that experience.

THE COURT:  When you say good, I know you mean this but I just want to make sure we have it on the record, good meaning fair and impartial?

JUROR: Right, right, that's what I mean because actually I thought this one was innocent, you know, but things happen, you know, so –

THE COURT: Anything else?

JUROR: I guess that's it.

THE COURT: Okay. And that experience which you've already talked about, you could still be fair and impartial and you said something even before that, your whole background, nevertheless, you can be fair in this case?

JUROR: Yes.

THE COURT: And you commit to be fair to both sides?

JUROR: Yes.

THE COURT: And you'll apply the law as I give it to you?

JUROR: Yes.

THE COURT: Thank you. Ms. Pope-Starnes.

MS. POPE-STARNES: Your daughter works for the Oakland County Prosecutors Office?

JUROR: Daughter-in-law.

MS. POPE-STARNES: Daughter-in-law. And I have to apologize, you know, we have a large office I don't know who she is?

JUROR: She is sort of chunky, dark long hair –

THE COURT: That's three transcripts that are going to be ordered here.

MS. POPE-STARNES: I was asking more of what her duties or job was?

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

JUROR: I really don't know.

MS. POPE-STARNES: Do you know if she works as a secretary or clerical or –

JUROR: I really don't know what her job is, we never have talked about her job or anything else, I just know that she works for the prosecutor's office.

MS. POPE-STARNES: Okay. And that answers that, have you ever talked to her about whatever her work is there?

JUROR: No, no.

MS. POPE-STARNES: Okay. And the prior case that you talked about that involved – it involved a nephew did you say?

JUROR: It involved my son.

MS. POPE-STARNES: Your son.

JUROR: Which was Michelle's husband, that's why when they tried it they had a Wayne County prosecutor come in instead of Oakland County.

MS. POPE-STARNES: A special prosecutor?

JUROR: Correct.

MS. POPE-STARNES: Okay.

JUROR: This was two years ago.

MS. POPE-STARNES: Okay. And can you explain to me, you said because of that experience you believe that you can be fair and impartial –

JUROR: Well, right –

MS. POPE-STARNES: - as a juror?

173

JUROR: I do because I think before when you heard somebody, you know, say homicide, child abuse, you just assume they're guilty in a way, and it opened my eyes to that there is two sides to the story and you just have to listen to the evidence, I guess that's what I should say. I've never sat on a jury before, never even been inside one of these proceedings like this, so I guess, you know, I just took life for granted, you know, until the situation came into my family and then it just hit us all like a ton of bricks. I felt that the justice failed him, you know, he paid his time and everything and you know, life goes on you know, it just has to go on.

MS. POPE-STARNES: And as I understood you said you believed when you first heard about it that he was not guilty but he ultimately pled no contest, is that right?

JUROR: I'm not saying that my son was guilty, it was a –

MS. POPE-STARNES: Right, that's not what I'm asking.

JUROR: Okay.

MS. POPE-STARNES: But do I understand that correctly?

JUROR: Right.

MS. POPE-STARNES: Okay. And do you believe that the justice system worked in that case?

JUROR: I believe the jury system failed him, personally I – for the evidence that was in that case, that particular case, it was all hearsay, there was no evidence of – to look upon, it mean it's a case of something twelve years prior or whatever, that's why I couldn't t –

174

MS. POPE-STARNES: Let me talk to you about this. Okay.

In some cases you have eyewitnesses –

JUROR: Right.

MS. POPE-STARNES: - someone that sees a crime and

testifies from the stand?

JUROR: Right.

MS. POPE-STARNES: In other cases we have what's called

circumstantial evidence where we have evidence that something has

occurred but we have no direct eye witness.

JUROR: Right.

MS. POPE-STARNES: For example a fingerprint is

circumstantial evidence –

JUROR: Right.

MS. POPE-STARNES: DNA is circumstantial evidence.

JUROR: Right.

MS. POPE-STARNES: Do you agree that if we showed

circumstantial evidence beyond a reasonable doubt that the defendant

committed the crime of felony murder and child abuse in the first

degree, that you could find him guilty?

JUROR: Yes, I do.

MS. POPE-STARNES: Okay. Will you require us to have an

eyewitness?

JUROR: No.

MS. POPE-STARNES: Because you understand in this case

the victim is deceased, okay?

JUROR: Yes, I understand that.

MS. POPE-STARNES: Okay. Thank you. I have no other questions.

THE COURT: Mr. White.

MR. WHITE: Did you testify in that trial?

JUROR: No, I was subpoenaed so I was never in the courtroom.

MR. WHITE: So you never saw any of the trial?

JUROR: No, I never seen any proceedings, they kept me out by subpoenaing me; I guess they didn't want me in the courtroom.

MR. WHITE: Do you remember what court it was in?

JUROR: The judge is retired, he was in the first hallway, you come down like the second door –

THE COURT: Judge Schnelz maybe?

JUROR: Yeah, that one.

THE COURT: Okay.

MR. WHITE: Notwithstanding your personal knowledge and your personal experience about how the criminal justice system works and how it doesn't work –

JUROR: Right.

MR. WHITE: - do you think you can sit here and, you know, give fair ear to both sides?

JUROR: Yes.

MR. WHITE: And be able to judge the facts upon what comes into this courtroom?

JUROR: Yes.

MR. WHITE: And not based upon your experiences from before?

JUROR: Right.

MR. WHITE: And you've heard about the length of this trial?

JUROR: Right.

MR. WHITE: It appears to be getting longer every minute, is that bothersome to you?

JUROR: No.

MR. WHITE: You would be able to sit if we go into next week?

JUROR: Yes.

MR. WHITE: Okay. Thank you. I have nothing further Judge.

THE COURT: To the People?

MS. POPE-STARNES: None for cause, Your Honor.

THE COURT: Mr. White?

MR. WHITE: None.

THE COURT: And I think we're to Mr. White now?

MR. WHITE: We'd like to thank and excuse Mr. Cronan, seated in seat number three.

THE COURT: Mr. Cronan, thank you very much, sir.

JUROR: Your welcome.

THE COURT: Just return to the jury office.

THE CLERK: Court calls juror number 142, Robert Nyquist.

THE COURT: Good afternoon Mr. Nyquest.

177

JUROR:  Nyquist.

THE COURT:  Nyquist.  Sorry about that.

JUROR:  That's all right.

THE COURT:  That's what I get for relying on my clerk, you know, I've got to watch it, he's bigger than me.

JUROR:  That's no problem.

THE COURT:  Able to see and hear everything okay, sir?

JUROR:  Absolutely.

THE COURT:  Anything stand out or pertain to you in particular?

JUROR:  I do have a close friend who is a Roseville reservist.

THE COURT:  Okay.

JUROR:  Sister-in-law who is an Registered Nurse.

THE COURT:  Okay.

JUROR:  There's nothing else.

THE COURT:  Okay. Anything about those two relationships or employment situations that would impact you in any way in this case?

JUROR:  No.

THE COURT:  Be able to be fair and impartial and commit to being fair and impartial here?

JUROR:  Absolutely.

THE COURT:  Apply the law as I give it to you?

JUROR:  Yes.

THE COURT:  Thank you, sir.  Ms. Pope-Starnes

MS. POPE-STARNES:  Thank you.  Mr. Nyquist –

JUROR:  Yes.

MS. POPE-STARNES:  Am I pronouncing that right?

JUROR:  Yes.

MS. POPE-STARNES:  Now you know the routine I'm about to go through here –

JUROR:  Absolutely.

MS. POPE-STARNES:  Do you want to just answer the questions –

JUROR:  Okay. My wife is employed outside of the home, she works in customer service/billing at an insurance company.  I have a twenty year old and twin eighteen year olds.

MS. POPE-STARNES:  Twins.

JUROR:  Yes.

MS. POPE-STARNES:  And –

JUROR:  Oh, yes, one more thing.  It does cause me to be in contact with FIA and social services because my daughters are autistic, so I have regular interviews with them.

MS. POPE-STARNES: Because you receive services -

JUROR:  Yes.

MS. POPE-STARNES: - from them? So it's not the protective services aspect of the department of human services –

JUROR:  We have had one contact with protective services.

MS. POPE-STARNES:  I don't mean to be nosy or pry but I need to ask you about that.  Is there anything about that particular

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

incident that you believe would make you unable to be fair and impartial in this case?

JUROR: I would be fair and impartial.

MS. POPE-STARNES: It was just involvement with protective services, not with a law enforcement agency?

JUROR: Law enforcement was involved.

MS. POPE-STARNES: Did it involve the City of South Lyon Police Department?

JUROR: No.

MS. POPE-STARNES: Did it involve a law enforcement agency here in Oakland County?

JUROR: Yes.

MS. POPE-STARNES: And how do you feel about how you were treated in that?

JUROR: I believe everyone did what needed to be done.

MS. POPE-STARNES: Okay. And you were satisfied that the system worked appropriately then?

JUROR: Yes.

MR. WHITE: I'm sorry, I didn't hear the response?

JUROR: Yes, yes, I do believe that the system worked.

MR. WHITE: Thank you.

MS. POPE-STARNES: And the matter was able to be resolved in some manner –

JUROR: Right, right, no charges but investigation.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

MS. POPE-STARNES: Okay. And since then you've had other types of contact with the department through getting services for your twins?

JUROR: Yes.

MS. POPE-STARNES: But that's a different portion of the agency than protective services?

JUROR: Yes, totally different.

MS. POPE-STARNES: Okay. What type of work do you do, sir?

JUROR: I'm an accountant.

MS. POPE-STARNES: And –

JUROR: - at a plastics company that deals with automotive.

MS. POPE-STARNES: - you don't work with the University of Michigan?

JUROR: No. I'm a Spartan.

MS. POPE-STARNES: So am I. I don't think I have anything else. Thank you very much, sir.

THE COURT: Thank you, Mr. White.

MR. WHITE: Mr. Nyquist, you look familiar, do I look familiar? I live in Clarkston and I –

JUROR: I live in Clarkston.

MR. WHITE: - my son plays a lot of sports and do you referee at all?

JUROR: No.

MR. WHITE: You've heard the nature of the charges?

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

JUROR: Yes.

MR. WHITE: And no matter how difficult this is, the fact that you're going to hear graphic testimony from the medical examiner and doctors from U of M and pictures, are you going to be able to judge this based on the facts as opposed to the emotions that it generates?

JUROR: Yes, I will.

MR. WHITE: And knowing the length of this trial also, is that going to be problematic or will you be able to -

JUROR: Well, it will be a challenge but I can.

MR. WHITE: Have you ever sat on a jury before?

JUROR: Never.

MR. WHITE: Other than you – we've talked about involvement in the legal system?

JUROR: Yes.

MR. WHITE: I have nothing further.

THE COURT: Thank you. Ms. Pope-Starnes.

MS. POPE-STARNES: None – pass for cause, Your Honor.

THE COURT: Thank you. Mr. White.

MR. WHITE: Same.

THE COURT: And to the People?

MS. POPE-STARNES: Your Honor, the People would thank and excuse the juror in seat number eleven.

THE COURT: Thank you.

THE CLERK: The court calls juror number 40, Stephanie Schinke-Justice.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

THE COURT:  Good afternoon, ma'am.

JUROR:  Good afternoon.

THE COURT:  Same thing –

JUROR:  Heard it.

THE COURT:  Okay. Anything stand out or pertain to you?

JUROR:  Yes.  I teach in Southfield, often deal with kids who come to me who have reports of physical or sexual abuse, I know social workers, mother worked with Catholic Social Services and protective services, she used to you know, work in the foster home, say that they could be foster parents, things like that.

THE COURT:  Okay.

JUROR:  Currently trying to get custody of my stepchild who is in an abusive and drug abusive home.

THE COURT:  Okay. You come with a lot of experience, some good-

JUROR:  Yes –

THE COURT:  - some good and some –

JUROR:  - and I have a –

THE COURT:  And I'm sorry?

JUROR:  - I have a counseling degree. My brother graduated from U of M.

THE COURT:  Okay.

JUROR:  In '06.

183

THE COURT: Good enough. Anything about any of those experiences, the good with the not so good that would prevent you from being fair to these folks, obviously different circumstances?

JUROR: Right. I would want to be fair but because I'm, you know, in a situation like that right now where the system just isn't working for him, it's Wayne, it's not Oakland County –

THE COURT: Sure –

JUROR: - we would have been done by now.

THE COURT: Okay. All the more reason and again, I'm not – truly I'm not pontificating, but all the more reason why we need people that would be fair and impartial here in order to make the system work.

JUROR: Right.

THE COURT: I don't want to put words in your mouth but will you commit to giving everybody a fair shake?

JUROR: It's a little too close for me right now, you know, I'm having –

THE COURT: Just because counsel is going to ask questions if I don't, I've got to see how it transforms, how it is that your experience would say that this guy is guilty or that they're not going to be able to prove their case, you haven't even heard anything yet, do you know what I'm saying?

JUROR: Right.

THE COURT: How does your experience dictate something that you haven't even heard yet? Do you know what I'm saying?

JUROR: Maybe – probably because in my own situation with a court case that's been going on for so long, I know – I know what the mother has done and I know that the court has not recognized what she's done and I've seen what she's done but the court is not recognizing it. So –

THE COURT: And what I'm kind of inquiring about is how does that translate to you saying you're incapable of –

JUROR: Right, will I'm not saying incapable –

THE COURT: Okay.

JUROR: - you know, I would hope that I could as a professional counselor as well be able to, you know, do the right thing.

THE COURT: Okay. And that's all that someone could ask is that they go into it without any baggage against the People or baggage against the defense and that's all we're asking and that's all we can really ask for and if you will commit to that?

JUROR: Okay.

THE COURT: I'm not trying to – counsel is going to ask you some questions in a couple minutes too, I don't want to twist your arm or anything but again, we need people that, hey, can you give me a fair shake is basically what everybody is asking?

