## STATE OF MICHIGAN

## IN THE 6ᵀᴴ CIRCUIT COURT FOR THE COUNTY OF OAKLAND

PEOPLE OF THE STATE OF MICHIGAN,

v

STEVEN LINDSEY MC BURNEY,

Defendant,

OAKLAND COUNTY    07-214651-FC

JUDGE DANIEL P. O'BRIEN
PEOPLE v MCBURNEY.STEV

_____/

**TRIAL**

BEFORE HONORABLE DANIEL PATRICK O'BRIEN

March 5, 2008

\* \* \* \*

OAKLAND COUNTY CLERK
BY: _____
DEPUTY CLERK

2008 AUG 14 A 11: 23

RECEIVED FOR FILING

APPEARANCES

Sara Pope-Starnes, Esq.
On behalf of the People

Robert White, Esq.
On behalf of defendant

Barbara Reznick, Court Reporter

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

# I N D E X

WITNESSES

None

EXHIBITS

None

RECEIVED FOR FILING

2000 AUG 14 A 11: 23

OAKLAND COUNTY CLERK
BY:_____
DEPUTY COUNTY CLERK

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

2

Pontiac, Michigan

March 5, 2008

* * * *

THE CLERK:  The court calls People v McBurney, case number 07-214651 FC.

MS. POPE STARNES:  Sara Pope Starnes, Assistant Prosecuting Attorney on behalf of the People.

MR. WHITE:  Robert White appearing on behalf of Mr. McBurney who is not in the courtroom.

THE COURT:  Thank you.

MS. POPE STARNES:  May I approach with the notes so the court can look at it?

THE COURT:  You may approach.

Do you – the record will reflect that there's been multiple notes that's been presented by the jury.  I am not going to read them all into the record now because of the time and I have another motion that I must attend to.  Counsel have been waiting on that.

Mr. White, do you agree to get this matter resolved now and waive your client's appearance?

MR. WHITE:  Yes.

THE COURT:  Okay. Very well. And the note that causes the case to be called is note number six and it reads as follows:

> "What does C.J.I. 2nd 7.2 mean?" Is this a
> statement from the defense, is (2) the way we
> are supposed to determine the law? And
> then (2) does not mention create great bodily
> harm."

3

Who wants to speak on it?

MS. POPE STARNES: Your Honor, first of all it doesn't include the title, I think the title should be included with that.

In regards to their point about paragraph two, I've had some research done, *People v Raymond*, which is an unpublished opinion from the *Court of Appeals* from *November 17, 2000*, case number *195891*.

In that case, the trial court included the great bodily harm language in the second – does the court have a copy of the instruction?

THE COURT: 7.2? I have – I do have a copy of it.

MS. POPE STARNES: The paragraph two, great bodily harm is not listed in there and the trial court in the Raymond case included or caused great bodily harm in paragraph two, making it consistent with paragraph one. On appeal the argument was that the court was in error in including that in paragraph two and the Court of Appeals affirmed and it was affirmed by the Supreme Court indicated the court was not in error, that the great bodily harm language should be included in paragraph two.

THE COURT: You say to be consistent with paragraph one? Help me out, how would it be consistent?

MS. POPE STARNES: Because paragraph one ends with would probably cause the death or great bodily harm, great bodily harm is not mentioned in paragraph two at all so it only looks like the defendant – that it has to do with the defendant meaning to kill or the defendant probably causing a death.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

And what I am indicating is in this unpublished case the trial court did include that great bodily harm language to make it consistent between the two paragraphs and it was upheld on appeal and the Court of Appeals said it would have been error for the court not to include that because accident is a defense to the great bodily harm Mens Rea requirement of 2nd degree murder.

THE COURT: Let me – let me get the specific proposal from the People then. Would your proposal be that the court responds to this note by typing or writing a response to the note on the note or extract 7.2 in their instructions and put in its place a new 7.2 or how would you propose that the mechanics occur.

MS. POPE STARNES: That the instruction be given to them with the title included, because what they have right now does not have the title and that paragraph two say if the defendant did not mean to kill or did not realize that what he did would probably cause the death or cause great bodily harm, then he is not guilty of murder.

