UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN L. MCBURNEY,

    Petitioner,                                  Civil No. 2:11-CV-12046
                                                HONORABLE VICTORIA A. ROBERTS
v.                                                 UNITED STATES DISTRICT JUDGE

LLOYD W. RAPELJE,

    Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS***

Steven L. McBurney, ("Petitioner"), confined at the Saginaw Correctional Facility in Freeland, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* habeas petition, Petitioner challenges his conviction and sentence for second-degree murder, M.C.L.A. 750.317, first-degree child abuse, M.C.L.A. 750.136b(2), and being a second felony habitual offender, M.C.L.A. 769.10. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

**I.  Background**

Petitioner was convicted of the above offenses following a jury trial in Oakland County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F. 3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from the death of his 11-month-old daughter. The medical examiner determined that the victim died as a result of blunt force trauma to the head and related complications caused by subdural hemorrhaging, including loss of blood flow and oxygen supply to parts of the brain. In a statement to the police, defendant admitted that while caring for the victim, he could not get her to stop crying and screaming. He explained that he became angry and frustrated, and then threw the victim into her crib from approximately two feet away, causing her head to strike the padded bars. The victim immediately had a seizure and became unresponsive.
>
> At trial, the prosecution presented evidence that in 1998, while caring for another child who was 4-1/2 months old, defendant became angry and frustrated when the child would not stop crying. He began shaking and bouncing the child hard, causing subdural hematomas, retinal hemorrhages, a subarachnoid hemorrhage, and a skull fracture.

*People v. McBurney,* No. 285485, * 1 (Mich.Ct.App. September 10, 2009).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 486 Mich. 996, 783 N.W.2d 110 (2010)(Cavanagh, J. would grant leave to appeal); *reconsideration den.* 488 Mich. 858, 787 N.W.2d 486 (2010).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) the prosecutor committed misconduct by unfairly impeaching and attacking defense expert Dr. Ronald Uscinski, (2) Petitioner's due process right to a fair trial and his right to confrontation were violated by the admission of evidence that he had physically abused another child, and (3) the trial court erred in scoring fifty points under Offense Variable (OV) 7 of the Michigan Sentencing Guidelines for excessive brutality.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that

3

state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims previously rejected in state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error

4

correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979)(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III. Discussion

#### A. Claim # 1. Prosecutorial misconduct.

Petitioner contends that the prosecutor committed misconduct by unfairly impugning the credibility of defense expert Dr. Ronald Uscinski.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly*, 416 U.S. at 643-45. The Court

must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir.1997)(quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).  Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006)(quoting *Donnelly*, 416 U.S. at 645).  In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87).  This is particularly so, "because the *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations[,].'" *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

      Petitioner argues that it was improper to question Dr. Uscinski about the fees that he was paid to testify in Petitioner's case and in other cases across the country in which Dr. Uscinski offered expert testimony on behalf of other criminal defendants.  Petitioner argues that the prosecutor improperly impeached Dr. Uscinski with transcripts from other cases in which he testified.  Petitioner argues that it was improper for the prosecutor to mention in her closing argument that Dr. Uscinski had received a fee for

6

testifying on Petitioner's behalf and arguing that "you can get anyone to say anything for enough money." (Tr. 3/4/08, pp. 69-71).

Dr. Ronald Uscinski was qualified an expert in neurosurgery. (Tr. 2/26/08, p. 6). Dr. Uscinski published an article advocating the position that human beings could not shake an infant hard enough to cause intracranial injuries and, if they could, it would break the baby's neck. (*Id.,* pp. 8-9).