JUROR: Yes.

THE COURT: Okay. And you'll apply, this is another tough call for everybody, I will read you some instructions at the end, I'll read some instructions at the beginning; whether you believe them or not, you have to basically accept them; I'm kind of talking to

everybody, accept the law as I give it to you and apply it to the facts in this case and the evidence in this case?

JUROR: Yes.

THE COURT: Okay. Thank you. Ms. Pope-Starnes.

MS. POPE-STARNES: The case involves – is it your stepson did you say?

JUROR: Yes.

MS. POPE-STARNES: Okay. The case involving your stepson is a custody case?

JUROR: Right.

MS. POPE-STARNES: There's not a criminal case or a neglect case, it's a custody matter?

JUROR: We're trying to get full custody because there is neglect.

MS. POPE-STARNES: Okay. But there's not a specific neglect case going on that involves the Department of Human Services and –

JUROR: Oh, yes –

MS. POPE-STARNES: - oh, there is.

JUROR: Right.

MS. POPE-STARNES: Okay. I know that you've said that you have a degree in counseling but I understand from your questionnaire you also work in education?

JUROR: Right.

MS. POPE-STARNES: Are you a teacher as well?

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

JUROR: Teaching – I'm not right now because I'm working on my PHD in counseling.

MS. POPE-STARNES: Okay. And what grade or age group did you teach?

JUROR: High school.

MS. POPE-STARNES: So you're doing both?

JUROR: Right now.

MS. POPE-STARNES: Are you going to school then as well?

JUROR: Yes.

MS. POPE-STARNES: Where do you go to school?

JUROR: I'm doing it at the Laughlin (phonetic) University.

MS. POPE-STARNES: Okay. And your husband what type of work does he do?

JUROR: Contractor.

MS. POPE-STARNES: Does any of that contract work involve University of Michigan?

JUROR: No.

MS. POPE-STARNES: The witnesses that we've talked about in this case, you don't recognize any of those people?

JUROR: No.

MS. POPE-STARNES: Thank you.

THE COURT: Mr. White.

MR. WHITE: So you think the system is not working with your stepson –

JUROR: - right.

MR. WHITE: - is that a fair statement?

JUROR: Yes.

MR. WHITE: But there's been involvement with the Department of Human Services?

JUROR: Uh-huh (affirmatively)

MR. WHITE: You have to answer yes.

JUROR: Yes, I'm sorry, yes.

MR. WHITE: And has there been involvement with the police?

JUROR: Um –

MR. WHITE: Criminal charges brought against the mom?

JUROR: No.

MR. WHITE: How long has this case been pending?

JUROR: It has been two summers so two years.

MR. WHITE: And how old is your stepson?

JUROR: Three.

MR. WHITE: Okay. And so how long have you been with the father?

JUROR: High school sweethearts so on and off since high school.

MR. WHITE: So this has been something you've been living with then for the past several years?

JUROR: Right.

188

MR. WHITE: And I appreciate your truthfulness in expressing yourself but my concern is this is a very very, you know, emotionally provocative case involving the death of an eleven month old child –

JUROR: Uh-huh (affirmatively)

MR. WHITE: - and my client, the father, is accused of murdering her, abusing her and intending to cause serious physical harm and it's a horrific accusation. Now you've lived in a situation where you – where this little guy that you have is subject to I believe neglect –

THE COURT: Little louder –

MR. WHITE: - I'm sorry. Neglect?

JUROR: Right.

MR. WHITE: And this has personal impact in your life, personal in your life and it also obviously impacts also the rest of your life too, your very advanced in your studies and everything. It's very commendable you must have a high intellect to get this PHD but are you going to be able to use your intellect to be able to judge the evidence or are you going to let your personal emotions, the matters that you've lived with for the last couple of years –

JUROR: My emotions about – it would probably play more into it than into my professional life because he's not my client so I can't –

MR. WHITE: So – and please, don't let me put words in your mouth but are you saying that you cannot be a fair juror in this case?

JUROR: I would like to think that I could be fair.

MR. WHITE:  Okay. Notwithstanding the fact that this accusation is murder in the first degree, there's prior child abuse investigation eight years ago which – nine years ago – these are all things that you can say I can put aside emotionally and make a decision based upon the evidence, you can do that?

JUROR:  Right now I'm thinking in my head a whole bunch of questions I probably shouldn't even say out loud because you just said he had a prior.

MR. WHITE:  Prior investigation.

JUROR:  Right. So now I've got some questions in my head that shouldn't be there because I'm supposed to be –

MR. WHITE:  No, your questions – all your questions are valid, all your questions, because it relates to how your personal belief system is; anything that you have, that you bring into this courtroom as a prospective juror, it's all valid because it's you.

JUROR:  Okay.

MR. WHITE:  So the question is can you, knowing that this is some of the facts in this case and powerful facts, that you can say I can set this aside and if you can't, I'd just ask if you'd tell us.

JUROR:  I probably couldn't set it aside.

MR. WHITE:  Thank you.

THE COURT:  Thank you.

JUROR:  Oh, I'm sorry.

THE COURT:  Go ahead.

JUROR:  He has a court date on the 7th –

MR. WHITE: Your stepson?

JUROR: Yes.

MR. WHITE: Thanks.

THE COURT: To the People.

MS. POPE-STARNES: None for cause Your Honor.

MR. WHITE: I thankfully – you know, I believe she's been very candid with us and I appreciate the difficulty that she expresses, that personal part of her life that she's lived with for the past couple years but I do believe that she said that this will interfere with her ability to be fair and so I'd ask to excuse her.

THE COURT: Ms. Pope-Starnes?

MS. POPE-STARNES: I'd leave it to the court's discretion.

THE COURT: Okay. Ma'am, I will excuse you. With all due respect, I am not finding cause because of the court date next week, because everybody has those but – so who knows what case, you might get back to the jury office and get something that might cause for that interference; but in this particular case, we'll excuse you for cause. Thank you, if you'll report to the jury office.

Okay. Jeff.

THE CLERK: The court calls juror number 240, Douglas Roberts.

THE COURT: Good afternoon Mr. Roberts.

JUROR: Hi.

THE COURT: Hi. I could see you, I know you could see me, I'd just ask if you've been able to see and hear everything okay?

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

JUROR: Yes.

THE COURT: Okay. Anything stand out or pertain to you in particular?

JUROR: I've got two children, my daughter is thirty-nine, my son would have been forty-four, he died from leukemia when he was twenty-five –

THE COURT: Very sorry –

JUROR: - left Karen and I with two grandchildren and the mother after about three or four years took off to Tennessee, we had no knowledge about where she was and after about three weeks we came to court here and got custody of the two kids and held custody of them until they were eighteen years old.

Police officers, I was raised or a friend, Jack Dalton and I, we grew up together, he retired as a police chief of Auburn Hills; his son-in-law, Ken Atkins (phonetic) is on the SWAT team for Oakland County.

THE COURT: Okay.

JUROR: My uncle was a sheriff in Pinconning. I have two cousins that are twins, one of them worked as a nurse in an institution in Kentucky in a prison, the other works in child abuse.

THE COURT: That pretty much covers it?

JUROR: Oh, yes, all that I can think of.

THE COURT: Again, I commend you, that's not easy to do, sitting there all morning and afternoon as well. First with respect to

the relationships in the medical profession and law enforcement, will

you be able to be fair in this case, notwithstanding those relationships?

JUROR: Medical profession I have no problem with.

THE COURT: Okay.

JUROR: I'm really one-sided in the law enforcement.

THE COURT: So that if someone accused you of a crime that

you would convict yourself even if you didn't do it?

JUROR: You bet ya.

THE COURT: All right. With respect to the situation with

your son, again, I'm sure on behalf of everyone here I'm sorry about

that loss I hope there was some reward to you and your wife with

respect to the raising of the children and it wasn't just a burden and

I'm sure it was difficult to; but nevertheless that was a separate and

distinct situation, you can not allow that to affect you in this case, is

that a fair statement?

JUROR: Correct.

THE COURT: Okay. All right. So the bottom line is can you

commit to be fair in this case, here, it involves law enforcement?

JUROR: Truthfully no.

THE COURT: And in fairness, I mean I could easily just say

okay, you're excused for cause but just understand this, sir, what

you're basically saying is that you project society to all be like-

minded, where are we going to be as a society if all the jurors act as

you?

193

We have to have the cases resolved by people and if you say I think everybody should think like me, I think we'd all be in handcuffs at one time or another.

JUROR: That's true, true including myself.

THE COURT: Okay.

JUROR: So I don't think that way but I've been so deeply involved with law enforcement all my life that –

THE COURT: They can do no wrong?

JUROR: No, I know they can do wrong.

THE COURT: Okay.

JUROR: I'm sorry. Anyway, but it's a heavy weight on me.

THE COURT: Again, if I had a show of hands everybody here would recognize it's a heavy weight on everyone.

JUROR: Right.

THE COURT: But what we need to know is whether the weight is distinctly heavier for you as opposed to everybody else and that's just – and everybody, I know both lawyers personally and they're both wonderful people, I'm not grilling anybody, I am truly not but we do have to have this case decided by fair folks. And we – those that say hey, I can't be fair, I respect them but we do have to – we have to have fair people, so –

JUROR: Yes –

THE COURT: - we need –

194

JUROR: - I worked in the church I belong to for thirty years with kids in the programs, kids through fourth to twelfth grade, so I've – it's been a ministry for myself.

THE COURT: Just so I'm clear even if you didn't do any – it sounds silly but even if you didn't do anything wrong and even if someone accused you and law enforcement and prosecuted you, you would plead guilty?

JUROR: No, of course not.

THE COURT: Well, that's – again, I'm not being factious, I'm just trying to reconcile what you said earlier.

JUROR: Right.

THE COURT: Purely be – can you be fair in this case to both the prosecutor and the defense?

JUROR: I don't think so, I just don't.

THE COURT: Okay. Anything from counsel?

MR. WHITE: Nothing from the defense.

THE COURT: In terms of cause is it stipulated?

MR. WHITE: Well I'd challenge him for cause, absolutely.

THE COURT: All right. Sir, we'll excuse you. Again, I hope there isn't a six-week med mal case waiting for you down in the jury office but you can return to the jury office at this time. Thank you. We'll excuse you for cause.

JUROR: Thank you Your Honor

THE COURT: Another name?

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

THE CLERK: The court calls juror number thirty-one, Kathryn Sholudko.

THE COURT: Good afternoon, ma'am.

JUROR: Good afternoon.

THE COURT: Yeah, it's switch over. Able to see and hear everything okay?

JUROR: I've heard it.

THE COURT: Anything stand out or pertain to you in particular?

JUROR: My husband – we lived in Ann Arbor from '71 to '79 and my husband and son graduated from U of M.

THE COURT: Nothing about that?

JUROR: Nothing about that.

THE COURT: Okay. Anything else, that pretty much covers it?

JUROR: No.

THE COURT: Thank you and you'll – just so we have it on the record, you'll accept the law as I give it to you and apply it to the facts in this case?

JUROR: Yes.

THE COURT: And commit to be fair both to the prosecutor and the defense?

JUROR: Yes.

THE COURT: Thank you very much. Ms. Pope-Starnes

MS. POPE-STARNES: Do you work ma'am?

JUROR: Yes.

MS. POPE-STARNES: What do you do?

JUROR: I work with a company that manages twenty-two restaurants.

MS. POPE-STARNES: Okay. And your husband, does he work or is he retired?

JUROR: No, he works in the automotive industry.

MS. POPE-STARNES: Okay. What does he do in the automotive industry?

JUROR: Engineer.

MS. POPE-STARNES: And I know you said that you have a son, do you have any other children?

JUROR: No, twenty-year-old son.

MS. POPE-STARNES: Okay. Is he in college at this time?

JUROR: Yes, he's at U of M.

MS. POPE-STARNES: Oh, so he's currently at U of M?

JUROR: Yes.

MS. POPE-STARNES: I'm sorry, I thought you had said he had graduated.

JUROR: I wish.

MS. POPE-STARNES: Have you ever known someone who has been the victim of child abuse?

JUROR: No, not personally.

MS. POPE-STARNES: And have you heard or read anything about this particular case in the newspaper or on the TV or radio?

JUROR: I don't recall.

MS. POPE-STARNES: Okay. Thank you.

THE COURT: Thank you. Mr. White

MR. WHITE: Ms. Sholudko, how long have you lived in the

Troy area?

JUROR: Since '79

MR. WHITE: So you moved from Ann Arbor to Troy?

JUROR: Yes, '71 to '79 in Ann Arbor.

MR. WHITE: Any close friends or relatives that work in any

governmental agency –

JUROR: No –

MR. WHITE: - police department?

JUROR: No.

MR. WHITE: Court?

JUROR: No.

MR. WHITE: Prison, jail?

JUROR: No.

MR. WHITE: Medical facility?

JUROR: No.

MR. WHITE: Hospital?

JUROR: No.

MR. WHITE: And I didn't hear, Ms. Pope-Starnes might have

asked you this, what firm do you work for?

JUROR: It's called Michigan Multi-King, they own Burger

King and Bob Evans restaurants.

MR. WHITE: Okay. And the nature of your husband's employment?

JUROR: He works for Delphi.

MR. WHITE: And your husband graduated from U of M and your son is at U of M?

JUROR: Yes.

MR. WHITE: Did you attend college?

JUROR: Yes.

MR. WHITE: Where?

JUROR: Eastern.

MR. WHITE: By virtue of the fact that some of the doctors will be affiliated with U of M, will that cause them to have any greater weight, credibility wise?

JUROR: No.

MR. WHITE: You will judge their testimony –

JUROR: My husband is no smarter than me and he graduated from U of M.