THE COURT: Hold on and again, getting down into specifics would your proposal be that the court have its clerk go in there, retrieve the jury instructions, unstaple them, I don't mean to be silly but literally and –

MS. POPE STARNES: I think –

THE COURT: - then put in its place –

MS. POPE STARNES: I think that it would be appropriate to bring the jury in, read the instruction with the title and then send that

5

instruction back in replacing the previous one and not answering the question any further, giving it any further explanation.

THE COURT: Got it. Thank you. Mr. White.

MR. WHITE: I believe the title should be in, that's more of a clerical error than anything, the title should be in but the standard jury instruction, I believe it is as it is and I believe it should stay.

THE COURT: Anything further?

MR. WHITE: Other than I also believe that the jury should be brought back in and instructed that this is the instruction and it stands as is, you'll have to interpret.

THE COURT: Bring in the jury and speak to them?

MR. WHITE: Inform them, this is the jury instruction that I've given you, the only thing we've added is the title, you're going to have to interpret it according to your job as jurors.

THE COURT: And read the – repeat and re-read the existing instruction and then give them a new one –

MR. WHITE: With the –

THE COURT: - have the clerks extract the old and replace it with the new?

MR. WHITE: Yes.

THE COURT: Anything further?

MS. POPE STARNES: No. Just the same argument I made to the court before.

THE COURT: Okay.

MS. POPE STARNES: There's no need to repeat it.

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

THE COURT: All right. I'll be with you in just a couple minutes, okay.

(Whereupon a pause was

had in these proceedings)

THE CLERK: The court recalls People v McBurney, case number 07-214651 FC.

MS. POPE STARNES: Sara Pope Starnes, Assistant Prosecuting Attorney.

THE COURT: Thank you.

MR. WHITE: Robert White appearing on behalf of the defendant, without the defendant in the courtroom and we'll waive his appearance, Judge.

THE COURT: Thank you. Do you want to speak on this further either one of you?

MS. POPE STARNES: No, I did prepare a proposed charge as ordered by the court.

THE COURT: Okay. Thank you.

MR. WHITE: The alteration, you know, that has I guess been agreed upon so far is number one put in the title, okay. And I submit that should be the only change that should be made because that was an agreed upon jury instruction. If the court entertains changing paragraph two at all I think it should contain the complete Mens Rea requirements because the case cited by the prosecutor, I don't believe the jury instruction in that case properly recites the Mens Rea requirements.

7

THE COURT: Where do I find the Mens Rea requirements?

MR. WHITE: In the second –

THE COURT: In –

MR. WHITE: - Second Degree –

THE COURT: Second Degree and?

MR. WHITE: And first degree.

THE COURT: Okay.

MS. POPE STARNES: I respectfully disagree with counsel because in the same case that we've cited, the third prong or the third alternative, first of all, there is case law that says that the jury only has to find one of those three Mens Rea requirements, not all three. And the last sentence of the paragraph in the Raymond case that we've quoted the court says it would be improper to excuse homicide as an accident where the defendant disregarded the likelihood of great bodily harm merely because the defendant did not foresee or intend death as a result.

So I think this is saying that the third prong of the Mens Rea requirement is not excused by accident but the prior, the two that say intent to kill or great bodily harm are covered by accident. So I think the wording as proposed is consistent with the case law and the law.

THE COURT: Let me speak on something here and if counsel wants to chime in they may or may not. CJI 2nd 16.4 and 16.5 states that guilt under any – either of these requires one of three states of mind; however, as it expresses them in those two instructions, four, not

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

three are given. Does counsel agree that the third option actually
contains two options and I'll read all four as far as how I read it.

First that the defendant intended to kill or second, that the
defendant intended to cause great bodily harm or third, that the
defendant knowingly created a very high risk of death knowing that
death would be the likely result of his actions and four, that defendant
knowingly created a very high risk of great bodily harm knowing that
great bodily harm would be the likely result of his actions.

MR. WHITE: Correct.