Dr. Uscinski reviewed the victim's records and determined that her injury was not the result of blunt trauma, because there was no external evidence of injury, such as bumps, bruises, or a skull fracture. Dr. Uscinski testified that with a blunt trauma there would typically be bleeding in the brain itself, but Dr. Uscinski's review detected no bleeding inside of the victim's brain, only outside the brain. (*Id.,* pp. 57-58). Dr. Uscinski testified that the victim's trauma was a chronic subdural hematoma rebleed and the effects of oxygen deprivation to the brain. (*Id.,* pp. 30, 60). Dr. Uscinski testified that a chronic subdural hematoma can rebleed spontaneously or with a trivial incident like a burp or sneeze. Dr. Uscinski testified that the victim's vomiting and lethargy could have been caused by the subdural hematoma. (*Id.* pp. 27, 58-59). Dr. Uscinski expressed the opinion that the victim's brain swelling was not due to external trauma, but was the result of oxygen deprivation. Dr. Uscinski believed that efforts to oxygenate the victim at the hospital had been unsuccessful. Dr. Uscinski explained that when the brain does not get enough oxygen, it swells. Dr. Uscinski believed that the medical team's attempts to maintain the victim's circulation only increased her brain swelling. (*Id.,* 56-

60).

On cross examination, the prosecutor brought out the fact that Dr. Uscinski had testified as a defense expert about ninety times but never for the prosecution. (*Id.,* p. 64). Dr. Uscinski was paid $12,000-13,000 for assisting the defense in Petitioner's case. (*Id.,* p. 68). Dr. Uscinski obtained about 15% of his income from testifying for the defense in cases involving children with head injuries. (*Id.,* p. 71). Dr. Uscinski admitted that he did not review any police reports in this case and that he had neither treated the victim nor spoken with any of the treating physicians. (*Id.,* pp. 71, 74).

When the prosecutor attempted to elicit from Dr. Uscinski that he frequently testified that a child's brain injury was caused by a chronic subdural rebleed rather than shaken baby syndrome, defense counsel raised a relevancy objection. Outside of the jury's presence, the prosecutor argued that it was relevant to Dr. Uscinski's credibility that he testified to the exact same conclusion in at least eight other cases in which he was an expert for a criminal defendant. The trial judge ruled that the prosecutor could ask a yes or no question regarding whether the witness had testified to the same thing a certain number of times. (*Id.,* pp. 81-84).

When the prosecutor asked Dr. Uscinski how often he had reached the conclusion that an infant's brain injury was caused by a chronic subdural rebleed rather than by shaken baby syndrome, Dr. Uscinski testified that he could not recall and indicated that he simply had no idea what he had testified to in most of the cases mentioned:

Q. [by the prosecutor] How many of those cases did you testify that it was

8

your opinion that the child had suffered a chronic subdural hematoma that had re-bled?

A. [Dr. Uscinski] I have no idea.

Q. More than ten?

A. I just said I have no idea. It may be more than ten, it is less than ninety, I don't know.

* * *

Q. Was that your testimony in the Woodward case?

[defense objection based on the facts of that case not being explored, overruled]

A. Yes.

Q. How about in the case of Indiana versus Nicholson in 2003?

A. I don't remember.

[standing objection noted]

Q. How about the case of Ohio versus Youngert (phoen)?

A. I don't remember.

Q. How about the case of Colorado versus Waddle (phoen)?

A. Yes, and it's Wadle (phoen).

Q. Thank you. Tennessee versus Stringer (phoen)?

A. I don't remember.

Q. California versus – and I'll spell this last name for you, V-e-l-a-h-b-i-d?

A. I remember the case, I don't remember the circumstances or details, possibly.

9

> Q. Texas versus Cathy Stewart (phoen)?
>
> A. Again, I remember the name I don't remember the circumstances of the case.

(*Id.,* pp. 89-91).

The prosecutor attempted to refresh Dr. Uscinski's recollection by showing him transcripts of his prior testimony in two of the other cases. But after reviewing the transcripts, Dr. Uscinski denied that they refreshed his recollection. The prosecutor asked Dr. Uscinski if he had personally seen or treated any of the children in those other cases and Dr. Uscinski responded that he could not answer with a yes or no answer. (*Id.,* pp. 91-97).