MR. WHITE: Okay. Child abuse, murder, these are powerful terms, are you going to be able to listen to them, listen to the evidence and base your decision in this case on the evidence as opposed to the emotions that comes with these accusations?

JUROR: I would hope that I could. I mean that's a pretty heavy statement and you owe that to somebody to take it seriously.

MR. WHITE: I appreciate that. Thank you very much. Nothing further Judge.

THE COURT: Thank you. Ms. Pope-Starnes

MS. POPE-STARNES: None for cause, Your Honor.

THE COURT: Mr. White?

MR. WHITE: None, Your Honor.

THE COURT: And are we to Mr. White?

MR. WHITE: This is my sixth I believe. I'd thank and excuse Ms. Crossman seated in seat number four.

THE COURT: Ms. Crossman, thank you very much, ma'am, back to the farm. Thank you and if you'd just report to the jury office, okay.

THE CLERK: The court calls juror number 89, Lorenzo Walker, Junior.

THE COURT: Good afternoon, Mr. Walker.

JUROR: Good afternoon.

THE COURT: And as you're approaching, I'd just ask you the same old question, were you able to see and hear everything okay?

JUROR: Yes.

THE COURT: All right. Anything stand out or pertain to you in particular?

JUROR: No.

THE COURT: Okay. There'll be a couple of questions I'm sure from the prosecutor and the defense but just in the meantime, will you commit will you commit to be fair to both sides in this case?

JUROR: Yes.

THE COURT:  Okay. And accept the law as I give it to you,

even if perhaps you disagree with it, accept it and apply it to this case?

JUROR:  Yes.

THE COURT:  Thank you very much.  Ms. Pope-Starnes.

MS. POPE-STARNES:  Good afternoon, Mr. Walker.

JUROR:  Good afternoon.

MS. POPE-STARNES:  How are you today?

JUROR:  Good.

MS. POPE-STARNES:  How are you employed, sir?

JUROR:  I recently was in Chicago for a cooking hospitality, I

was in Oakland College and I came back this year – last year for full

studies, I went as an extern at Al's Famous – it's out in Fort Worth and

I also do construction with my father.

MS. POPE-STARNES:  So you were in a culinary arts type

program?

JUROR:  Yes.

MS. POPE-STARNES:  What school was that at?

JUROR:  The Cooking Hospitality (phonetic)  in Chicago.

MS. POPE-STARNES:  Okay. And are you married, sir?

JUROR:  No.

MS. POPE-STARNES:  Do you have any children?

JUROR:  No.

MS. POPE-STARNES:  What type of construction work do

you do with your father?

JUROR:  Laborer, I mean he does like commercial work.

MS. POPE-STARNES: Like commercial buildings?

JUROR: Yeah, he recently –

THE COURT: A little louder.

JUROR: - I'm sorry. He recently did a job down at the MGM Casino.

MS. POPE-STARNES: Okay. Now, Mr. Walker, do you have any siblings?

JUROR: I have a stepbrother.

MS. POPE-STARNES: Is he older or younger?

JUROR: Younger by seven months.

MS. POPE-STARNES: Have you ever been involved in babysitting or taking care of children under the age of two?

JUROR: No.

MS. POPE-STARNES: Thank you, I have no other questions, Your Honor.

THE COURT: Mr. White

MR. WHITE: Mr. Walker, have you ever been in a courtroom before?

JUROR: Yes.

MR. WHITE: Any of these court – Oakland County courtrooms?

JUROR: Yes, I took a field trip in high school.

MR. WHITE: Okay. And ever been a witness in a case?

JUROR: No.

MR. WHITE: Friends or relatives that are police officers?

JUROR:  I have a close friend whose dad is a police officer I think in the West Bloomfield Police Department.

MR. WHITE:  Okay. Is that where you grew up, West Bloomfield?

JUROR:  No, I'm – well, yeah.

MR. WHITE:  Did you go to West Bloomfield High Schools?

JUROR:  Yeah, I went to West Bloomfield high.

MR. WHITE:  Any college?

JUROR:  Yeah, um –

MR. WHITE:  Besides the culinary arts?

JUROR:  No, that was basically it.

MR. WHITE: And where do you attend – it was in Chicago you said?

JUROR:  Yes, that's right.

MR. WHITE:  And how long were you in Chicago?

JUROR:  For about a year and a half, two years.

MR. WHITE:  Any friends or relatives in the medical profession?

JUROR:  I'm sure I do I just don't know how many.

MR. WHITE:  Large field, I know, any friends or relatives who work for governmental agencies?

JUROR:  No.

MR. WHITE:  Okay. Do you have any particular fascination with TV shows about, you know, CSI or forensic shows or anything like that?

JUROR: No, I like House.

MR. WHITE: House is a medical show –

JUROR: *Oh, it is* –

MR. WHITE: Is it? I don't know, I don't watch TV –

JUROR: It is –

THE COURT: Ms. Chalmers knows.

MR. WHITE: Ms. Chalmers knows but I don't mean to offend her because I know how she talked about that show. It's the guy with the limp?

JUROR: I met him, he's cute.

THE COURT: Does he shave off the set?

JUROR: He does have an accent.

MR. WHITE: Is there any reason why you think you couldn't be a fair and impartial juror in this case?

JUROR: No.

MR. WHITE: Is there any problem with the timing that's going to be involved, that we may be here next week too?

JUROR: No.

MR. WHITE: Okay. Thank you.

THE COURT: Thank you. Ms. Pope-Starnes.

MS. POPE-STARNES: None for cause, Your Honor.

THE COURT: Mr. White

MR. WHITE: None for cause.

THE COURT: Thank you – and to the defense I believe – or, no, nope –

COURT REPORTER: It's to the People.

THE COURT: The People, thank you Barb.

MS. POPE-STARNES: May I have just a moment?

THE COURT: Yes.

MS. POPE-STARNES: Your Honor, the People would thank and excuse juror in seat number four, Mr. Walker.

THE COURT: Mr. Walker, thank you very much, long-winded and quick exit. If you'd just report to the jury office, sir. Thank you so much. Okay, Jeff.

THE CLERK: The court calls juror number 42, Heather Carr.

THE COURT: Hi Ms.Carr.

JUROR: Hi.

THE COURT: As you're approaching, the same questions to you, were you able to see and hear everything okay?

JUROR: Yes.

THE COURT: All right. Anything stand out or pertain to you in particular?

JUROR: There were a few things.

THE COURT: Okay.

JUROR: I am married and I have three daughters, one is stepdaughter who is six and I have two that are under the age of two.

THE COURT: Okay.

JUROR: I graduated from University of Michigan, I went to the College of Engineering and after graduation I worked with the

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

university hospital doing research for probably about three or four

months through the V.A. hospital there in Ann Arbor.

THE COURT: None of the names rung a bell with you?

JUROR: None of the names were familiar, no.

THE COURT: Okay.

JUROR: The length of the trial is a problem for me because I

am home with my girls now and I have no one to watch them.

THE COURT: Who is watching them right now?

JUROR: My mom took a day off of work to do it.

THE COURT: Okay. It's tough, there isn't anybody here, I

know the gentleman there is self-employed and so forth –

JUROR: I understand.

THE COURT: Yes, okay. Anything else?

JUROR: I have a cousin who is a police officer and I have a

friend who is a nurse.

THE COURT: Okay.

JUROR: And a stepsister that's a nurse.

THE COURT: Okay. Anything that you've shared or not

shared that would in any way prevent you from being fair to these

folks?

JUROR: No, I think I could be fair.

THE COURT: Okay. All right. And you'll accept the law as I

give it to you and apply it to this case?

JUROR: Yes.

THE COURT: And I don't want to continue to bring it up but let's say you are chosen to serve, it will be difficult to make arrangements for the daughters and so forth, just make sure you wouldn't be preoccupied, you'd make arrangements and that would be that?

JUROR: I think I would just – you know, I would find somebody to watch them. It's probably, you know, like everybody else, it will be an inconvenience but I don't see why I can't.

THE COURT: Thank you so much. Ms. Pope-Starnes.

MS. POPE-STARNES: Thank you Your Honor.

Is it Miss or Mrs. Carr?

JUROR: Mrs.

MS. POPE-STARNES: Is your husband employed?

JUROR: Yes, he's an engineer with Cheberger (phonetic) that's an automotive supplier.

MS. POPE-STARNES: Okay. What type of engineering degree did you receive?

JUROR: Mechanical.

MS. POPE-STARNES: And what year did you receive that degree?

JUROR: 2003.

MS. POPE-STARNES: And you said that you did work with the V.A. Hospital?

JUROR: Correct.

MS. POPE-STARNES:   The V.A. Hospital is affiliated with the University of Michigan Hospital?

JUROR:  Yes.

MS. POPE-STARNES:  Specifically what type of work did you do?

JUROR:  I was working with a team of surgeons on – it was an abdominal wall implant research so I was doing more of the mechanical side of that and helping them develop it.

MS. POPE-STARNES:  And these were a group of what type of surgeons?

JUROR:  The lead surgeon was a plastic surgeon and the other surgeons were all residents so –

MS. POPE-STARNES:  So during the course of your work you did not work with neurosurgeons?

JUROR:  No, I did not.

MS. POPE-STARNES:  Okay. Or neurologists?

JUROR:  No.

MS. POPE-STARNES:  Okay. Did you work with doctors that specialized in pediatrics at all?

JUROR:  No.

MS. POPE-STARNES:  During the course of your studies at U of M, were you involved in any studies having to do with abusive head trauma or Shaken Baby Syndrome?

JUROR:  No.

MS. POPE-STARNES:  I believe you said that you have a

friend or relative that's a police officer?

JUROR:  Yes, my cousin.

MS. POPE-STARNES:  Where is that?

JUROR:  He works in Troy.

MS. POPE-STARNES:  He's a Troy police officer?

JUROR:  Yes, he works in – I don't think he's out on the street

though, I don't know exactly what he does.

MS. POPE-STARNES:  Okay. Do you talk to him about his

work?

JUROR:  Nothing more then I know that he works a lot.

MS. POPE-STARNES:  And you said you had I believe a

friend and relative each that work as a nurse?

JUROR:  Correct.

MS. POPE-STARNES:  And do you know where they work as

nurses?

JUROR:  One works at Grand Valley Hospital and the other

works in a nursing home.

MS. POPE-STARNES:  And do you talk to them at all about

their work?

JUROR:  A little bit but not – nothing that would make me

unfair or impartial.

MS. POPE-STARNES:  Okay. Thank you very much.

THE COURT:  Mr. White.

MR. WHITE:  How old are your girls?

JUROR:  My youngest daughter is five and half months and the middle daughter is just about two, she'll be two in a few months.

MR. WHITE:  And I think you said you had a stepson also?

JUROR:  Stepdaughter.

MR. WHITE:  Stepdaughter, I'm sorry, I heard –

JUROR:  And she is – she's actually eight, I think I said the wrong age for her.

MR. WHITE:  Okay. And knowing that this trial could go into next week, in fact there's little doubt that it will not, you're going to be all right with that, somehow we're going to find some way to take care of your family?

JUROR:  Well, I'll do what I can. I have family and friends that could possibly take care of them but I think it will be a juggling act and it will be a matter of calling and calling until I can find somebody who can help.

MR. WHITE:  Thank you.

THE COURT:  Ms. Pope-Starnes, cause?

MS. POPE-STARNES:  None for cause, Your Honor.

THE COURT:  Mr. White?

MR. WHITE:  Pass for cause.

THE COURT:  And now to Mr. White.

MR. WHITE:  It's my seventh and I thank and excuse Mrs. Carr.

THE COURT:  Thank you Ms. Carr, report to the jury room.

THE CLERK:  Court calls juror number 13, Linda Maxson.

THE COURT: Afternoon Ms. Maxson.

JUROR: Good afternoon.

THE COURT: As you're working your way down, able to see and hear everything okay?

JUROR: Yes.

THE COURT: All right. Again, I apologize for – I wish I could come up with some new line to say but anything stand out or pertain to you in particular?

JUROR: Yes.

THE COURT: Okay.

JUROR: I'm self-employed, I'm a housekeeper and my husband is retired my daughters were in a car accident and –

THE COURT: Sorry –

JUROR: - with a drunk driver, one was seriously hurt and I see the affects of it today and that happened nineteen years ago –

THE COURT: Very sorry.

JUROR: And I do have a close friend that's a police officer. I have been on jury duty before.

THE COURT: Serve all the way through?

JUROR: Served all the way – well, it was just one day.

THE COURT: Okay. But through to a verdict?

JUROR: Yes, through to a verdict.

THE COURT: Okay.

JUROR: Just still recovering from a serious illness, I had a staff infection inside my foot and outside so it took six months before I could go back to work so I'm still trying to pay catch up from that.

THE COURT: Of course.

JUROR: Trying to pay off medical bills.

THE COURT: In terms of health situation are you – you look fine, are you doing okay now?

JUROR: My foot is just numb, don't know if it will ever return because of the extensive damage that was done.

THE COURT: I'm sorry about all –

JUROR: So it's a hardship between the illness and, you know, the job I can't return to because they have so many stairs and I can't do stairs real well.

THE COURT: Okay. Recognizing all of the background and so forth, inconvenience certainly understood especially coming off of the illness and being self-employed and so forth, Mr. James I think can relate to that as well; nevertheless, in terms of fairness and impartiality, can you be fair to these folks, give them a fair shake, both the prosecutor and the defense?

JUROR: I don't know if I could be to him because I believe – my kids are my life and –

THE COURT: Just let me preface because I'm going to give you the full floor. In fairness I don't think it's been shared to all of you though its kind of in our common parlance in society a person accused of a crime – no, I think I did read this, he is presumed to be

innocent; as he sits here right now he is innocent and I instruct you. So let me first start, would you accept the law as I give it to you, even if you personally disagree with it? And I'm kind of sharing that with everybody?

JUROR: Yeah.