MS. POPE STARNES: No, I disagree. And I'm looking at the
case of *People v Dykhouse* which is *418 Michigan Appeals 488* where
the court says if the actor entertains one of three possible intents –

THE COURT: Well –

MS. POPE STARNES: - and the court says that the third one
where it says, or he intended to create a very risk, that that is the third
alternative.

THE COURT: - but there's there's disjunctive words in there
that –

MS. POPE STARNES: I agree, but the court viewed that as
one alternative.

THE COURT: All right. Very well. Just give me a second
here. Despite whether it's three, whether it's four, despite the language
in those instructions setting forth the required state of mind for those
crimes to have been committed and thus the absence of any of those
states of mind precludes the commission of those crimes, nevertheless

9

the parties agree that the court would read 7.2 to make express or in other words to make express that which is implied by 16.4 and 16.5, to wit the absence of all of those states of mind, whether it's three or four precludes the commission of the crimes, correct? If the jury finds none of the three or four, it precludes the commission of those crimes, correct or incorrect?

MR. WHITE: Agreed.

MS. POPE STARNES: No, I disagree.

THE COURT: Okay.

MS. POPE STARNES: And again as I cited in the *Raymond* case the final sentence is it would be improper to excuse homicide as accidental where the defendant disregarded the likelihood of great bodily harm merely because the defendant did not foresee or intend the death as a result. And I believe that covers the third choice of the Mens Rea.

THE COURT: Did you highlight that thing?

MS. POPE STARNES: Yes –

THE COURT: Or do you have it there? I don't – let me see that language.

MS. POPE STARNES: Well, I have the whole paragraph highlighted, it's the very last sentence on page five.

THE COURT: Okay.

MS. POPE STARNES: May I approach?

THE COURT: Yes. Is this the case that you cited before or is this some other case?

MS. POPE STARNES: It's the *Raymond* case that I cited before.

THE COURT: Okay. I also note the notes to 7.2 states that the instruction is meant to be used as a defense to a murder charge only. Whether – so the People – if – I was thinking out loud that it seems like 7.2 is deficient in that it does not express all of the states of mind that if absent, if absent, would preclude a finding of guilt; if you were to juxtapose, if you would, 7.2 with the Mens Rea of 16.4 and 16.5, there would be some states of mind in 16.4 and .5 that the absence of them are not expressed in 7.2.

MR. WHITE: Agreed.

THE COURT: And disagree or –

MS. POPE STARNES: I do, I just think it's hard to find.

THE COURT: All right.

MR. WHITE: And my point Judge, this is an agreed upon jury instruction so –

THE COURT: In fairness, and I understand that and –

MR. WHITE: But if –

THE COURT: - but I won't make my decision based only on that. If the parties agreed to give a trespass instruction and I gave a trespass instruction, the fact that you both agreed to it wouldn't be reason that I should not consider changing it –

MR. WHITE: Right. But if you are going to amend, modify paragraph two –

THE COURT: I've got it –

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

MR. WHITE: - then all four have to be –

THE COURT: I've got you. And you disagree with that counsel?

MS. POPE STARNES: Absolutely.

THE COURT: Okay. All right. The court looks to 768 – I'm sorry, *MCL 768.29* and the language in the unpublished case from the People both speaking to providing instructions or remedying imperfect instructions with an eye towards protecting the defendant; the court is looking, recognizing it's an unpublished opinion, nevertheless, it's quoting *People v Bartlett* and I read as follows:

> "Even if somewhat imperfect, instructions
> do not create error if they fairly present to
> the jury the issues tried and sufficiently
> protect the defendant's rights."

The court also looks to *MCL 768.29*, the court will read the last sentence.

> "The failure of the court to instruct on any
> point of law shall not be ground for setting
> aside the verdict of the jury unless such
> instruction is requested by the accused.

The court is not saying that there was a failure to instruct on any point of law, nevertheless, the court is looking at those two sources of information and deriving that the focus is on the protection of the accused.

I have heard the arguments of counsel, I've considered the law that's been presented. The court will adopt the reasons from the defendant, I will not modify the instruction.