The prosecutor's questions and comments about Dr. Uscinski's bias and credibility were not misconduct. Evidence that tends to show a witness's bias is relevant impeachment evidence and therefore admissible. *United States v. Abel*, 469 U.S. 45, 51 (1984). More importantly, for a prosecutor's cross-examination of a witness to rise to the level of prosecutorial misconduct, a defendant is required to show intentional misconduct or reckless disregard for the truth on the part of the prosecutor. *United States v. Sexton,* 119 Fed. Appx. 735, 750 (6th Cir. 2005)*, vacated in part on other grounds,* No. 2005 WL 6011238 (6th Cir. April 4, 2005).

It is not improper for a prosecutor to bring out the bias of an expert witness for the defense. *See U.S. v. Mullins*, 446 F. 3d 750, 762 (8th Cir. 2006). The questions posed by the prosecutor to Dr. Uscinski were relevant to establishing bias on the witness's part. A

10

prosecutor does not commit misconduct by asking witnesses relevant questions. *See Slagle v. Bagley,* 457 F. 3d at 518. The fact that Petitioner's expert was paid money by the defense was relevant to the expert's credibility. *See Balsley v. LFP, Inc.*, 691 F. 3d 747, 763 (6th Cir. 2012); *cert. den.* 133 S.Ct. 944 (2013). Another judge in this district has rejected a similar claim involving similar questions and comments. See *Fuller v. Lafler,* 826 F. Supp. 2d 1040, 1059 (E.D. Mich. 2011)(Prosecutor's characterization of expert medical witness who was called by defendant in child sexual abuse case as "hired gun" was not so inflammatory that it affected fairness of trial so as to rise to level of a due process violation).

Petitioner argues that it was improper for the prosecutor to impeach Dr. Uscinski's testimony with transcripts from other trials where he testified for the defense. The judge, however, permitted the prosecutor to use these transcripts to question Dr. Uscinski, albeit for the purpose of refreshing his memory. Although Petitioner framed his improper impeachment claim as a prosecutorial-misconduct challenge, "it amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*, 586 F. 3d 383, 397 (6th Cir. 2009). "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). Furthermore, it is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court

11

conviction violates the Constitution, laws, or treaties of the United States. *Id.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Foster v. Withrow,* 159 F. Supp. 2d 629, 642-43 (E.D. Mich. 2001). Petitioner's claim that the prosecutor improperly impeached his expert witness is thus not cognizable in a federal habeas corpus proceeding. *See e.g. Roland v. Mintzes,* 554 F. Supp. 881, 890 (E.D. Mich. 1983).

Finally, the jurors were instructed that the prosecutor's questions and comments were not evidence. (Tr. 3/4/08, p. 125). In light of this cautionary instruction, the prosecutor's comments in her closing argument about Dr. Uscinski's credibility did not deprive Petitioner of a fair trial. *See, e.g., Farmer v. Hofbauer,* 1 Fed. Appx. 372, 378 (6th Cir. 2001) (prosecutor's comments in his closing argument during first degree murder trial questioning credibility of defendant's expert witnesses and urging jury not to adopt their conclusions regarding defendant's alleged insanity did not deny petitioner due process, where statements were vague, brief, and disjointed, and trial judge cautioned jury that the lawyers' comments were not evidence). Petitioner is not entitled to habeas relief on his first claim.

### B. Claim # 2. Evidence of prior child abuse.

Petitioner argues that his right to a fair trial and to confront the witnesses was violated by the admission of evidence of a prior child abuse case from 1998 involving Petitioner and another child named Nicholas Kennedy.

Petitioner claims that the prior child abuse incident was irrelevant and prejudicial.

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009); *See also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

Petitioner argues that admission of this prior child abuse incident violated M.R.E. 404(b) because it was admitted to show his propensity to commit the crime charged.

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007). The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003); *Adams v. Smith,* 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003).

Petitioner contends that the admission of Nicholas Kennedy's medical records, which contained a medical diagnosis of shaken baby syndrome, violated his Sixth Amendment right to confrontation.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant

has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36 (2004). However, the Confrontation Clause is not implicated, and thus does not need not be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, 547 U. S. 813, 823-26 (2006); *See also Desai v. Booker,* 538 F.3d 424, 425-26 (6th Cir. 2008). Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Crawford,* 541 U.S. at 51-52, 56.