THE COURT: Which then lends itself to the next question, that means one of the instructions is he's innocent –

JUROR: Right –

THE COURT: - as we sit here right now and he is automatically afforded that presumption of innocence so you've got to carry that with you. So recognizing that instruction and that commitment to apply the law as I give it to you can you sit here and be fair?

JUROR: Can.

THE COURT: Okay. Appreciate that and again I don't mean to put words in your mouth whatsoever but I just – we need to look at the depth and the meaning behind all of our words and so forth so – alright, thank you.

Ms. Pope-Starnes

MS. POPE-STARNES: Ms. Maxson, the incident involving your daughter, was the drunk driver prosecuted?

JUROR: We kind of settled out of court and he ended up in a nursing home, he was an eighty-five year old man.

MS. POPE-STARNES: So you settled out of court in a civil case or a criminal case?

JUROR: Civil.

MS. POPE-STARNES: So you didn't seek a criminal prosecution?

JUROR: No, I thought that him ending up in a nursing home, you know, what more could you do to him, he destroyed his life also.

MS. POPE-STARNES: So you were satisfied with the way the judicial system worked for you at least at the time?

JUROR: At the time but not as I see her now, no, she's suffered too much.

MS. POPE-STARNES: She has a permanent injury?

JUROR: Yes.

MS. POPE-STARNES: Your husband, what type of work does he do?

JUROR: He's retired from General Motors.

MS. POPE-STARNES: What did he do for General Motors?

JUROR: He was a mechanic.

MS. POPE-STARNES: Do you have two daughters?

JUROR: Two daughters, four grandchildren.

MS. POPE-STARNES: And how old are your grandchildren?

JUROR: The oldest is seventeen and the youngest is nine.

MS. POPE-STARNES: And do you help sometimes in the care of your grandchildren?

JUROR: Yes, all the time. I pick them up from school, take them to school, they're at my house on the weekends, so yes, I'm very much involved in their lives.

MS. POPE-STARNES: Okay. You told the judge that you have been involved in jury duty before and the case did go to the jury, was that a civil or a criminal case?

JUROR: It was fast so - it would be criminal –

MS. POPE-STARNES: Did it come to this courthouse?

JUROR: Yes.

MS. POPE-STARNES: And you also said that you know a police officer?

JUROR: Yes, my neighbor.

MS. POPE-STARNES: Is that someone with the South Lyon Police Department?

JUROR: No, he was retired from Waterford.

MS. POPE-STARNES: And do you recall his name?

JUROR: Mike Davis.

MS. POPE-STARNES: Okay. And your – the fact that you have Sergeant Davis as a neighbor, is there anything about that that you think would make you unable to be fair and impartial in this case?

JUROR: No, just the stories that they used to tell, things that they used to go on that they done that I didn't think was right.

MS. POPE-STARNES: That –

JUROR: That the officers were doing it I thought was wrong.

MS. POPE-STARNES: Okay. But I this particular case you don't know any of the officers that are involved in this case?

JUROR: No.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

MS. POPE-STARNES: And do you think that there's anything about the stories that Mike would tell you from the Waterford Police Department that would affect your ability to be fair and impartial in this case?

JUROR: Yeah.

MS. POPE-STARNES: What's that?

JUROR: Well, there was some instances of abuse on the officers part against the people that they had arrested.

MS. POPE-STARNES: And you think that would make you unable to be fair and impartial in this case?

JUROR: No, no, I don't think so.

THE COURT: It kind of goes back to the same thing –

JUROR: Yeah –

THE COURT: - apply the law as I give it to you and make your judgment on the evidence from the witness stand and the exhibits.

JUROR: Right.

THE COURT: Do you commit to that?

JUROR: Yes.

MS. POPE-STARNES: Thank you ma'am. I'm through.

THE COURT: Mr. White

MR. WHITE: Ms. Maxson, the staff that you had was it MRSA –

JUROR: No –

MR. WHITE: Not the resistant staphylococcus –

JUROR:  I can't remember what it was, I just know that there was, you know, some traces of it and they did get it all but I was on IV's for nine weeks.

MR. WHITE:  And you got way behind in your work, still not caught up –

JUROR:  No –

MR. WHITE:  And knowing that this is going to go into next weeks, that's going to be problematic for you?

JUROR:  Yeah, it will be financially hard on me.

MR. WHITE:  You said your neighbor is Mike Davis?

JUROR:  He's retired, he moved recently.

MR. WHITE:  And you found offensive some of the stories he would tell you about abuse perpetrated by Waterford Police?

JUROR:  Yes.

MR. WHITE:  Would he tell you stories about being dishonest on the witness stand?

JUROR:  No.

MR. WHITE:  Manufacturing evidence?

JUROR:  No.

MR. WHITE:  Notwithstanding the comments by Mr. Davis are you willing to sit and listen to the police officers in this case and judge them based upon what you hear?

JUROR:  Yes.

MR. WHITE:  And the situation with your daughter, ongoing pain that you've lived with now for twenty years?

JUROR: Yes.

MR. WHITE: And it's impacted your family dramatically, is that a fair statement?

JUROR: Yes.

MR. WHITE: And there is no end in sight?

JUROR: No.

MR. WHITE: And your children are your life?

JUROR: Yes, they are.

MR. WHITE: And I wouldn't doubt that anyone who's ever had children wouldn't feel the same way.

JUROR: Right.

MR. WHITE: Is there any reason why as we sit here that Mr. McBurney doesn't feel the same way?

JUROR: No.

MR. WHITE: The fact that he's accused, does that make a difference to you? Does that mean that he must be guilty?

JUROR: No.

MR. WHITE: Can you listen to him or listen to the evidence presented on his behalf and give it fair consideration?

JUROR: Yeah.

MR. WHITE: Do you have any particular fancy with TV shows involving medical issues or legal issues?

JUROR: I like mysteries and I like House, I have to agree, and I like ER.

MR. WHITE: Okay. Thank you.

THE COURT: Ms. Pope-Starnes.

MS. POPE-STARNES: None for cause, Your Honor

MR. WHITE: None for cause.

THE COURT: And now to the People.

MS. POPE-STARNES: Your Honor, the People would thank and excuse juror in seat number one, Ms. McKay.

THE COURT: Ms. McKay, thank you so much, ma'am. You can go back to the jury office.

THE CLERK: The court calls –

THE COURT: You know what, before we do, counsel approach for a second.

(Whereupon a brief discussion was had off the record)

THE COURT: Jeff, will you call another name, please.

THE CLERK: Court calls juror number 171, Zachary Batchelor.

THE COURT: Mr. Batchelor, good afternoon.

JUROR: How you doing sir?

THE COURT: All right. Thank you. One second as you get situated there. We've seen you all day long, were you able to see and hear everything okay?

JUROR: Everything good.

THE COURT: And you were the one I think that raised your hand that you recognized one of the names when they were called off, is that right?

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

JUROR: Yes, correct.

THE COURT: Who was that?

JUROR: That was Dr. Dragovich.

THE COURT: Okay. All right. Know him personally or –

JUROR: No, my father is a police officer in Pontiac, he currently obtained a job over there at the M.E.'s office -

THE COURT: Oh, okay –

JUROR: - so that's how I know the name.

THE COURT: Anything about that indirect familiarity that would prevent you from being fair and impartial here?

JUROR: No.

THE COURT: Okay. Anything else stand out or pertain to you?

JUROR: I come from a background in law enforcement and I currently am a police officer in Hamtramck, doing that about six months. My father is retired out of the city of Pontiac as sergeant, my grandfather retired out of the city of Pontiac, he was a detective in the 80's; currently, at the current time I am on probation through the department and I cannot take any time off, I'm on midnights right now so coming from midnights to here and staying here all day, getting three hours sleep and going back to work –

THE COURT: That's perplexing that Hamtramck that they would –

JUROR: Yeah, they don't – it's not in our contract.

THE COURT: Anyways, okay.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

JUROR: So this Thursday also I have a subpoena to appear on an exam on an OUIL 3rd.

THE COURT: That where, in Wayne County?

JUROR: No, here – it's at 8:00 a.m.

THE COURT: The sleep issue, really, that's kind of got me miffed, you'd think that they would have arrangements, especially law enforcement when you're dealing with testifying all the time, but – I don't know, maybe – we'll see what happens if I've got to put in a call or something and I'll see what we can do but. And the preliminary exam issue, I'm sure we can work that out too.

Is there anything else that stands out or pertains to you?

JUROR: No, other – I'll give background, I obtained a bachelor's degree from Ferris State University Criminal Justice law enforcement emphasis; one brother goes to Michigan State University, he's a pre-med, twenty years old, he's a junior. My mother and grandmother worked at Oakland County Court as a clerk.

THE COURT: Down in the clerks office?

JUROR: At 52nd.

THE COURT: Oh, district court, okay.

JUROR: Independence Township.

THE COURT: Okay.

JUROR: I think that covers it.

THE COURT: Anything about those relationships or affiliations with schools and so forth that would impact on this case?

JUROR: I don't think so.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

221

THE COURT: All right. Do you commit to follow the law as I give it to you, even if your training and schooling has taught you otherwise, you'd nevertheless yield to O'Brien even if you think I'm off my rocker and so forth?

JUROR: Yes.

THE COURT: And apply the law to the evidence in the case?

JUROR: Yes, sir.

THE COURT: Thank you sir. Ms. Pope-Starnes.

MS. POPE-STARNES: No questions.

THE COURT: Mr. White.

MR. WHITE: How long have you been a police officer?

JUROR: Six months, just about six months.

MR. WHITE: And do you think you're going to be able to do it, like you said, eleven to seven?

JUROR: Correct.

MR. WHITE: Come in here 8:30 to 4:30, 5:00?

JUROR: If I can't obtain the time off, it will be very hard.

MR. WHITE: It would be a challenge but you're young –

THE COURT: He's been throwing this age card out all day long.

MR. WHITE: So you've got a solid police background with father, grandfather and you said your mom and grand mom work for Waterford – excuse me Clarkston court in the criminal or civil division?

JUROR: My mother does something with the accounting there and my grandmother is in the civil I believe.

MR. WHITE: What's her first name?

JUROR: Barbara Bentley and Susan -

MR. WHITE: Okay. Now you know that police officers will be testifying in this case?

JUROR: Correct.

MR. WHITE: Your brother is in a different department, do you think you're going to be able to judge their credibility fairly?

JUROR: I would keep it as fair as I possibly could, take it in context from what was said.

MR. WHITE: Okay.

JUROR: To the extent of what the question was.

MR. WHITE: Well, do you think police officers can be something less than truthful?

JUROR: At times.

MR. WHITE: Are you going to be able to hold them to a truth standard?

JUROR: Yes.

MR. WHITE: Doctors the same way or do you think doctors automatically are accurate in their statements or diagnoses or prognoses?

JUROR: With all their experience and schooling and their testimony –

MR. WHITE: And I didn't hear, do you have any kids?

223

JUROR: No, I do not, I am single.

MR. WHITE: The nature of these charges, are they bothersome to you?

JUROR: No, sir.

MR. WHITE: Have you had to testify in court yet?

JUROR: I have not – just in traffic court, a couple cases I have been on have been pled out.

MR. WHITE: Thank you.

THE COURT: Anything from the People?

MS. POPE-STARNES: None for cause Your Honor.

THE COURT: Mr. White?

MR. WHITE: None for cause, Your Honor.

THE COURT: And to the People – I quit –

MR. WHITE: It would be to me and this is my eighth.

THE COURT: - thank you.

MR. WHITE: So I would thank and excuse Officer Batchelor.

THE COURT: Thank you, you're all set. Get some sleep. Maybe I should get some sleep. And if you'd just report to the jury office, okay, sir.

We'll take a break I think some people need to use the potty and so forth and we'll – Jeff, can you just escort them back, we have the two jury rooms, with the two groupings if you would and please, obviously, don't talk about the case – we don't have anything to talk about but talk about any of the circumstances.

Do the deputies need to take a breather?

(Prospective jurors excused)

MR. WHITE: Your Honor, the prosecution's first witness, Heather McBurney, my client's wife is waiting in the hall, it looks like we're not going to get to testimony today, could I go out and ask her, with the prosecutor's permission if she'd like to leave?

MS. POPE-STARNES: I'll go out with him.

THE COURT: All right. Why don't you do that. And when you do that, when you guys take care of your other business if you have to use the bathroom or whatever, sneak back in chambers and let me talk to you real briefly.

MS. POPE-STARNES: And Your Honor may Detective Sederlund be excused? As I had mentioned he has a child care issue today that he needs to leave early for.

THE COURT: I don't think there's any problem.

MR. WHITE: No objection –

THE COURT: Deputies, why don't you take a breather and come on back and five or ten minutes, thank you very much.

(Whereupon a pause was

had in these proceedings)

THE CLERK: The court recalls People v McBurney, case number 07-214651 FC.

THE COURT: We left off removing – is it Bachelor?

MS. POPE-STARNES: Seat number one.

THE COURT: Okay.

MS. POPE-STARNES: We have not refilled that seat yet.

225

THE COURT: Okay. And we're back to the People's for preempt?

MS. POPE-STARNES: That's correct.

THE COURT: Okay.

(Prospective jurors returned)

THE COURT: Good afternoon everyone, thank you. You may all be seated. The record reflects that the jurors are back in the courtroom, case has been called, counsel's appearances have been noted and we left off excusing the gentleman in seat number one and Jeff, can we have another name.

THE CLERK: Court calls juror number 181, Mark Melletat.

THE COURT: Afternoon to you, sir.

JUROR: Afternoon, Your Honor.

THE COURT: You've been very cooperative and patient along with everybody throughout this whole process, been able to see and hear everything okay?

JUROR: Absolutely, yes, sir.

THE COURT: Okay. Anything stand out or pertain to you in particular?