Now, having said that, recognizing that it's against the prosecutor's position, do the parties still agree that I convene the jury and read the instruction 7.2 over again, even though I'm not modifying it, as to that note?

MS. POPE STARNES: No. I don't, Your Honor, first of all, when the court read the instructions, the court did not read the title so I think you send it back in with the title with something simply saying you have to take the instruction as it's written.

THE COURT: That was my next question. If – I don't think there's any contest that the instructions as a whole contain an answer to the inquiries from the jury. Hint, hint, nod, nod, ladies and gentlemen of the jury, look at 16.4, 16.5 and you will find the answer to your question; not that I am going to say that to them, but if they scrutinize the instructions as a whole, specifically those two, they will get an answer to their question.

Mr. White anything you want to say?

MR. WHITE: They just –

THE COURT: Or let me be – I'm sorry.

MR. WHITE: - have to have some direction as to what the court has done, to say here's this instruction, with the complete instruction with the title, you will have to construe this in the context of all of the other instructions.

THE COURT: Is it feasible then that perhaps this can be handled by a responsive note to the jury and saying just that –

MS. POPE STARNES: Yes –

13

THE COURT: - and then have my clerk go in there, extract and insert the replacement instruction?

MR. WHITE: Sure.

MS. POPE STARNES: Yes.

THE COURT: Okay.

MR. WHITE: Just as long as the jury knows that this instruction has been changed it's got to be in context of all of the instructions.

THE COURT: I'll return the note precipitating all this to counsel and they can craft a proposed response recognizing that –

MS. POPE STARNES: Your Honor, I would ask that a typed response be prepared that it not be handwritten by anyone.

THE COURT: That's fine.

Can we – if you – if counsel can agree to the language, recognizing it's approved as to form only by the People, I'll certainly have it typed on. I would propose, open to comment, that I type it on this actual note so that there's no confusion as to what –

MS. POPE STARNES: That's up to the court, I just would ask that it be typed.

THE COURT: All right.

MR. WHITE: I agree.

THE COURT: All right. Counsel can see if they can craft an agreed response and I'll receive that. Thank you.

THE CLERK: All rise.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

(Whereupon a pause was

had in these proceedings)

THE CLERK:  The court calls People v McBurney, case number 07-214651 FC.

THE COURT:  Ms. Pope Starnes, your appearance is noted for the record.

MS. POPE STARNES:  Thank you Your Honor.

THE COURT:  Mr. White, likewise. And your client is present?

MR. WHITE:  That's correct.

THE COURT:  Just before the jury is brought in and counsel agrees doing it outside of the jury's presence, I don't know if it makes a difference, I'll read all the notes into the record and the responses.

MR. WHITE:  Okay.

THE COURT:  We'll do it now.

First note received from the jury, number one, we need all evidence. Number two, bottled water, please, sink water is yellow. I take judicial notice of that fact too.

Note number two: No crib – that was after all of the evidence was given to the jury they specifically said no crib and that was taken out.

Note number three: Instructions for the jury from the judge please.  And there was compliance with that.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

The next note, number four, could we have a couple more copies of jury instructions. There was compliance with that, in fact all jurors were given their own copy.

Note number five, when can I take a smoke break; there was compliance with that and the jury was instructed to cease deliberations while the juror indulged.

Note number six, I've read this before but just so we have consistency for the readers and appellate purposes don't have to look further: What does CJI 2nd 7.2 mean? Is this a statement from the defense, is (2) the way we are supposed to determine the law? (2) does not mention create great bodily harm. The – there was argument on that, the court made its decision and a note was returned to the jury answer to note number six which reads as follows: Inserted in your instructions is the complete instruction as given already with the title inserted. You will have to interpret this instruction as in the context of all the other instructions given. That note had a copy of their note six superimposed on it so that they knew, so it had some frame of reference.

And in compliance with that the record will reflect that the court retrieved all the jury instructions from the jury, removed CJI – the old CJI 2nd 7.2 and replaced it with CJI 2nd 7.2 which again was identical except for the inclusion of the title.

And the final note, number seven, we have reached a verdict.