The medical report was admissible under the business records exception to the hearsay rule found in M.R.E. 803(6). Because the medical report qualified as a business record, it was non-testimonial statement and its admission did not violate the Confrontation Clause. *See U.S. v. Baker,* 458 F. 3d 513, 519 (6th Cir. 2006).

The diagnosis of shaken baby syndrome was made in the course of Kennedy's medical treatment and diagnosis and was admissible pursuant to M.R.E. 803(4). Medical reports that are created for treatment purposes are not considered testimonial by the Supreme Court. *See Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2533, n. 2 (2009).

The medical records were also admissible because they were not offered for the truth of the matter asserted but to show that Petitioner "understood or had reason to know the consequences of his improper handling of a young child and the risk of injury." *McBurney,* Slip. Op. at 5.

The Confrontation Clause "does not bar the use of testimonial statements for

14

purposes other than establishing the truth of the matter asserted." *Crawford,* 541 U.S. at 59, n. 9; *See also Tennessee v. Street*, 471 U.S. 409, 414 (1985)(defendant's rights under the Confrontation Clause were not violated by introduction of an accomplice's confession for the nonhearsay purpose of rebutting defendant's testimony that his own confession was coercively derived from the accomplice's statement). Evidence that is admitted to establish criminal intent or knowledge is not hearsay. *See U.S. v. Mays,* 69 F.3d 116, 121 (6th Cir. 1995). Thus, the admission of these medical records did not violate Petitioner's right to confrontation.

Finally, assuming that the admission of Nicholas Kennedy's medical records violated the federal constitution, any error was harmless. The standard for showing harmless error on collateral review is "considerably less favorable" to a habeas petitioner than the standard which is applied on direct review. On direct review, before a federal constitutional error can be held harmless, the court must be able to declare that the error was harmless beyond a reasonable doubt. However, the harmless error test for collateral review is different. A federal court can grant habeas relief only if the trial error had a substantial and injurious effect or influence upon the jury's verdict. *Ford v. Curtis,* 277 F. 3d 806, 809 (6th Cir. 2002)(quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)). Under this standard, a habeas petitioner is not entitled to habeas relief unless he or she can establish that the trial error resulted in "actual prejudice." *Id.* Thus, a federal habeas court can grant habeas relief only if a habeas petitioner carries the burden of showing that a Confrontation Clause error had a substantial and injurious effect or influence on

15

the jury's verdict. *See Bulls v. Jones,* 274 F. 3d 329, 335 (6th Cir. 2001).

In light of the evidence presented, including Petitioner's own admission that he threw his eleven month old daughter forcefully into her crib and causing her head to strike the bars of the crib, the admission of the medical records was harmless error at most. Petitioner is not entitled to habeas relief on his second claim.

### C. Claim # 3. Sentencing Guidelines.

Petitioner contends that the trial court improperly assessed fifty points against him under OV 7 of the Michigan Sentencing Guidelines for excessive brutality.

State courts are the final arbiters of state law. *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *Sanford v. Yukins,* 288 F.3d 855, 860 (6th Cir. 2002). Therefore, claims which arise out of a state trial court's sentencing decision are not normally cognizable on federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Vliet v. Renico,* 193 F. Supp. 2d 1010, 1014 (E.D. Mich. 2002). Thus, a sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003). "[I]n short, petitioner had no federal constitutional right to

be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id.*

### IV. Conclusion

The Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability to Petitioner. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability; he failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Although this Court denies a certificate of appealability, the standard for granting

17

an application for leave to proceed *in forma pauperis* (IFP) is lower than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002).  While a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.  ORDER

**The Court DENIES** the Petition for Writ of Habeas Corpus and a Certificate of Appealability**.**

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*


                                        S/Victoria A. Roberts                    
                                        Victoria A. Roberts
                                        United States District Judge

Dated:  December 31, 2013

The undersigned certifies that a copy of this document was served on the attorneys of record and Steven L. McBurney by electronic means or U.S. Mail on December 31, 2013.

S/Carol A. Pinegar
Deputy Clerk

19