JUROR: Well, let's see, I can go through them –

THE COURT: Okay.

JUROR: I'm single, I have no children, my position is director of marketing for an automotive supply company which does require me to be involved with legislators and legal staff and also certain law enforcement agencies, in fact I'm scheduled to provide a brief on

Capital Hill next Monday for congressional members and their staff

Aside from that, I have no real affiliation with – well, I do associate

with University of Michigan Transportation Research Institute but

that's the only affiliation, I've done some work with Children's

Hospital and I graduated from Wayne State University and that's sort

of a brief summary.

THE COURT: Okay. I appreciate it. Anything that you've

shared or not shared that would affect your ability to be fair and

impartial in this case?

JUROR: No, no.

THE COURT: And can you and do you commit to be fair to

both sides here to apply the law as I give it to you?

JUROR: Yes.

THE COURT: In the event that you are selected what

arrangements can you make or let me preface that, what arrangements

can be made about next Monday if anything?

JUROR: Well, obviously, anything is possible so I would have

to find someone to attend in my absence.

THE COURT: Let me just extend my appreciation for that,

that's a tough thing to say, I appreciate that and I know it's going to be

difficult but I appreciate that. We'll see what happens.

JUROR: Sure.

THE COURT: Ms. Pope-Starnes.

MS. POPE-STARNES: Do you have a college degree, sir?

JUROR: Yes, I do.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

MS. POPE-STARNES: And what is your degree in?

JUROR: Business.

MS. POPE-STARNES: And this brief that you say that you have to appear on in Washington on Monday, are you a subpoenaed witness?

JUROR: No, no, we're involved in promoting through lobbyists and so forth the advancing safety technology for commercial vehicles so I really – it's designed to provide background and technical information for stability control systems. There's a senate bill right now that's being proposed so I'm there to provide information.

MS. POPE-STARNES: The work that you do involving – I'm going to simplify this, safety in vehicles, are you involved in doing studies?

JUROR: We do get involved in studies, yes.

MS. POPE-STARNES: And have you been involved in vehicle crash safety studies?

JUROR: Yes.

MS. POPE-STARNES: Okay. Have you been involved in vehicle crash safety studies involving infants?

JUROR: No.

MS. POPE-STARNES: Does your company do that type of work or no?

JUROR: Well, the products that we provide are for commercial vehicles so they're semi and tractor trailers so it wouldn't – it does involve fatalities but not particularly regarding infants.

MS. POPE-STARNES: Okay. You also told us that you have, through the course of your work that you have contact with some law enforcement agencies?

JUROR: I do work very closely with the Department of Transportation, Automobile Carrier Safety Administration, and then federal and commercial safety industry.

MS. POPE-STARNES: Okay. But no local law enforcement agencies?

JUROR: No local law enforcement, no.

MS. POPE-STARNES: And you've also said that you've also been involved with the University of Michigan Transportation Research Institute?

JUROR: They have a transportation research institute and we do involve ourselves with them in studies, again, for the safety of vehicles.

MS. POPE-STARNES: Okay. But again, commercial vehicles?

JUROR: Commercial vehicles, yes.

MS. POPE-STARNES: And in the course of that work do you come in contact with any of the doctors at Mott Children's Hospital?

JUROR: No, I don't.

MS. POPE-STARNES: So the doctors that we've talked about today as witnesses, are you familiar with any of them?

JUROR: No, I'm not.

MS. POPE-STARNES: Are you familiar with the name Dr. Uscinski?

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

JUROR:  No, I am not.

MS. POPE-STARNES: Have you ever, I know that you said you don't have any children, sir, have you ever been involved in the care of young children

JUROR: No, I have not.

MS. POPE-STARNES: Do you have any younger siblings?

JUROR:  I have a brother that's four years younger than I am.

MS. POPE-STARNES: Ever babysat?

JUROR:  Well, we have a niece but we live quite a ways apart so they do come to visit on occasion.

MS. POPE-STARNES: Okay. Thank you very much. Thank you Your Honor.

THE COURT:  Mr. White.

MR. WHITE:  Mr. Melletat, Ms. Pope-Starnes may have asked this, your involvement with law enforcement is not involvement in prosecution such as this?

JUROR:  Not in prosecution, no.

MR. WHITE:  More vehicular safety concerns?

JUROR:  Working with law enforcement in the regulation of particular safety requirements, inspections and so forth.

MR. WHITE:  Okay. The – you have a Bachelors from Wayne State?

JUROR:  Uh-huh (affirmatively)

MR. WHITE:  And what year did you get that?

JUROR:  '83.

230

MR. WHITE: Okay. Any close friends or relatives that work as police officers?

JUROR: Not – well, just in the court systems but not police officers.

MR. WHITE: What friends and relatives do you have in the court systems?

JUROR: Well, Sandy Scott was a neighbor of mine, she was a prosecuting attorney here in Oakland County court systems.

MR. WHITE: Do you know if she works at the Oakland County Prosecutor's Office?

JUROR: I haven't seen her for a couple years, she was a neighbor of mine but I haven't seen her in a few years.

MR. WHITE: Medical professionals, any close friends or relatives?

JUROR: Well, I've got some doctors that are friends, yes, orthopedic, Dr. Cohen.

MR. WHITE: Pediatric neuro's?

JUROR: No.

MR. WHITE: And anybody close friend or relative that works in city government or agency, specifically FIA or Child Protective Services or Department of Human Services, anything like that?

JUROR: No.

MR. WHITE: Any investigation of child abuse or child neglect?

JUROR: No.

231

MR. WHITE: Knowing the charges in this case, are you able to sit as a fair and impartial juror?

JUROR: Yes.

MR. WHITE: Knowing that you'll hear evidence of a former child abuse investigation, are you willing to be able to say that I can listen to this case on its facts and not what happened in the past?

JUROR: Yes.

MR. WHITE: Okay. Knowing your very busy schedule and what is entailed in this case in all probability, would you be able to arrange your schedule or –

JUROR: It's always difficult but yes, I would have to –

MR. WHITE: As the rest of us have to do?

JUROR: Yes, exactly.

MR. WHITE: Thank you.

THE COURT: Ms. Pope-Starnes.

MS. POPE-STARNES: Pass for cause, Your Honor.

THE COURT: Mr. White

MR. WHITE: Pass for cause.

THE COURT: Ms. Pope-Starnes.

MS. POPE-STARNES: People would thank and excuse Ms. Maxson in seat four.

THE COURT: Ms. Maxson, thank you very much, ma'am. You still have to return to the jury office, okay?

JUROR: Okay.

THE CLERK: Court calls juror number 141, Joel Sunman.

232

THE COURT: Good afternoon Mr. Sunman.

JUROR: Afternoon.

THE COURT: As you're approaching we'll try to move it along just a little bit because of the time; able to see and hear everything okay?

JUROR: Yes.

THE COURT: Anything stand out or pertain to you?

JUROR: Yes, two things. Between the ages of eleven and seventeen I had four hospital stays at the University of Michigan Hospital and under the care of many of the doctors there.

THE COURT: Did you recognize any of the names?

JUROR: None of the names, no.

THE COURT: Okay.

JUROR: The only other thing I should probably note is before I was born my mother and father had a daughter and she died at the age of six months while under the care of my mother, so –

THE COURT: Okay. Thank you I'm sorry about that situation. The medical involvement, my wife did happen to be at U of M early on, she had open-heart surgery and is in good health so I'm sorry about that situation. You look fine, you feeling okay?

JUROR: It's been very good, yes.

THE COURT: All right. Anything that you shared or even that you haven't shared that would impact your ability to be fair and impartial in this case?

JUROR: No.

THE COURT: And do you commit to be fair to both parties in this case?

JUROR: Yes, sir.

THE COURT: And apply the law as I give it to you?

JUROR: Yes.

THE COURT: Thank you very much, sir. Ms. Pope-Starnes.

MS. POPE-STARNES: Mr. Sunman how are you employed, sir?

JUROR: I'm a developer in Troy.

MS. POPE-STARNES: Okay. Are you married?

JUROR: No.

MS. POPE-STARNES: Do you have any children?

JUROR: I do not.

MS. POPE-STARNES: Now as I understand from the information that you gave the judge you were at Mott's Children Hospital during those years?

JUROR: Yes.

MS. POPE-STARNES: And you said that you don't recognize the names of any of the doctors?

JUROR: They didn't sound familiar to me.

MS. POPE-STARNES: I want to go through them specifically with you just to make sure. Dr. Sikavitsas is an emergency room physician, Dr. Dev is the director of the child protection team?

JUROR: No.

MS. POPE-STARNES: Dr. Odetola works in the pediatric intensive care unit?

JUROR: No.

MS. POPE-STARNES: And Dr. Cormac Maher is a neurosurgeon?

JUROR: No.

MS. POPE-STARNES: And do you know, were you involved – did your care involve any of those areas of practice?

JUROR: No, they did not.

MS. POPE-STARNES: Okay. Now I apologize for having to go into this but can you tell us about what happened with your sister?

JUROR: The details, forgive me, the details are a little sketchy, this information just kind of came out a few years ago but my mother was – it was about seven years before I was born, my dad was gone, she was in the house, my mother was watching my sister, she was in the bathtub and I believe she was getting bathwater and she drowned; my mother at the time, and still is – has been diagnosed with several mental disorders, bipolar and schizophrenic, so that may have led to her – I believe she was the cause of my sister's death.

MS. POPE-STARNES: Do you know if there was ever any investigation by law enforcement or protective services?

JUROR: Yes, I believe there was.

MS. POPE-STARNES: And did any type of case from either agency result from that?

JUROR: No.

235

MS. POPE-STARNES: It was ruled an accident?

JUROR: Yes.

MS. POPE-STARNES: Now you've been in the courtroom all day so you're aware of the fact that the case that we're here for today involves allegations that defendant caused serious physical harm to his eleven month old daughter and that she died as a result of the injuries?

JUROR: Yes.

MS. POPE-STARNES: Is there anything about what happened with your sister that you think would make you unable to be fair and impartial in this particular case?

JUROR: No.

MS. POPE-STARNES: You think you could set that aside?

JUROR: Yes.

MS. POPE-STARNES: Thank you very much.

THE COURT: Thank you Ms. Pope-Starnes, Mr. White.

MR. WHITE: Mr. Sunman, again, I don't mean to pry but you were at the University of Michigan Hospital several times?

JUROR: During those years I had many visits.

MR. WHITE: And your care there was to your satisfaction?

JUROR: Yes.

MR. WHITE: Do you think though with hearing the University of Michigan doctors testify in this case, you may be more prone to believe them as opposed to any doctor or any person?

JUROR: No.

236

MR. WHITE: Have you received care from other facilities other than the University of Michigan?

JUROR: No.

MR. WHITE: And if I may ask, how was it that you found out about your sister?

JUROR: My – it was revealed to me in a letter from my aunt.

MR. WHITE: Did that cause you to have mixed feelings about your mother?

JUROR: Yes.

MR. WHITE: The care that you received from your mother?

JUROR: Yes.

MR. WHITE: Thank you.

THE COURT: Ms. Pope-Starnes.

MS. POPE-STARNES: None for cause, Your Honor.

THE COURT: Mr. White.

MR. WHITE: None for cause.

THE COURT: Mr. White.

MR. WHITE: Thank and excuse Mr. Sunman seated in seat four.

THE COURT: Mr. Sunman thank you so much again, sorry about everything, just report to the jury office, okay. Thank you sir.

THE CLERK: Court calls juror number seventeen, Jane Steinger.

JUROR: Steinger.

THE COURT: Steinger, thanks. Afternoon, ma'am.

237

JUROR: Good afternoon.

THE COURT: As you're approaching, just so we move it along again, able to see and hear everything okay?

JUROR: Yes.

THE COURT: All right. Anything stand out or pertain to you in particular?

JUROR: I've got a ten-month-old granddaughter –

THE COURT: Congratulations.

JUROR: Thank you. Recently a friend of mine had temporary custody of her grandchildren and it hasn't been a happy resolution, the mother who – from my friend's account and our observations has custody and is not really competent so – and I don't have friends or family in law enforcement but I do in the medical field and law.

THE COURT: Thank you. Anything about any of that information or anything that you haven't shared that would impact on this case and your ability to be fair and impartial?

JUROR: I think that I started out with a –

COURT REPORTER: I'm sorry –

THE COURT: You have to speak up –

JUROR: I think that – yeah, I've been doing a lot of thinking, I think that I started out mentioning that I had a ten month old –

THE COURT: Sure –

JUROR: That – I would certainly try and be impartial.

238

THE COURT:  And you know what, that's all anyone can ask and I appreciate that, you'd give us your best shot to be fair and impartial?

JUROR:  Yes.

THE COURT:  Okay. Anything else that would possibly impact it?

JUROR:  I don't watch those TV shows.

THE COURT:  Okay.

JUROR:  Except for House – but I don't watch the Law and Order and I had a particular problem with the – what is that called –

THE COURT:  Barney Fife?

JUROR:  - you know, like the CSI – yeah, I have a problem with those.

THE COURT:  Whatever they say on there or where ever you get your information about law, nevertheless, will you commit to accept the law as I give it to you –

JUROR:  Yes –

THE COURT:  - and apply it to the evidence in this case?

JUROR:  Certainly.

THE COURT:  Thank you. Ms. Pope-Starnes.

MS. POPE-STARNES: I note from your jury questionnaire you work in education?

JUROR:  Yes, at Wayne State University.

MS. POPE-STARNES: So you taught college students?

JUROR:  No, I was an administrator.

MS. POPE-STARNES: Oh, okay.

JUROR: I never taught.

MS. POPE-STARNES: Okay. Do you have a degree in

education?

JUROR: Yes, Masters.

MS. POPE-STARNES: And how many children do you have?

JUROR: One daughter, just one.

MS. POPE-STARNES: Are you married?