Any comment from counsel on any of that?

MS. POPE STARNES: No.

16

MR. WHITE:  The court has been accurate.

THE COURT:  Thank you. With that, Ms. Neff, you may bring in the jury.

THE CLERK:  Yes, Your Honor.

(Jury seated at 3:35 p.m.)

THE COURT:  Good afternoon everyone. You may all be seated. The record reflect the jury is back and the case has been called, counsel's names have been noted for the record.  Just so you all know what's going on, I just read all the notes into the record so that we would have that knowledge on the record, ending with the final note that you have reached a verdict.  And I'd ask you please direct your attention to my clerk, Mr. Romback, okay.

THE CLERK:  Members of the jury have you reached a verdict and if so, would the foreperson please rise.

Foreperson, please read the verdict form.

FOREPERSON:  People of the State of Michigan versus Steven Lindsey McBurney.

Count 1, 1st Degree Felony Murder, we find him guilty of 2nd degree murder.

Count 2, Child Abuse, 1st Degree, we find him guilty of Child Abuse, 1st Degree.

THE COURT:  Thank you ma'am.

Is there a request from either counsel to have the jury polled?

MR. WHITE:  Yes, Your Honor.

17

THE COURT: Thank you. Ladies and gentlemen, whenever there is a request to have the jury polled, Mr. Romback with either call you by name or number and ask was that and is that your verdict and if you'd just answer accordingly; that's to make sure that we have unanimity in the verdict, okay.

Mr. Romback.

THE CLERK: Ms. Remeika, was that and is that your verdict?

JUROR: Yes.

THE COURT: Probably make it easier, just say juror number one, two or whatever. I know, I appreciate it but it might be quicker that way.

THE CLERK: Juror number 2, was that and is that your verdict??

JUROR: Yes.

THE CLERK: Juror number 3, was that and is that your verdict?

JUROR: Yes.

THE CLERK: Juror number 5, was that and is that your verdict?

JUROR: Yes.

THE CLERK: Juror number 6, was that and is that your verdict?

JUROR: Yes.

THE CLERK: Juror number 7, was that and is that your verdict?

JUROR: Yes.

THE CLERK: Juror number 8, was that and is that your verdict?

JUROR: Yes.

THE CLERK: Juror number 9, was that and is that your verdict?

JUROR: Yes.

THE CLERK: Juror number 10, was that and is that your verdict?

JUROR: Yes.

THE CLERK: Juror number 11, was that and is that your verdict?

JUROR: Yes.

THE CLERK: Juror number 12, was that and is that your verdict?

JUROR: Yes.

THE CLERK: Juror number 14, was that and is that your verdict?

JUROR: Yes.

THE COURT: Thank you ladies and gentlemen, on behalf of the lawyers as well as myself, appreciate your service. I'd ask if you would yet again return to the jury room. We'll collect your badges, as I've said to Mr. James before, we're very economical here and there

might be some exit questions, we have some certificates to give you and so forth and my clerk will take it from there. Thank you ladies and gentlemen.

THE CLERK: All rise for the jury.

(Jury excused)

THE COURT: Thank you. The record reflect that the jury has been excused. You may all be seated. Counsel, anything further other than the sentencing date?

MS. POPE STARNES: No.

THE COURT: Mr. White?

MR. WHITE: No.

THE COURT: Thank you. I believe the sentencing date would be March 31st which is a Monday at one o'clock. Mr. White if you'd get one of the referral forms.

MR. WHITE: I will do that.

THE COURT: Thank you deputies. We're all set. All right. Court will stand in recess.

THE CLERK: All rise.

* * * *

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

STATE OF MICHIGAN)

COUNTY OF OAKLAND)

        I, Barbara Reznick, Court Reporter, do hereby certify that the

foregoing pages comprise a full, true and correct transcript of the proceedings

had in the matter of The People v Steven McBurney before Honorable Daniel

Patrick O'Brien in Pontiac, Michigan on March 5, 2008.

                    Barbara Reznick, CER 1333
                    1200 N. Telegraph, Pontiac, MI 48341
                    (248) 858-5841

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313