JUROR: No, divorced.

MS. POPE-STARNES: Divorced and your ex-husband what

field does he work in?

JUROR: Clergy.

MS. POPE-STARNES: Okay. I know that you've told us that

you have a friend right now who is going through something where

they've got custody of their grandchild –

JUROR: Not – no longer, their mother has been awarded

custody.

MS. POPE-STARNES: And you said that the outcome of that

has not really been very good?

JUROR: I think not.

MS. POPE-STARNES: Okay. Is there anything about that that

you think would make you unable to be fair and impartial in this

particular case?

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

JUROR: I think that the judge's rulings were fair based on the evidence provided by the protective services so - but I think there was some negligence but I don't think that the case was as well researched.

MS. POPE-STARNES: Okay. Was that here in Oakland County?

JUROR: Yes.

MS. POPE-STARNES: Okay. It was not before this judge?

JUROR: No.

MS. POPE-STARNES: And I was not the prosecutor on that case, right?

JUROR: I don't know, I –

MS. POPE-STARNES: Well, let me ask you this, was the case physical abuse?

JUROR: No, there was an allegation.

MS. POPE-STARNES: Okay. And you also had told us that you had some friends who were in law?

JUROR: Yes, a professor of criminal law, a very good friend.

MS. POPE-STARNES: And who is that?

JUROR: Alan Saltzman (phonetic) , he's retired from U of D Law School.

MS. POPE-STARNES: And your other friends in law, what type of law do they practice?

JUROR: None, criminal, some malpractice.

MS. POPE-STARNES: Okay. How often to you see Mr.Saltzman?

JUROR: Every other day.

MS. POPE-STARNES: Do you think that you can agree during the course of this case that you won't talk to Mr. Saltzman about this case and that you'll listen to the evidence as presented from the witness chair and the evidence that's allowed and admitted by the court and then when the case goes to deliberation, talk to your fellow jurors about the case?

JUROR: If that's how I would be instructed, to not discuss it I wouldn't.

THE COURT: Assuming that you are, right?

JUROR: Yes. And then I certainly would follow that instruction.

MS. POPE-STARNES: You said you also had friends who are in medicine?

JUROR: Yes.

MS. POPE-STARNES: What type of medicine?

JUROR: Cardiologist, pediatrician.

MS. POPE-STARNES: Where is the pediatrician from?

JUROR: Bloomfield Hills.

MS. POPE-STARNES: Working in a hospital or in a private practice?

JUROR: Private practice.

MS. POPE-STARNES: And do you have conversations with your friends as a pediatrician about cases about abuse or neglect?

JUROR: No, I haven't.

242

MS. POPE-STARNES: Okay. Thank you very much.

THE COURT: Mr. White.

MR. WHITE: The ten month old is your –

JUROR: Granddaughter.

MR. WHITE: Granddaughter?

JUROR: Yes.

MR. WHITE: And does she live – do you get to see her on a regular basis?

JUROR: She's ten minutes from me.

MR. WHITE: So you see her as much as possible?

JUROR: Yes.

MR. WHITE: And that, would it be a fair statement to say that this is your biggest reservation about sitting in a case like this, that you have this precious little granddaughter and these are emotionally charged accusations about the death of an eleven month old; notwithstanding all of the emotion that will be generated in this case, in this courtroom, do you think you can sit and be a fair juror, listen to the evidence?

JUROR: (No verbal response)

MR. WHITE: And there is no moral judgment by saying yes or no, you know, believe me we all have our beliefs, so if you can; if you cannot, it's okay. If you can, then that's okay too.

JUROR: It would be a struggle, I think it would. But I would try.

243

MR. WHITE: And why would it be a struggle if I may be so bold?

JUROR: I think – I mean as we said, as has been said, it would be a struggle to view evidence as everyone would have a struggle with.

MR. WHITE: Everybody.

JUROR: Yes.

MR. WHITE: You're no different than anybody else?

JUROR: Right, everybody. It would be very hard not to project that and to – for me, it's my situation.

MR. WHITE: To emotion or to disregarding the judge's principles such as the presumption of innocence?

JUROR: No, I – the emotional part I think would be very difficult. I wouldn't disregard the –

MR. WHITE: Right and you'd have to be an absolute robot not to feel any emotion in these type of cases; it's going to attack your very core and challenge your very intellect. But you believe though as the judge will tell you, as he has, that Mr. McBurney is presumed innocent; he's innocent as he sits there, is that something that you can believe and intend to and that he has the right not to testify?

JUROR: Oh, absolutely.

MR. WHITE: And he has the right to insist that the prosecution prove him guilty beyond a reasonable doubt?

JUROR: Yes.

244

MR. WHITE: And if they don't, then he is, at the conclusion

of this case, innocent also; do you have any problem with that;

notwithstanding that his daughter has died?

JUROR: No, I don't have any problem with that.

MR. WHITE: Thank you.

THE COURT: Ms. Pope-Starnes?

MS. POPE-STARNES: None for cause, Your Honor.

MR. WHITE: None.

THE COURT: Ms. Pope-Starnes, I'm thinking? Did I do it

again?

MR. WHITE: I think it's over on this side. I think it's –

MS. POPE-STARNES: I'm sorry, it is ours.

MR. WHITE: You got it right for a change.

MS. POPE-STARNES: The People would thank and excuse

the juror in seat number one, Mr. Melletat.

THE COURT: Thank you very much sir. I think they're still

open down there if you'd just return to the jury office, okay.

All right. Jeff.

THE CLERK: The court calls juror number 202, James Platte.

THE COURT: James Platte, is that how you say it, sir?

JUROR: Platte.

THE COURT: Platte, okay, thanks. As you're working your

way down, able to see and hear everything okay, sir?

JUROR: Yes, sir.

THE COURT: All right. Anything stand out or pertain to you in particular?

JUROR: First of all I'm scheduled to be in California for work on Monday.

THE COURT: Is that self-employed?

JUROR: No, it's through my employer.

THE COURT: Same thing with Mr. Melletat who was talking about likewise next Monday; in the event you are chosen, what happens?

JUROR: I'd have to hopefully get my money back from my company for the reservations, tickets, because the guy I work with and myself, we are the only two out here in Michigan and we're both going out there.

THE COURT: Both doing the same kind of thing out there?

JUROR: Yes, we're going out there for training and do some repair work out there at a facility out there.

THE COURT: And this is money that you've paid up front that your company has to reimburse you for?

JUROR: Yes, correct.

THE COURT: Okay. All right. Anything else?

JUROR: Other thing is, I have a cousin that's a practicing attorney in Northville.

THE COURT: Okay. What's his or her name?

JUROR: Melissa Platte.

THE COURT: Okay.

JUROR: And I have police – my second cousin, retired I think from the Washtenaw County Sheriff and his son I believe just became a sheriff there. And my sister is an R.N. in Lansing.

THE COURT: Okay. That pretty much covers it from your perspective?

JUROR: Sure.

THE COURT: No, no, if there's anything else, please.

JUROR: I'm not sure about all the other questions.

THE COURT: Okay.

JUROR: Those were the biggest ones.

THE COURT: Notwithstanding – anything about those relationships that would prevent you from being fair in this case?

JUROR: No.

THE COURT: All right. And other than – well, we've talked about your travel situation. Will you accept the law as I give it to you –

JUROR: Yes.

THE COURT: - even if you disagree with it?

JUROR: Yes.

THE COURT: All right. And apply it only to the evidence in this case?

JUROR: Yes.

THE COURT: Thank you sir. Ms. Pope-Starnes.

MS. POPE-STARNES: Thank you. Mr. Platte I understand – is it Platt or Platte?

JUROR: Platte.

247

MS. POPE-STARNES: I understand from your questionnaire that you live in the South Lyon area?

JUROR: Yes.

MS. POPE-STARNES: Are you familiar with this case at all?

JUROR: It vaguely sounds familiar after I heard both attorneys talking about it, it vaguely sounded familiar, I did not pay a whole lot of attention to it when it happened, it's just one of those things, you know.

MS. POPE-STARNES: And, sir, do you take the South Lyon Herald?

JUROR: No, I do not.

MS. POPE-STARNES: Okay. So you have not read any articles about this case through the South Lyon Herald?

JUROR: No, I have not.

MS. POPE-STARNES: The Milford Times or Northville – can't remember which one of those papers?

JUROR: No.

MS. POPE-STARNES: Okay.

JUROR: I just heard it in newspaper articles on stuff like this.

MS. POPE-STARNES: I understand. What type of work do you do?

JUROR: I'm a repair technician.

MS. POPE-STARNES: In?

248

JUROR: I work for a company that builds acquisition systems for crash test facilities and I repair and maintain their systems and calibrate the systems.

MS. POPE-STARNES: Do you participate in the crash testing?

JUROR: I check to say if they are operating correctly and if not, if they're not operating correctly I will repair them before the test.

MS. POPE-STARNES: So in regards to – but you're not involved in the testing results?

JUROR: No, we're totally separate from that.

MS. POPE-STARNES: Okay. And are you married, sir?

JUROR: Yes, I am.

MS. POPE-STARNES: And does your spouse work outside the home?

JUROR: Yes, she works for Nissan.

MS. POPE-STARNES: And what kind of work does she do for Nissan?

JUROR: She's a spec analyst.

MS. POPE-STARNES: And do you have any children?

JUROR: No, I don't.

MS. POPE-STARNES: Have you ever been involved in the care of children?

JUROR: Niece and nephew.

MS. POPE-STARNES: What ages?

JUROR: They're – well, since they were born but they're nine, my twin nephews are nine and my niece is four.

MS. POPE-STARNES: So you had occasion to care for them when they were under the age of two?

JUROR: Yes.

MS. POPE-STARNES: You told us that you have a relative that works as an attorney in the Northville area?

JUROR: Correct.

MS. POPE-STARNES: Do you know what kind of law they practice?

JUROR: Estate planning.

MS. POPE-STARNES: Do you talk to them about their cases?

JUROR: Generalities, no, just the usual talk, social.

MS. POPE-STARNES: The work that you do, do you come in contact with anyone from the University of Michigan?

JUROR: No.

MS. POPE-STARNES: Thank you very much.

THE COURT: Mr. White

MR. WHITE: Mr. Platte, do you think police officers are always truthful?

JUROR: I'd like to hope so.

MR. WHITE: By the very nature of their position are you going to accept their testimony as being truthful in this case?

THE COURT: Let me make it somewhat easier on you but don't let this detour your answer; I will give you an instruction that police officers are entitled to no more nor less credibility than anybody else?

250

JUROR:  Right.

THE COURT:  And that goes for anybody else.

JUROR:  Right.

THE COURT:  But that's my instruction.  He's asking more of an intuitive type of question.

JUROR:  Do I believe officers can lie as people?

MR. WHITE:  Yes?

JUROR:  Do I believe that they should be more truthful because they're an object of the law, then yes.

MR. WHITE:  Okay.

JUROR:  But do I believe they can lie, yes.

MR. WHITE:  Okay. And not just lie, but be inaccurate?

JUROR:  Inaccurate, yes.

MR. WHITE:  And would that also be true with doctors also?

JUROR:  Yes.

MR. WHITE:  The fact that they may make a diagnosis, a finding, a conclusion doesn't necessarily mean that it is a fact?

JUROR:  Yes, I believe they can – they should be the experts also in the field but do I think they could be inaccurate, yes.

MR. WHITE:  Okay. Have you ever – have you ever felt that you would have a malpractice claim?

JUROR:  No.

MR. WHITE:  Anything subject to doctor's negligence or the standard of care?

JUROR:  No.

MR. WHITE: The fact that this has such emotionally charged accusations, is this going to be a problem for you?

JUROR: No more than anybody else.

MR. WHITE: Okay. You'll be able to – I know that your background is analytical, technical, same as your wife?

JUROR: Yes.

MR. WHITE: And application of those principles in this case would be absolutely perfect, do you think you could do that?

JUROR: I'll try.

MR. WHITE: Is it going to compromise your position with your employment sitting for the next week?

JUROR: I would hope not.

MR. WHITE: Thank you very much.

THE COURT: Ms. Pope-Starnes.

MS. POPE-STARNES: None for cause, Your Honor.

THE COURT: Mr. White?

MR. WHITE: None.

THE COURT: Now to Mr. White for peremptory.

MR. WHITE: We would excuse Ms. Anderson in seat ten.

THE COURT: Ms. Anderson thank you very much, long sit there, appreciate your service. If you'd – I don't know if they're going to be open or not but if you'd just head down that way to the jury office, okay, I think there's still someone there. Thank you ma'am.

THE CLERK: Court calls juror number twenty-four, Wendy Pinter.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

THE COURT: Afternoon – is that right, Pinter?

JUROR: Yes.

THE COURT: Okay. Good afternoon to you. Able to see and hear everything okay?

JUROR: Yes, sir.

THE COURT: All right. Anything stand out or pertain to you please?

JUROR: Well, I am married and I have three children ages eleven, almost ten and six. I am – I own my own business, I am a home nurse, midwife and a birth dula –

THE COURT: A birth what?

JUROR: Dula, I will explain what that is because they're different, I am in charge of taking care of people in their health and well being but as a birth dula I serve as a patient advocate in the hospital setting.

THE COURT: Okay.

JUROR: So I both understand what it is to be in charge and I understand how, you know, how to watch out for mistakes that people might make and advocate for those. I'm on the board of the Michigan Midwife's Association as well. I have two brothers, they're married to two different stepsisters who are Oakland County Sheriff's and I think they both work for Oakland County Jail. I'm trying to remember what else, my husband is happy to be employed still in the automotive industry.

THE COURT: That's the truth, no doubt.

253

JUROR: I'm trying to think what else – my niece graduated from U of M, I wasn't there.

THE COURT: Anything that you've shared so far and anything that you haven't shared that would affect you in this case at all?

JUROR: I don't believe so.

THE COURT: Okay. To the extent that any of us can commit to anything, can you commit to be fair to these folks in this case, accept the law as I give it to you and apply it to the evidence here?

JUROR: Yes.

THE COURT: Ms. Pope-Starnes.

MS. POPE-STARNES: Thank you. Where did you go to college?

JUROR: I went to Liberty University and I've also been going to college here at O.C.C. for things that pertain to my job but being a home risk midwife I was trained in an apprenticeship, I did some work there.

MS. POPE-STARNES: Did you get a degree from Liberty?

JUROR: (No verbal response)

MS. POPE-STARNES: What course of studies did you get?

JUROR: When I was at Liberty I was starting to get my degree in biology but I did not graduate from there.

MS. POPE-STARNES: Okay. And then the classes that you've taken locally, did those all involve being a midwife or –

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

JUROR: No, they've been just in general things that I haven't learned through the apprenticeship process, like learning how to speak Spanish, doing writing, nothing that has really anything to do with what I do –

MS. POPE-STARNES: So it's more along the lines of just kind of a general educational requirements that you might have to get in college?

JUROR: Right, but it's self-directed.

MS. POPE-STARNES: Tell me a little about the internship program or apprentice type I guess you call it, you had to do to become a midwife?

JUROR: I had to follow around a certified midwife for several years, I just opened my own practice and I still have a certified midwife coming with me.

MS. POPE-STARNES: Are you certified as a midwife?

JUROR: I'm claiming to be eligible but I have to have the exam in the fall.

MS. POPE-STARNES: Now in the State of Michigan what do you have to do to become certified?

JUROR: In the state of Michigan midwifery is illegal so it is not even regulated.

MS. POPE-STARNES: So how would you – where would you get certified?

JUROR: Through a national organization called the National Association of Midwifes, in many states its regulated but in Michigan

255

there is no – there's really – the Mid-Michigan Midwife's Association doesn't have the regulations but we pretty much go by the national association and we're working on creating certification in the state but not yet –

MS. POPE-STARNES: So there's no regulations in the State of Michigan right now in regards to that?

JUROR: No.

MS. POPE-STARNES: Now I understand that you talk that you work as a midwife as well as a?

JUROR: Dula (phonetic)

MS. POPE-STARNES: Can you tell us what hospital you've been in where you've assisted women who are giving birth?

JUROR: Well, I've been in most of the time in the southeast Michigan area so over fifteen if you'd like me to try to list them I will.

MS. POPE-STARNES: Well, let me ask you specifically, have you been in Children's Hospital of Michigan?

JUROR: In Children's Hospital, no, but I've worked in the Hutzel.

MS. POPE-STARNES: Okay. Have you been to Mott Children's Hospital?

JUROR: I've never been to Children's Hospital but I have been in –

MS. POPE-STARNES: Okay. Have you been in the section where the adults –

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

JUROR:  - in Mott, yes, I guess you do have to go there for delivery, in Mott.

MS. POPE-STARNES: Okay. How about St. Joe's Ann Arbor?

JUROR:  Yes.

MS. POPE-STARNES: Okay. And how about Providence Hospital?

JUROR:  Yes.

MS. POPE-STARNES: In Southfield?

JUROR:  Yes.

MS. POPE-STARNES: Okay. But in each of those areas you specifically were in was Labor and Delivery?

JUROR:  Yes.

MS. POPE-STARNES: :  Have you had contact with the emergency  room physicians in any of those hospitals?

JUROR:  No.

MS. POPE-STARNES:  Okay. How about pediatric intensive care unit in any of those hospitals?

JUROR:  No.

MS. POPE-STARNES: You're hesitating, are you thinking about –

JUROR:  Yes, I'm trying to remember –

MS. POPE-STARNES: - the neonatal unit?

JUROR:  - usually when I go to Hutzel it is for a problem but sadly none of the babies that have been delivered there have needed it but they were planning on going into the neonatal if there were

problems, so I would say neonatal, yes, I guess that I have spent some
time in Hutzel.

MS. POPE-STARNES: In regards to the neonatal unit?

JUROR: Yes.

MS. POPE-STARNES: But not the pediatric intensive care unit
of Children's?

JUROR: No.

MS. POPE-STARNES: The doctors that we've talked about in
this case, do you know any of them?

JUROR: No. I think perhaps I've done – well, there was a
doctor that sounded familiar that could have been one of my class
doctors, I'm trying to remember the name, Fleming I think it was, but I
wouldn't know him if I saw him on the street.

MS. POPE-STARNES: As I understand, Dr. Fleming works
with the pediatric intensive care unit of the University of Michigan
Hospital?

JUROR: Yes, this was in obstetrics so I believe they could be
the same.

MS. POPE-STARNES: Okay. And you said you have three
children?

JUROR: Yes.

MS. POPE-STARNES: What are their ages?

JUROR: My oldest is eleven, I have a middle child that is
almost ten and then my daughter is six.

FORM CSR · LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

MS. POPE-STARNES: When you have these cases where you go to the hospital to help women who are giving birth, if there's an emergent situation with the children you step back and that's handled by a physician?

JUROR: Yes.

MS. POPE-STARNES: May I have just one moment, Your Honor?

THE COURT: You may.

MS. POPE-STARNES: Thank you.

THE COURT: Mr. White

MR. WHITE: Knowing the accusations in this case, are you going to be able to sort through them and decide the case on the facts?

JUROR: Absolutely.

MR. WHITE: Any problems, specific problems, with your children growing up, sleeping disorders or things of that nature?

JUROR: My youngest did not sleep or eat well, so yes she didn't take a nap for a time and was challenged.

MR. WHITE: So you were challenged?

JUROR: I would say so.

MR. WHITE: Thank you very much, nothing further, Your Honor.

THE COURT: Ms. Pope-Starnes, cause?

MS. POPE-STARNES: None for cause, Your Honor.

THE COURT: Mr. White?

MR. WHITE: None, Your Honor.

259

THE COURT: And Ms. Pope-Starnes?

MS. POPE-STARNES: May I have just one moment, Your Honor.

THE COURT: You may.

MS. POPE-STARNES: People would thank and excuse juror in seat number four, Ms. Steinger.

THE COURT: Thank you ma'am, very much.

JUROR: Thank you.

THE COURT: You didn't leave anything in the jury office did you by chance?

JUROR: No.

THE COURT: Did anybody leave – okay, I think they're going to be closed, is that right? Oh, they close at five, I would ask you to report back there first for final instructions, okay.

JUROR: Court calls juror number 159, Fred Powers.

THE COURT: Mr. Powers, good afternoon.

JUROR: Good afternoon, Your Honor.

THE COURT: And as you're approaching, able to see and hear everything okay?

JUROR: Yes.

THE COURT: Lay it on me, anything in particular pertain to you?

JUROR: Okay. I'm married, my wife works two days a week at two Catholic parishes as a secretary, I spent thirty-four years – and now the last seven years at a home improvement store and now I'm

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.  800-626-6313

unemployed looking for work. I've got four children, ages thirty, thirty-three, thirty-five and thirty-nine, three grandchildren, three, three and five.

THE COURT: Better than my dad, he doesn't know how many kids he has let alone grandchildren.

JUROR: In 1970 I was in the service for a short time, during that time I was trained as a military policeman but never used that occupation, I got out a short time after, my dad was ill.

THE COURT: Okay.

JUROR: That's pretty much it.

THE COURT: I appreciate that, that's remarkable, that's great you covered all of that.

Anything that you've shared or anything that you haven't shared that would pertain to you in this case?

JUROR: No.

THE COURT: Okay. Commit – can you and do you commit to being fair and impartial to both sides in this case?

JUROR: Yes.

THE COURT: And apply the law as I give it to you?

JUROR: Yes.

THE COURT: Thank you very much, sir. Ms. Pope-Starnes.

MS. POPE-STARNES: I have no questions Your Honor.

THE COURT: Mr. White.

MR. WHITE: Do you have friends that are police officers?

JUROR: What's that?

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

MR. WHITE: Any friends that are police officers?

JUROR: I had one over at work we never discussed anything, he worked for the Wayne County Sheriff, he was also on the SWAT team, all I know is he was on there and that was it.

MR. WHITE: Just knew he was an officer, never talked about anything –

JUROR: No stories.

MR. WHITE: Any friends or relatives in the medical profession?

JUROR: Yes, I have a cousin who is a male nurse at the Wayne County Jail in downtown Detroit.

MR. WHITE: Okay.

JUROR: He says nothing when we see each other at funerals and weddings.

MR. WHITE: Any problem in deciding this case on its facts?

JUROR: No.

MR. WHITE: Despite the nature of the allegations?

JUROR: Despite the nature, no problem.

MR. WHITE: Okay. Nothing further.

THE COURT: Ms. Pope-Starnes.

MS. POPE-STARNES: People pass for cause, Your Honor.

THE COURT: Mr. White?

MR. WHITE: Same.

THE COURT: And I think we're to Mr. White.

MR. WHITE: I'd thank and excuse Mr. Platte in seat one.

THE COURT: Mr. Platte, thank you very much, sir. Same thing, if you'd just check down there at the jury office, okay.

JUROR: Thank you.

THE CLERK: The court calls juror number sixty-eight, Colleen Remeika.

THE COURT: Afternoon to you, ma'am.

JUROR: Hello.

THE COURT: As you're working your way down have you been able to see and hear everything okay?

JUROR: Yes, sir.

THE COURT: All right. Anything stand out or pertain to you in particular?

JUROR: Married, no children, my sister is an attorney for a firm in Southfield, she practices Social Security law and I have a cousin who is a pediatric surgeon at the University of Michigan.

THE COURT: Do any of the – that's your cousin?

JUROR: Yes.

THE COURT: That wasn't one of the names that were –

JUROR: No.

THE COURT: Okay. Pretty much cover it then?

JUROR: Yes.

THE COURT: And I appreciate your recollection too, that's great. Anything that you've shared or even not shared that would pertain or impact on this case?

JUROR: No.

THE COURT: And can you and do you commit to be fair in this case to both sides?

JUROR: Yes.

THE COURT: And apply the law as I give it to you?

JUROR: Yes.

THE COURT: Thank you very much. Ms. Pope-Starnes.

MS. POPE-STARNES: Ms. Remeika what kind of work do you do?

JUROR: I'm an assistant in an investment banking firm.

MS. POPE-STARNES: Okay. And your spouse?

JUROR: He is a computer engineer.

MS. POPE-STARNES: I know that you said you don't have any children but have you ever had the opportunity to baby sit or care for children, young children?

JUROR: Yes, very frequently, I have lots of friends with children under two, I've babysat quite a bit.

MS. POPE-STARNES: You said that you have a cousin I believe who is a pediatric surgeon at U of M?

JUROR: Yes.

MS. POPE-STARNES: What's that's person's name?

JUROR: Her name is Michelle Caird (phonetic)

MS. POPE-STARNES: Do you know how long she's been with the University of Michigan?

JUROR: I want to say about five years.

MS. POPE-STARNES: And do you talk to her about her work?

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

JUROR: No.

MS. POPE-STARNES: Thank you. Thank you Your Honor I have no other questions.

THE COURT: Thank you. Mr. White.

MR. WHITE: The fact that your cousin is a pediatric surgeon, she's not a pediatric neuro is she?

JUROR: I'm not certain.

MR. WHITE: Okay.

JUROR: I don't think so.

MR. WHITE: Do you know if she works on the head or body or what?

JUROR: I'm not sure.

MR. WHITE: You're not sure so you must not talk to her much about her work?

JUROR: No.

MR. WHITE: Okay. Any problems in this case being able to sit as a fair and impartial juror despite the nature of the accusations, despite the time that's going to be involved in this case?

JUROR: No.

MR. WHITE: Thank you very much. Nothing further.

THE COURT: Ms. Pope-Starnes.

MS. POPE-STARNES: People pass for cause, Your Honor.

THE COURT: Mr. White.

MR. WHITE: Pass.

THE COURT: All right. And to you?

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

MS. POPE-STARNES: People are satisfied with the jury, Your Honor.

THE COURT: Okay. Thank you. And Mr. White?

MR. WHITE: One moment Your Honor?

THE COURT: Okay.

MR. WHITE: We would like to thank and excuse Mr. Powers in seat number four.

THE COURT: Mr. Powers, thank you sir. If you could just check down at the jury office, okay.

THE CLERK: Court calls juror number 114, Richard Robitaille.

THE COURT: Afternoon to you, sir. That's a pretty good call on the name, right?

JUROR: It was perfect.

THE CLERK: All right.

THE COURT: Able to see and hear everything, sir?

JUROR: Yes.

THE COURT: Anything stand out or pertain to you?

JUROR: I have two daughters, they're eight and nine, I live in South Lyon I have a neighbor who both of them are nurses for the University of Michigan, I don't know what hospital, I'm not sure which I am a construction worker and I've worked at the university for the past seven years and I'm working there right now. The company that I work for we have the contract for Mott Hospital and I

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

do know I will be working on that job but that's not for a couple months. I guess that's about it.

THE COURT: Okay. Anything stand out from what you've shared or even not shared that would impact on this case?

JUROR: I don't like the idea of the child abuse from eight years ago, I have a hard time with that.

THE COURT: And there won't be anyone on the jury and anyone that wouldn't have a hard time with it but there's specific instructions which perhaps I should change my routine so to speak and first ask if you would accept the law as I give it to you, even though you don't know what I'm going to read to you and give you the law, would you defer to me and accept it, even if it doesn't appeal to you and you don't like it –

JUROR: Well, I –

THE COURT: - because that might impact it here.

JUROR: I would accept it but I would have a hard time knowing that.

THE COURT: Tough.

JUROR: Real tough.

THE COURT: That's a responsibility that everybody would have and I appreciate your honesty not to flippantly answer to these questions and be sincere about them; but nevertheless, you would endeavor to be fair to both sides?

JUROR: I would try to be fair. I think I'd have a very hard time being fair.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

THE COURT: Let me put it this way. Would you put yourself in a category different than anybody else?

JUROR: No, I wouldn't.

THE COURT: Okay. And I appreciate your honesty.

Ms. Pope-Starnes.

MS. POPE-STARNES: Sir, you told us that you live in the city of South Lyon?

JUROR: Yes.

MS. POPE-STARNES: Do you read the South Lyon Herald?

JUROR: Yes, I get it ever Thursday.

MS. POPE-STARNES: And have you read anything about this particular case in the newspaper?

JUROR: It sounds familiar to me, as the case goes on it might sound more familiar but I can't – as of right now I really couldn't tell you much about it.

MS. POPE-STARNES: Okay. Can you agree to follow the judges instructions about disregarding anything you might have read in the newspaper and only considering the evidence that comes from the witness chair or exhibits that are admitted?

JUROR: Yes.

MS. POPE-STARNES: Do you know any of the police officers in this case?

JUROR: No, I don't.

MS. POPE-STARNES: Now you've told us that you do construction work at the University of Michigan at Motts Children's Hospital?

JUROR: No, I have different – right now I'm at the University Museum of Arts job, I've been – you know, I've been to the new cardiovascular center and a couple science buildings there that they've built in the last couple years.

MS. POPE-STARNES: So is there anything about your work that causes you to come in contact with the doctors in the pediatric area of Mott Children's Hospital?

JUROR: No.

MS. POPE-STARNES: And you don't' have any concerns that your sitting as a juror in this case would have any effect on your work or the contract with the University of Michigan?

JUROR: No.

MS. POPE-STARNES: You can agree to be fair and impartial in this case?

JUROR: I would have a hard time, I'd have a very hard time.

MS. POPE-STARNES: Well, you understand, the judge has told you, you know, this is a difficult case and that everyone has a difficult time?

JUROR: My hard time is that there was a charge of child abuse prior to this.

MS. POPE-STARNES: The judge is going to give you an instruction about how much weight or consideration you can give to

that prior charge. Can you agree to follow the judge's instruction about that?

JUROR: That he's going to give me –

MS. POPE-STARNES: The judge is going to give you an instruction about that information.

THE COURT: I'll tell you what to do with that – how to filter that information through, kind of a road map basically and sometimes arguably it would make it easier on people because they have this whole quantum of evidence and not know what to do with it, I'll give you a road map, here's how you consider this piece, here's how you consider that piece, will you follow those instructions?

JUROR: Well, yeah.

MS. POPE-STARNES: Okay. Thank you.

THE COURT: Mr. White.

MR. WHITE: You said that yeah kind of begrudgingly and it's not a pronouncement of whether he's wrong or right or whatever, there is no right or wrong answer, the question is will you be able to follow the judge's instructions and, you know, you get a small slice of what the evidence may be in a case, hopefully we're accurate as attorneys in telling you what's going to come out so we can discuss this. You know, there was a prior child abuse investigation and it wasn't eight years ago, it was ten years ago, 1998, and that you will hear more evidence about that. The question is whether that fact, that prior investigation is going to interfere with your ability to judge what happens in this case?

FORM CSR · LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

MS. POPE-STARNES: Your Honor, I have to object. May we approach the bench?

THE COURT:  You may.

(Whereupon a brief discussion

was had off the record)

MR. WHITE:  The question is will it interfere with your ability to sit as a fair and impartial juror? And again, please don't think there's a right or wrong answer, other than your answer.

JUROR:  I think it would.

MR. WHITE:  So you don't believe that you can be fair in this case?

JUROR:  No, I don't.

MR. WHITE:  Okay. And you know, we all have children or most of us, it's hard, it's very difficult and there is nothing wrong with coming to court with preconceived ideas and I appreciate your truthfulness in discussing it because there's a lot at stake; but hearing the charges of felony murder and first degree child abuse, my client's daughter dead, you don't believe you can sit as a fair impartial juror hearing this case and giving him fair consideration?

JUROR:  With two kids of my own and child abuse, no, I don't think I can.

MR. WHITE:  Okay. Thank you.

THE COURT:  In anticipation of a challenge for cause, sir, and I'm the one that has to make a call on it, let me just without – even though I'm a judge, without being judgmental, let me make sure I

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

understand and make sure you appreciate the breadth of what you're saying because this is the truth, you're basically saying – and I emphasize, I'm not ragging on you, but you're saying Judge I won't be following your instructions; and that is the consequence of that statement, if I tell you he's presumed to be innocent, that you take this information and apply it this way, basically what you're saying is I am not going to follow the instructions. And again, I'm just – that's a consequence, and so be it, your honest and that's what we truly want here but that's a consequence of it and I just want to make sure you appreciate the breadth of that, the repercussions of that statement?

JUROR: Well I think, you know, I have my own opinion and, you know, I will listen to what you have to say but at the end I'll, you know, have my own opinion on what happened.

THE COURT: You'll have that at the end, are you saying you have it now?

JUROR: That I have –

THE COURT: You'll have an opinion at the end as I would hope you would, as everybody would, I just want to make sure, you'll have an opinion at the end but right now the presumption is innocence?

JUROR: Well, it's hard, that's hard for me.

THE COURT: Show of hands of anybody that doesn't think that it's hard, again, without being trite but that's – what I again ask is the same thing I asked before and the only reason why I'm continuing to ask it is they're going to be grilling me in a minute and what I'm

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

getting from you is a little bit of – not consistency. You did, you said I don't put myself in any different category than anyone else, then I said you know what, there's a guy that's being honest, he's being truthful, his difficulty, his burden is just as difficult as everybody else. But then you went a step further and said you know, what, I can't be fair. I've just got to figure out where you're coming from so I can rule accordingly.

JUROR: I would have a very hard time being fair is what I'm saying.

THE COURT: Ms. Pope-Starnes?

MS. POPE-STARNES: I'd pass for cause, Your Honor.

THE COURT: Mr. White?

MR. WHITE: I thank Mr. Robitaille for his honesty, I thank him, he is just being truthful, there's nothing more – that's the right answer, being truthful and he says he can't be fair, he'd have a hard time in this situation –

THE COURT: Understand.

MR. WHITE: And I appreciate the court's question and it would be hard for everyone. He says he can't approach this with the idea that he can be fair and listen to the evidence and I'd thankfully excuse him for cause.

MS. POPE-STARNES: But his last statement is, Your Honor, it will be hard for me and he had said that he would try. And as the court has pointed out, there's been contradictions in his statement and I don't think that it's clear for cause.

THE COURT: Thank you. The court has heard the arguments of counsel and even though it has the flavor that it's kind of – I don't want to say cow-towing but being accommodating to him and to the unfairness of everyone else, I am looking at it from the prospective of the litigants in the case. And from that perspective I will yield to the defendant's argument and accept the challenge to cause. Sir, you'd be excused and I'd ask you to report back to the jury office before they close at 5:00. Thank you. Jeff another name.

THE CLERK: The court calls juror number 53, Byron Miller.

THE COURT: Good afternoon Mr. Miller.

JUROR: Hi.

THE COURT: As you're approaching ask you if you're able to see and hear everything okay?

JUROR: Yes.

THE COURT: All right. And can you lay it on me, anything that might pertain to you in this matter?

JUROR: I bartend in Troy, a nice restaurant in Troy and I actually own a recording studio so I know nothing about any police officers or anyone from the University of Michigan; anything I would do has no bearing on anything pertaining to the case.

THE COURT: Thank you sir. And just so we have it expressed, I think it's implied here, you can and you will commit to be fair to both sides?

JUROR: Yes, sir.

THE COURT: And accept the law as I give it to you?

JUROR: Yes, sir.

THE COURT: And apply it to the evidence in this case?

JUROR: Yes, sir.

THE COURT: Thank you so much. Ms. Pope-Starnes.

MS. POPE-STARNES: Do you have a college degree, sir?

JUROR: Yes, I do.

MS. POPE-STARNES: And where's your degree from?

JUROR: Oakland University.

MS. POPE-STARNES: What's your degree in?

JUROR: Music.

MS. POPE-STARNES: But you don't work in that area?

JUROR: I own a recording studio.

MS. POPE-STARNES: Okay. I see, just not as a –

JUROR: It's partly mine.

MS. POPE-STARNES: I see and you said you also do work as a bartender?

JUROR: I bartend full time.

MS. POPE-STARNES: And how long have you been doing that?

JUROR: On and off for about fifteen years.

MS. POPE-STARNES: Are you married?

JUROR: No.

MS. POPE-STARNES: And do you have any children?

JUROR: No.

MS. POPE-STARNES: Have you ever been involved in the

care of young children?

JUROR: No.

MS. POPE-STARNES: Do you have any siblings?

JUROR: No.

MS. POPE-STARNES: And then if I understand, you don't

know anyone who is in law enforcement?

JUROR: No.

MS. POPE-STARNES: During the course of your work as a

bartender you've never come into contact with law enforcement?

JUROR: No.

MS. POPE-STARNES: What city of township is the bar

located in?

JUROR: Troy.

MS. POPE-STARNES: Thank you.

THE COURT: Mr. White.

MR. WHITE: The name of the establishment?

JUROR: Papa Vino's Italian.

MR. WHITE: During the length of this, you work at night,

right?

JUROR: I work in the day, I'm their day bartender.

MR. WHITE: Okay.

JUROR: I run the wine, I do all the wine for them.

MR. WHITE: Is this going to present a problem with your

work being here?

JUROR:  They have to give it to me off, I'm not worried about it.

MR. WHITE:  Will you be fair in this case?

JUROR:  Yes.

MR. WHITE:  Listen to the evidence?

JUROR:  Yes.

MR. WHITE:  Ever been a juror before?

JUROR:  No. I was dismissed the last time I was called.

MR. WHITE:  By dismissed?

JUROR:  I wasn't selected.

MR. WHITE:  Okay. Thank you very much.

THE COURT:  Ms. Pope-Starnes.

MS. POPE-STARNES: Pass for cause.

THE COURT:  Mr. White.

MR. WHITE:  Pass.

THE COURT:  Ms. Pope-Starnes.

MS. POPE-STARNES: May I have just a moment Your Honor?

THE COURT:  Yes, certainly.

MS. POPE-STARNES: The People would thank and excuse Mr. Miller.

THE COURT:  Mr. Miller thank you so much, sir.

JUROR:  Thank you.

THE COURT:  It's ten to five so I'd ask you to return to the jury room.

JUROR: Thank you.

THE COURT: And I think, unless we have a raise of hands, we have an exhausted pool.

Ladies and gentlemen, I'm going to ask you to go with Mr. Romback into the jury room, you're kind of familiar with it already, for a couple of moments and we'll give you further instructions. We will have you report back Thursday but let me just figure out the scheduling and so forth and certainly I emphasize don't talk about the case, you haven't been sworn in as jurors, but nevertheless, at this juncture we're kind of in a limbo state. So I will instruct you not to talk about the case, it's the one thing you all have in common but nevertheless don't talk about it. Just give us a couple of minutes and then we'll excuse you until Thursday and then I'm guessing 8:30 in the morning, okay. Thanks everyone.

THE CLERK: All rise for the jury.

THE COURT: Oh, and by the way just so you know, tomorrow I have miscellaneous things all day long so nothing on Wednesday, just for tomorrow.

(Jury excused)

THE COURT: The jury has been excused. Thank you, deputies, just a couple more seconds here. Anything from counsel?

MS. POPE-STARNES: No.

MR. WHITE: Nothing.

THE COURT: We'll just resume on Thursday at 8:30, bring up the new batch and we might as well have – on the one hand I'd say

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.  800-626-6313

I'd hate to have them people sitting in here listening to the same old questions over again but I don't know if we want to complicate things and bifurcate it. I certainly am receptive to either one of you.

MS. POPE-STARNES: Your Honor, I think the proceeding has to include the whole panel.

THE COURT: Uh-huh (affirmatively)

MR. WHITE: Do we have to have fourteen?

THE COURT: I'm sorry?

MR. WHITE: Do we have to have fourteen jurors?

THE COURT: That's open to –

MR. WHITE: That's a risk, you know, if one juror gets sick.

THE COURT: If one side requests fourteen I'll certainly yield to it in terms of the length of trial but if someone – if there's an agreement as to thirteen; I don't know whether that will have any consequential affect as to the ultimate, whether we can avoid Thursday morning or not. So if counsel wants to talk amongst themselves and see if maybe that would moot it, I'll certainly entertain that.

MR. WHITE: Okay. Thank you.

THE COURT: Do you want to talk amongst yourselves for a second and see if that's of any –

MR. WHITE: Sure, we'll talk and we'll let you know tomorrow.

MS. POPE-STARNES: Yes, could we do that?

THE COURT: Okay. That's fine. Deputies thank you so much for your patience.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

One last thing, assuming, Mr. White that it doesn't work out, I've got my fingers crossed, but if it doesn't work out that way do you also kind of yield to Ms. Pope-Starnes that the panel should – we should have this group back here at 8:30 so we don't get things all mixed up?

MR. WHITE: Yes, I agree.

THE COURT: Okay. Very well. Jeff, just give them a minute before we let them go.

MR. WHITE: Just to make sure our math is correct, we've both exhausted our peremptories?

MS. POPE-STARNES: That's my understanding.

* * * *

STATE OF MICHIGAN)

COUNTY OF OAKLAND)

I, Barbara Reznick, Court Reporter, do hereby certify that the foregoing pages comprise a full, true and correct transcript of the proceedings had in the above-entitled matter before Honorable Daniel Patrick O'Brien on February 19, 2008.

Barbara Reznick, CER 1333
1200 N. Telegraph, Pontiac, MI 48341
(248) 858-5841